UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFTEX INTERNATIONAL LTD.,

                  Plaintiff,

vs.

JPI TRADING CORP. and JOSEPH SAFDIEH,

                Defendants.

CIVIL ACTION NO.: 07CV10460 (TPG)

## DECLARATION OF THOMAS G. CARULLI IN IN SUPPORT OF MOTION BY JPI TRADING CORP. AND JOSEPH SAFDIEH TO DISMISS THIS ACTION WITH PREJUDICE PURSUANT TO FRCP 12

1.     I am duly admitted to practice law in the State of New York and before this Court, and am an attorney with the law firm of Kaplan, von Ohlen & Massamillo, LLC.

2.     Annexed hereto is true and correct copy of exhibit 1- Jefftex International Ltd.'s Second Amended Verified Complaint dated October 14, 2005 and cited in Defendants' Memorandum of Law in support of its motion to dismiss this action with prejudice pursuant to FRCP12.

3.     Annexed hereto is true and correct copy of exhibit 2- Jefftex International Ltd. and Jeff Young 's Summons, Notice of Motion for Summary Judgment in Lieu of Complaint and Affidavit of Dean Lakis dated November 10, 2004 cited in Defendants' Memorandum of Law in support of its motion to dismiss this action with prejudice pursuant to FRCP12.

4.     Annexed hereto is true and correct copy of exhibit 3- Order dated  June 1, 2005 Denying Motion and cited in Defendants' Memorandum of Law in support of its motion to dismiss this action with prejudice pursuant to FRCP12.

5.     Annexed hereto is true and correct copy of exhibit 4- Transcript of Hearing before

Honorable Ira Gammerman dated September 14, 2006 cited in Defendants' Memorandum of Law in support of its motion to dismiss this action with prejudice pursuant to FRCP12.

      6.     Annexed hereto is true and correct copy of exhibit 5- Jefftex International Ltd. and Jeff Young 's Reply Affirmation in Response to Defendants' Opposition and in Further Support of Motion for Summary Judgment dated May 24, 2005 and cited in Defendants' Memorandum of Law in support of its motion to dismiss this action with prejudice pursuant to FRCP12.

Dated: New York, New York
      January 23, 2008

                  Kaplan, von Ohlen & Massamillo, LLC

                By:     /s/ Thomas G. Carulli
                      Eugene F. Massamillo (EM-6942)
                      Thomas G. Carulli (TC-3085)
                      555 5th Avenue, 15th Floor
                      New York, New York 10017
                      (212) 922-0450
                      Fax: (212) 922-0530

                      Attorneys for Defendants

EX. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------x

JEFFTEX INTERNATIONAL LTD.,

                     Plaintiff,

      -against-

JPI TRADING CORP. and JOSEPH SAFDIEH,.

                 Defendants.

--------------------------------------------------------------x

Index No. 603811/04

**SECOND AMENDED
VERIFIED COMPLAINT**

      Plaintiff JEFFTEX INTERNATIONAL LTD. ("JEFFTEX"), by its attorneys, Gottesman, Wolgel, Secunda, Malamy & Flynn, P.C., alleges as and for its amended complaint against the above captioned defendants as follows:

## The Parties

      1.    Plaintiff JEFFTEX ("Plaintiff") is and was at all times relevant herein, a foreign corporation organized and existing under the laws of the Republic of China, having its principal office at No. 57, Fu Hsing North Road, Taipei, Taiwan, Republic of China. Jefftex is a manufacturer of children's apparel.

      2.    Upon information and belief, defendant JPI TRADING CORP. ("JPI") is and was at all times relevant herein, a corporation duly organized and existing under and by virtue of the laws of the State of New York.

      3.    Upon information and belief, JPI maintains a principal place of business at 1370 Broadway, Suite 1200, New York, New York 10018.

      4.    Upon information and belief, JPI is an importer of children's apparel.

      5.    Upon information and belief, defendant JOSEPH SAFDIEH ("SAFDIEH") is the founder, president and chief executive officer of JPI.

6.  Upon information and belief, JOSEPH SAFDIEH ("SAFDIEH"), is and was at all times relevant herein, maintains a residence at 109 Jerome Avenue, Deal , New Jersey.

## Factual Allegations

7.  Starting in 1997 and from time to time thereafter, JEFFTEX received purchase orders from JPI for the manufacturing of children's apparels.

8.  JPI placed these orders with JEFFTEX via telephone, fax and/or e-mails to JEFFTEX' office in Taipei, Taiwan.

9.  The price for the ordered children's apparel was agreed upon by JPI and JEFFTEX before each order of children's apparel was shipped.

10.  The orders were transported by ocean or air from Asia to ports in the United States.

11.  In order to take possession of the ordered children's apparel, JPI must first obtain the original shipping documents, such as the bills of lading and visas, from JEFFTEX.

12.  JPI obtained the original shipping documents in exchange for checks and/or post dated checks made by JPI for the benefit of JEFFTEX and as payment of the children's apparel (collectively and separately referred to herein after as the "Checks").

13.  JEFFTEX is the intended beneficiary of the Checks.

14.  JEFFTEX is the holder of the Checks, and the assignee of the payee's rights and remedies with respect to the Checks.

15.  JPI also delivered and tendered the written personal guaranty of payment by SAFDIEH in exchange for the original shipping documents.

16.    Said personal guaranty by SAFDIEH was an absolute and unconditional guaranty of payment.

17.    Between 2003 to 2004, JPI delivered and tendered to JEFFTEX 24 post-dated checks totaling $4,551,675.25, for JEFFTEX' release of the original shipping documents for the following invoices:

CZH03260; CZH03261, CZH03262, CZH03326, CZH03352,

CZH03159, CZH03169, CZH03187, CZH03188; CZH03189,

CZH03190, CZH03191, CZH03214, CZH03283,  CZH03286, HTL-47-HP-5, GHT-27-G-1, CZH03365, JIL-11-J-1, CZH03379,

CZH03387, CZH03428, KIL-16-K-3, CHT-15-G-4, JIL-66-J-4, JIL-66-J-3, HOL-22-H-2, HTL-79-HP-11, HTL-80-HP-12, HOL-51--H-2, HTL-63-HP-6, YBC-115-Y-1, HTL-116-HP-17, JIL-117-J-2,

JIL-118-J-3, KIL-88-K-7, HTL-89-HP-13, GHT-90-G-4, HTL-92-HHP-14, HTL-94-HP-15, KIL-95-K-8, GHT-58-G-2, JIL-60-J-4,

GHT-25-G-4, CZH-02032, KIL-50-K-3, CZH03409, CZH03410,

CZH03411, CZH03416, CZY040013, CZH03395, CZH03396, JIL-36-J-2, JIL-99-J-13, CWL-03-CW-30/11, CZY040066,

JIL-74-J-9, JIL-69-J-7, JIL-89-J-10, JIL-110-J-12, GHT-111-G-11,

JIL-112-J-13, KIL-23-K-1, JIL-22-J-4, JIL-40-J-7, GHT-39-G-1,

KIL-85-K-2, JIL-86-J-9, CZH03438, CZH03439, CZH03430,

CZH03431, CZH03432, CZH03433, CZH03434, CZH03435,

CZH03436, CZH03437, GHT-96-G-4, HTL-97-HP-3; JIL-98-J-12;

and JIL-100-J-14 (collectively, the "Ordered Merchandise").

18.     JPI subsequently placed a stop payment order on said 24 post-dated checks, making it impossible for each check to be paid when presented.

19.     The Checks subject to the stop payment orders created an unpaid debt owed by JPI to JEFFTEX for the children's apparel that was delivered to, accepted by, but unpaid by JPI.

### As and for a First Cause of Action
### (Liability as Drawer/Maker)

20.     Plaintiff repeats and realleges paragraphs 1-19 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow

21.     The aggregate purchase price for the Ordered Merchandise is $6,251,829.15 (the "Aggregate Purchase Price").

22.     To obtain the shipping documents for the Ordered Merchandise, JPI delivered and tendered the following "24 Post-Dated Checks" as partial payments of the $6,251,829.15 Aggregate Purchase Price:

   a.     JPI Trading Corp.'s Check No. 3602 dated December 11, 2003, directing North Fork Bank to pay the sum of $94,972.50; which check was delivered and tendered to replace JPI Trading Corp.'s Check No. 3356 dated November 18, 2003, directing North Fork Bank to pay the sum of $94,972.50;

   b.     JPI Trading Corp.'s Check No. 3357 dated November 20, 2003, directing North Fork Bank to pay the sum of $89,302.50;

   c.     JPI Trading Corp.'s Check No. 3358 dated November 22, 2003, directing North Fork Bank to pay the sum of $57,645.00;

   d.     JPI Trading Corp.'s Check No. 3492 dated December 24, 2003, directing North Fork Bank to pay the sum of $42,415.00;

   e.     JPI Trading Corp.'s Check No. 3542 dated December 27, 2003, directing North Fork Bank to pay the sum of $74,502.00;

   f.     JPI Trading Corp.'s Check No. 3600 dated January 7, 2004, directing North Fork Bank to pay the sum of $301,182.73;

g.   JPI Trading Corp.'s Check No. 3601 dated February 6, 2004, directing North Fork Bank to pay the sum of $301,182.73;

h.   JPI Trading Corp.'s Check No. 3666 dated January 30, 2004, directing North Fork Bank to pay the sum of $44,752.00;

i.   JPI Trading Corp.'s Check No. 3668 dated February 1, 2004, directing North Fork Bank to pay the sum of $33,024.00;

j.   JPI Trading Corp.'s Check No. 3802 dated February 10, 2004, directing North Fork Bank to pay the sum of $61,992.50;

k.   JPI Trading Corp.'s Check No. 3857 dated February 25, 2004, directing North Fork Bank to pay the sum of $68,720.00;

l.   JPI Trading Corp.'s Check No. 3982 dated March 15, 2004, directing North Fork Bank to pay the sum of $50,200.00;

m.   JPI Trading Corp.'s Check No. 3988 dated March 20, 2004, directing North Fork Bank to pay the sum of $50,309.50;

n.   JPI Trading Corp.'s Check No. 4055 dated April 14, 2004, directing North Fork Bank to pay the sum of $323,027.60;

o.   JPI Trading Corp.'s Check No. 3939 dated April 21, 2004, directing North Fork Bank to pay the sum of $254,081.00;

p.   JPI Trading Corp.'s Check No. 3940 dated May 11, 2004, directing North Fork Bank to pay the sum of $254,081.00;

q.   JPI Trading Corp.'s Check No. 3941 dated May 31, 2004, directing North Fork Bank to pay the sum of $254,081.00;

r.   JPI Trading Corp.'s Check No. 4131 dated April 25, 2004, directing North Fork Bank to pay the sum of $216,658.25;

s.   JPI Trading Corp.'s Check No. 4168 dated March 11, 2004, directing North Fork Bank to pay the sum of $210,285.00;

t.   JPI Trading Corp.'s Check No. 4090 dated May 24, 2004, directing North Fork Bank to pay the sum of $434,515.50;

u.   JPI Trading Corp.'s Check No. 4091 dated June 23, 2004, directing North Fork Bank to pay the sum of $434,515.50;

v.   JPI Trading Corp.'s Check No. 4330 dated June 1, 2004, directing North Fork Bank to pay the sum of $279,960.00;

w.  JPI Trading Corp.'s Check No. 4331 dated June 10, 2005, directing North Fork Bank to pay the sum of $515,830.95; and

x.  JPI Trading Corp.'s Check No. 4367 dated June 10, 2005, directing North Fork Bank to pay the sum of $74,439.00.

23.  The 24 aforementioned checks totaled $4,551,675.25 (hereinafter referred to as "Aggregate Sum of the 24 Post-Dated Checks").

24.  Each of the 24 Post-Dated Checks were properly and duly indorsed.

25.  Each of 24 Post-Dated Checks were presented for payment but payment was refused because JPI placed a stop payment order on all of the 24 Post-Dated Checks.

26.  JPI was the drawer of for all of the 24 Post-Dated Checks.

27.  JPI took delivery of and accepted the Ordered Merchandise.

28  Before and after delivery and acceptance of the Ordered Merchandise, JPI paid Jefftex $1,650,527.90.

29.  The total unpaid balance due on Ordered Merchandise is $4,551,675.25 (hereinafter, the "Unpaid Balance"), which amount is the same as the Aggregate Sum of the 24 Post-Dated Checks.

30.  JPI did not notify JEFFTEX that it placed a stop payment order on the 24 Post-Dated Checks at any time before the checks were presented for payment.

31.  There is no cause or justification for any stop payment order.

32.  Notice of the refusal of payment of the check and notice of the stop payment was given to JPI for each of the 24 Post-Dated Checks presented for payment.

33.  Demands were made upon JPI for the payment of each of the sums represented by the 24 Post-Dated Checks.

34.  Neither payment nor replacement checks were delivered to JEFFTEX as of the date of this complaint.

-6-

35.    By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment against JPI for the sum of $4,551,675.25, the Aggregate Sum of the 24 Post-Dated Checks, together with interest accruing from the date of each of the 24 Post-Dated Checks.

### As and for a Second Cause of Action
### (Breach of Contract)

36.    Plaintiff repeats and realleges paragraphs 1-35 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

37.    In consideration of Jefftex manufacturing and/or procuring the manufacturing of the Ordered Merchandise, JPI promised to pay Jefftex for same in the amount equal to the Aggregate Purchase Price.

38.    Jefftex sold and delivered the Ordered Merchandise to JPI.

39.    JPI purchased and accepted delivery of the Ordered Merchandise from JEFFTEX.

40.    JPI took possession of the Ordered Merchandise.

41.    $4,551,675.25 is the Unpaid Balance of the Aggregate Purchase Price.

42.    Notice of the Unpaid Balance due on the Ordered Merchandise was given to JPI and demand for the payment was made upon JPI.

43.    As of the date hereof, JPI continues to owe JEFFTEX the Unpaid Balance, and no payment have been made on any part of the balance due.

44.    By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment against JPI for the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise.

## As and for a Third Cause of Action
### (Account Stated)

45.    Plaintiff repeats and realleges paragraphs 1-44 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

46.    Invoices for the Ordered Merchandises were presented to JPI for payment.

47.    An account was taken and stated between the JEFFTEX and JPI which showed that the total Unpaid Balance due and owing for all Ordered Merchandise invoices by JPI was $4,551,675.25.

48.    JPI delivered and tendered checks as partial payments toward the $4,551,675.25 Unpaid Balance, without making any protest of the amount due on the invoices.

49.    The partial payments rendered the total Unpaid Balance due for the Ordered Merchandise and their invoices as an "Account Stated".

50.    Demand was duly made upon JPI for the payment of the Unpaid Balance due for the Ordered Merchandise, which balance still remains unpaid as of the date hereof.

51.    By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment against JPI for the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise.

## As and for a Fourth Cause of Action
### (Quantum Meruit)

52.    Plaintiff repeats and realleges paragraphs 1-51 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

53.    JEFFTEX manufactured and delivered the Ordered Merchandise to JPI.

54.    JEFFTEX and JPI agreed that the fair and reasonable value of the Ordered Merchandise to be $6,251,829.15, the Aggregate Purchase Price.

55.    JPI agreed to pay JEFFTEX this sum.

56.    JPI accepted Ordered Merchandise.

57.    JPI made a partial payment to JEFFTEX for the Ordered Merchandises.

58.    The Unpaid Balance of $4,551,675.25 is still due, owing and outstanding after said partial payment.

59.    JEFFTEX is entitled to payment of the reasonable value of their goods and services, demand for which was duly made upon JPI but the Unpaid Balance remains unpaid.

60.    By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment against JPI for the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise.

### As and for a Fifth Cause of Action
### (Unjust Enrichment)

61.    Plaintiff repeats and realleges paragraphs 1-60 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

62.    JPI will be unjustly enriched by JEFFTEX by accepting delivery of the Ordered Merchandise without paying for same.

63.    It would be inequitable and against good conscience to permit JPI to keep the Ordered Merchandises without requiring JPI to pay for same in its entirety.

64.    By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment against JPI for the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise.

## As and for a Sixth Cause of Action
### (Breach of Guaranty)

65.    Plaintiff repeats and realleges paragraphs 1-64 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

66.    SAFDIEH executed and delivered to JEFFTEX his written personal guaranties to pay the monies due and owing by JPI for the various invoices covered by the Ordered Merchandise.  Specifically, those guaranties were:

a.    $241,920.00 pursuant to a Guaranty of Payment dated October 14, 2003 that guaranteed the payment of 90% of the total sum of invoices CZH03260; CZH03261 and CZH03262;

b    $42,415.00 plus interest at the rate of 12% per annum pursuant to a Guaranty of Payment dated November 10, 2003 that guaranteed the payment of 65% of the total sum of invoice CZH03326 with interest;

c.    $74,502.03 plus interest at the rate of 12% per annum pursuant to a Guaranty of Payment dated November 18, 2003 that guaranteed the payment of 65% of the total sum of invoices CZH03352 with interest;

d    $602,365.45 plus interest at the rate of 12% per annum pursuant to a Guaranty of Payment dated December 2, 2003 that guaranteed the payment of 90% of the total sum of invoices CZH03159, CZH03169, CZH03187, CZH03188; CZH03189, CZH03190, CZH03191, CZH03214, CZH03283 and CZH03286 with interest;

e.    $77,776.00 plus interest at the rate of 12% per annum pursuant to a Guaranty of Payment dated December 12, 2003 that guaranteed the payment of 65% of the total sum of invoices HTL-47-HP-5 and GHT-27-G-1 with interest;

f       $61,992.50 plus interest at the rate of 12% per annum pursuant to a Guaranty of Payment dated December 29, 2003 that guaranteed the payment of 65% of the total sum of invoice CZH03365 with interest;

g.      $68,720.00 plus interest at the rate of 12% per annum pursuant to a Guaranty of Payment dated January 7, 2004 that guaranteed the payment of 65% of the total sum of invoice JIL-11-J-1 with interest;

h       $50,200.00 pursuant to a Guaranty of Payment dated February 3, 2004 that guaranteed the payment of 65% of the total sum of invoice CZH03379;

i.       $50,309.00 pursuant to a Guaranty of Payment dated February 3, 2004 that guaranteed the payment of 65% of the total sum of invoice CZH03387;

j       $323,027.60 pursuant to a Guaranty of Payment dated February 11, 2004 that guaranteed the payment of 50% of the total sums of invoices CZH03428, KIL-16-K-3, CHT-15-G-4, JIL-66-J-4 and JIL-66-J-3;

k.      $762,243.00 pursuant to a Guaranty of Payment dated January 26, 2004 that guaranteed the payment of 75% of $1,016,324.00 due and owing for invoices HOL-22-H-2, HTL-79-HP-11, HTL-80-HP-12, HOL-51--H-2, HTL-63-HP-6, YBC-115-Y-1, HTL-116-HP-17, JIL-117-J-2, JIL-118-J-3, KIL-88-K-7, HTL-89-HP-13, GHT-90-G-4, HTL-92-HHP-14, HTL-94-HP-15, KIL-95-K-8, GHT-58-G-2, JIL-60-J-4, GHT-25-G-4, CZH-02032, and KIL-50-K-3;

l       $216,658.25 pursuant to a Guaranty of Payment dated March 3, 2004 that guaranteed the payment of 50% of the total sums of invoices CZH03409, CZH03410, CZH03411, CZH03416; and CZY040013;

m.      $210,285.00 pursuant to a Guaranty of Payment dated March 10, 2004 that guaranteed the payment of 50% of the total sums of invoices,

CZH03395, CZH03396, JIL-36-J-2, JIL-99-J-13, CWL-03-CW-30/11 and CZY040066;

      n.    $482,795.00 pursuant to a Guaranty of Payment dated February 24, 2004 that guaranteed the payment of 50% of the total sum of invoices JIL-74-J-9, JIL-69-J-7, JIL-89-J-10, JIL-110-J-12, GHT-111-G-11, JIL-112-J-13, KIL-23-K-1, JIL-22-J-4, JIL-40-J-7, GHT-39-G-1, KIL-85-K-2 and JIL-86-J-9.

      o.    $795,790.95 pursuant to a Guaranty of Payment dated April 15, 2004 that guaranteed the payment of 60% of the total sum of invoices CZH03438, CZH03439, CZH03430, CZH03431, CZH03432, CZH03433, CZH03434, CZH03435, CZH03436, CZH03437, GHT-96-G-4, HTL-97-HP-3 and JIL-98-J-12; and

      p.    $74,439.00 pursuant to a Guaranty of Payment dated April 15, 2004 that guaranteed the payment of 60% of the total sum of invoice JIL-100-J-14;

67.    The above guaranties before interest total $4,135,439.25.

68.    JPI failed to pay the entire balance due and owing for Ordered Merchandise.

69.    JPI did not dispute the balance due and owing for the Ordered Merchandise.

70.    Notices were given to SAFDIEH of JPI's breach and failure to pay the Ordered Merchandise.

71.    Demands were made upon SAFDIEH for SAFDIEH's payment of the sums due and owing for the Ordered Merchandise, which payments were due immediately upon demand.

72.     SAFDIEH failed to and did not honor his written personal guaranties after demand was made therefore.

73.     SAFDIEH breached his written personal guaranties by failing to pay in accordance of said guaranties.

74.     Said guaranties still remains valid, effective and enforceable as of the date hereof.

75.     By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment against SAFDIEH for the sum of $4,135,439.25, the aggregate sum SAFDIEH guaranteed and is obligated to pay pursuant to the aforesaid guaranties, together with interest at the rate of 12% per annum as specified by the guaranty or 9% per annum if the guaranty did not specify an interest rate, accruing from the date JPI took possession of the Ordered Merchandise.

### As and for a Seventh Cause of Action
### (Fraud, Fraudulent Inducement and Misrepresentation)

76.     Plaintiff repeats and realleges paragraphs 1-75 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

77.     JPI has an ongoing pattern and history of non-payment and delinquent payment, with aged accounts in the millions of dollars.

78.     Because of the aged accounts, JEFFTEX refused to release goods ordered by and manufactured for JPI without advance payment and security by a third-party.

79.     In order to induce JEFFTEX to release the shipping documents for the Ordered Merchandise to JPI in lieu of actual collection and verification of full payment, JPI and SAFDIEH jointly and severally requested that JEFFTEX accept post-dated checks as partial payment of the sums due for the Ordered Merchandise together with the written personal guaranties of SAFDIEH.

-13-

80. Both JPI and SAFDIEH represented that JEFFTEX will be paid in full for the Ordered Merchandise.

81. JEFFTEX relying upon the representations of JPI and SAFDIEH, accepted the post-dated checks and SAFDIEH's guaranties, and upon which released the original shipping documents to JPI for the Ordered Merchandise.

82. The post-dated checks were duly and properly indorsed and presented for payment, but payment thereon was refused because of JPI's stop payment order on the post-dated checks.

83. The stop payment orders prevented JEFFTEX from actually receiving the payment for the Ordered Merchandise.

84. There is no cause or justification for the stop payment orders.

85. JPI and SAFDIEH never intended to pay for the Ordered Merchandise.

86. JPI and SAFDIEH, jointly and severally, affirmatively made material statements and representations that they knew to be false, for the purpose of and to fraudulently induced JEFFTEX to release the shipping documents for the Ordered Merchandise, which statements and representations JEFFTEX reasonably believed and relied upon when it released said shipping documents.

87. JPI, fraudulent induced and misrepresented JPI's payment of the Ordered Merchandise by issuing what appeared to be valid negotiable checks, and upon receiving the shipping documents it sought from JEFFTEX, JPI issued stop payment orders thereon.

88. As a consequence of JEFFTEX' reliance upon the aforesaid statements and representations, JEFFTEX was damaged by the sum of $4,551,675.25, the Unpaid Balance of the Ordered Merchandises, together with interest accruing from the date JPI took possession of the Ordered Merchandises.

89.    By reason of the foregoing, plaintiff JEFFTEX is entitled to a judgment based upon fraud against JPI and SAFDIEH, jointly and severally, for the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise.

### As and for an Eighth Cause of Action
### (Alter Ego)

90.    Plaintiff repeats and realleges paragraphs 1-89 with the same force and effect as though the allegations plead therein are separately set forth hereinbelow.

91.    JPI exists solely to serve SAFDIEH.

92.    SAFDIEH exercised complete dominion and control of JPI.

93.    JPI is operated with a complete disregard of corporate formalities.

94.    JPI is operated with inadequate capitalization.

95.    JPI has an overlap in ownership, officers, directors and personnel, and shares common office spaces, address and telephone numbers other entities where SAFDIEH is or was the president, chief executive officer, chairman or controlling person.

96.    JPI is a vehicle used by SAFDIEH to pay for his personal obligations.

97.    JPI is the alter ego of SAFDIEH.

98.    The adherence to the fiction of a separate corporate existence of JPI from SAFDIEH would result in an injustice to JEFFTEX.

99.    By reason of the foregoing, the corporate identity of JPI should be disregarded and the court should find JPI and SAFDIEH, jointly and severally, liable to JEFFTEX for the sum of $4,551,675.25, the aggregate unpaid purchase price balance, after all price adjustments and credits, together with interest accruing from the date JPI took possession of the Ordered Merchandise.

**WHEREFORE,** plaintiff JEFFTEX demands judgment in favor of plaintiff JEFFTEX and against the above captioned defendants as follows:

a.  on the First Cause of Action, a judgment against defendant JPI in the sum of $4,551,675.25, the aggregate sum of the 24 Post-Dated Checks, together with interest accruing from the date of each of the 24 Post-Dated Checks;

b.  on the Second Cause of Action, a judgment against defendant JPI in the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise;

c.  on the Third Cause of Action, a judgment against defendant JPI in the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise;

d.  on the Fourth Cause of Action, a judgment against defendant JPI in the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise;

e.  on the Fifth Cause of Action, a judgment against defendant JPI in the sum of $4,551,675.25, the Unpaid Balance, together with interest accruing from the date JPI took possession of the Ordered Merchandise;

f.  on the Sixth Cause of Action, a judgment against defendant SAFDIEH in the sum of $4,135,439.25, the aggregate sum SAFDIEH guaranteed to pay, together with interest at the rate of 12% per annum if the guaranty specified the rate of interest or 9% per annum if the guaranty did not specify an interest rate, accruing form the date JPI took possession of the Ordered Merchandise;

g.     on the Seventh Cause of Action, a judgment based upon fraud against JPI

and SAFDIEH, jointly and severally, in the sum of $4,551,675.25, the

Unpaid Balance, together with interest accruing from the date JPI took

possession of the Ordered Merchandise;

h.     on the Eighth Cause of Action, a judgment based against JPI and

SAFDIEH, jointly and severally, in the sum of $4,551,675.25, the Unpaid

Balance, together with interest accruing from the date JPI took possession

of the Ordered Merchandise; and

i.     together with costs, expenses, attorneys fees and disbursements, and such

other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 11, 2005

                                        Yours etc.,

                                        STEVEN WEINBERG.
                                        Gottesman, Wolgel, Secunda,
                                        Malamy & Flynn, P.C.
                                        Attorneys for Plaintiff
                                        11 Hanover Square
                                        New York, NY 10005
                                        Tel. (212) 495-0100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

JEFFTEX INTERNATIONAL LTD.,                          Index No. 603811/04

                          Plaintiff,                 **VERIFICATION**

              -against-

JPI TRADING CORP. and JOSEPH SAFDIEH,.

                          Defendants.
------------------------------------------------------------x

STATE OF NEW YORK, COUNTY OF NEW YORK, ss.:

      STEWART W. LEE, being duly sworn, deposes and says:

    1.    that he is an associate with the firm Gottesman, Wolgel, Secunda, Malamy & Flynn, P.C., attorneys for the plaintiff in the above captioned action; that he has read the foregoing complaint and knows the content thereof; that the same is true to his knowledge, except as to the matters stated to be alleged upon information and belief, and that as to those matters he believes them to be true;

    2.    that the grounds of his belief as to all matters in the complaint not stated to be upon his knowledge are based upon conversations with plaintiff's officers, employees, and/or attorneys, interviews with witnesses, review of correspondence between the parties, the case file maintained by deponent's firm, and/or other documents and instruments that are the subject of this lawsuit;

    3.    that the reason why this verification is made by deponent instead of the plaintiff is because the plaintiff is a foreign corporation.

Sworn to before me on this
11th day of October, 2005

                           STEWART W. LEE

Notary Public

LASHINA WILLIAMS
Notary Public, State Of New York
No. 01WI6033862
Qualified In Kings County County
Commission Expires November 29, 2005

-18-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

JEFFTEX INTERNATIONAL LTD.,                    Index No. 603811/04

                              Plaintiff,

           -against-

JPI TRADING CORP. and JOSEPH SAFDIEH,.

                              Defendants.
------------------------------------------------------------------ x

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK   )

    **STEVEN WEINBERG**, being duly sworn deposes and says:

    1.    Deponent is not a party to this action, is over eighteen years of age, and resides in the County of Nassau;

    2.    On October 11, 2005, deponent served the within Second Amended Verified Complaint upon:

> Tom Carulli
> Kaplan, Von Ohlen & Mannamillo, LLC
> Attorneys for Defendants
> 90 Park Avenue
> New York, NY 10016

by personally delivering a true and correct copy of same to said attorney for that purpose at a court conference held before Justice Ira Gammerman on October 11, 2005 at the courthouse located at 60 Centre Street, New York, New York, and said attorney accepted same.

Sworn to before me on this
_27th_ day of October, 2005

                      STEVEN WEINBERG

LASHINA WILLIAMS
Notary Public, State Of New York
No. 01WI6033862
Qualified In Kings County County
Commission Expires November 29, 2005

*Index No.* 603811/04    *Year 20*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFTEX INTERNATIONAL LTD.,

Plaintiff,

JPI TRADING CORP. and JOSEPH SAFDIEH

Defendants.

COPY

## SECOND AMENDED VERFIED COMPLAINT

GOTTESMAN, WOLGEL, SECUNDA,
MALAMY & FLYNN, P.C.

*Attorneys for*

**Plaintiff**

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* ..............................    Signature ................................................

Print Signer's Name ..........................................

*Service of a copy of the within*                                   *is hereby admitted.*

*Dated:*

..........................................................

*Attorney(s) for*

*PLEASE TAKE NOTICE*

Check Applicable Box

☐ NOTICE OF ENTRY    *that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*                  *20*

☐ NOTICE OF SETTLEMENT    *that an Order of which the within is a true copy will be presented for settlement to the*
*Hon.                                    one of the judges of the within named Court,*
*at*
*on                    20        , at            M.*

*Dated:*                                   GOTTESMAN, WOLGEL, SECUNDA,
MALAMY & FLYNN, P.C.

*Attorneys for*

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

*To:*

# EX. 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
JEFFTEX INTERNATIONAL LTD. and JEFF YOUNG,          Index No. 603811 / 2004
                                                                      Date Purchase   11-15-04
                              Plaintiffs,

                    - against -                                       **SUMMONS**

JPI TRADING CORP. and JOSEPH SAFDIEH,

                              Defendants.

-------------------------------------------------------------------------X

### TO THE ABOVE NAMED DEFENDANTS

You are hereby summoned and required to submit to plaintiff's attorney your answering papers on this motion within the time provided in the notice of motion annexed hereto. In case of your failure to submit answering papers, summary judgment will be taken against you by default for the relief demanded in the notice of motion.

The basis of venue designated is the place of business of the defendants, which is 1370 Broadway, New York. New York.

Dated: Kew Gardens, New York
          November 10, 2004

                                        Yours, etc.

                                        _____
                                        Dean Lakis
                                        PEARLMAN, APAT & FUTTERMAN,
                                        LLP
                                        80-02 Kew Gardens Road, Suite 5001
                                        Kew Gardens, NY 11415
                                        (718) 261-9460

Defendant's Address:
1370 Broadway
New York, New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

*Index 603811/2004*

JEFFTEX INTERNATIONAL LTD.
and JEFF YOUNG,

                              Plaintiff,

        -against-

JPI TRADING CORP. and JOSEPH SAFDIEH,

                              Defendants.

-------------------------------------------------------------------X

## NOTICE OF MOTION FOR SUMMARY JUDGMENT
## IN LIEU OF COMPLAINT

        PLEASE TAKE NOTICE that upon the summons the affidavit of Jeff Young, sworn to on 28th day of October, 2004, and the annexed affirmation of Dean Lakis, Esq., sworn to the 10th day of November 2004, with its exhibits annexed thereto, a motion will be made to this Court at a Motion Term, Part I thereof, Room 103, to be held in and for the County of New York at the County Courthouse in the City of New York on the 3rd day of December 2004, at 9:30 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard for summary judgment, pursuant to Section 3213 of the Civil Practice Law and Rules, in favor of the plaintiff's and against the defendant's, jointly and severally, for the sum of $4,861,299.71, plus interest, together with all costs, disbursements and legal fees of this action, upon the ground that this action is based upon an instrument for the payment of money only, and that there is no defense thereto, and for such and other further relief as the Court may deem just and proper; and The above-entitled action is brought to recover monies due on stopped payment checks and personal guarantees.

Pursuant to CPLR 2214(b) answering affidavits, if any, are required to be served upon

the undersigned at least seven days before the return date of this motion.

Dated: Kew Gardens, New York
      November 10, 2004

 

                                  Dean Lakis
                         PEARLMAN, APAT & FUTTERMAN. LLP
                         Attorneys for Plaintiffs
                         80-02 Kew Gardens Road Suite 5001
                         Kew Gardens, NY 11415
                         (718) 261-9460

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK
-------------------------------------------------------------------X    Index No.
JEFFTEX INTERNATIONAL LTD.
and JEFF YOUNG,

                          Plaintiffs,    **AFFIDAVIT**

        - against -

JPI TRADING CORP. and JOSEPH SAFDIEH,

                        Defendants.

-------------------------------------------------------------------X

      Dean Lakis, an attorney at law, affirms to the truth of the following under penalty

of perjury:

      1.    I am associated with Pearlman Apat & Futterman, LLP, attorneys for

Jefftex International, Ltd. ("Jefftex") and Jeff Young ("Young"), the plaintiff's herein. As

such, I a have personal knowledge of the facts and circumstances hereinafter set forth. I

make this affirmation in support of the instant motion pursuant to CPLR 3213 for

summary judgment based upon instruments for the payment of money only, to wit:

bounced checks and personal guarantees.

      2.    The relevant facts are set forth in the enclosed affirmation of the President of

Jefftex, Jeff Young.

      3.    After many years of doing business together, in November of 2003 the

defendant JPI through its principal, Joseph Safdieh ("Safdieh"), complained to our client

about tight cash flow and requested that the goods be released to them upon the tender of

post-dated checks from JPI and personal guarantees from Safdieh.  Plaintiff's, in good

faith, agreed to accommodate defendants.

      4.    After receiving $4,861,299.71 in goods from Jefftex based upon the post

dated checks and personal guarantees, JPI stopped payment on the checks. The only excuse tendered to the stopped payment was that Mr. Safdieh was having cash flow problems. At no time did the defendants raise any issue regarding the quality of the clothing or any other reason for stopping payment on the checks and the failing to make the payments justly due and owing plaintiff's.

5.    Specifically, the checks tendered, and the guarantees executed, are as follows:

(i)    JPI Check # 3602 in the sum of $94,792.50, and the replacement check therefore, JPI check # 3356, in the same sum of $94,792.50 (Exhibit "A").

(ii)    JPI check #'s 3357 & 3358 in the sums of $89,302.50 and $57,645.00, respectively, along with the guarantees therefore (Exhibit "B").

(iii)    JPI check #'s 3400 and 3401 in the sum of $53,009.40 and $53,360.45, respectively, along with the guarantee therefore (Exhibit "C").

(iv)    JPI check # 3492 in the sum of $42,415.00, along with the guarantee therefore (Exhibit "D").

(v)    JPI check #'s 3542 and 3543 in the sum of $74,502.00 and $19,869.85, respectively, along with the guarantee therefore (Exhibit "E"),

(vi)    JPI check #'s 3600 and 3601, each in the sum of $301,182.72, along with the guarantee therefore (Exhibit "F")

(vii)    JPI check #'s 3666 and 3668, in the sums of $44,752.00 and $33,024.00, along with the guarantee therefore (Exhibit "G"),

(viii)    JPI check # 3802 in the sum of $61,992.50 and the guarantee therefore (Exhibit "H")

(ix)    JPI check # 3857 in the sum of $68,720.00, along with the guarantee therefore (Exhibit "I")

(x)    JPI check #3982 in the sum of $50,200.00 and the guarantee therefore (Exhibit "J")

(xi)    JPI check #3988 in the sum of $50,309.50 and the guarantee therefore (Exhibit "K").

(xii)    JPI check #4055 in the sum of $323,027.60 and the guarantee

therefore (Exhibit "L").

(xi)    JPI check #'s 3939, 3940 and 3941 in the sums of $251,081.00, $254,081.00 and 254,081.00, respectively, along with the guarantee therefore (Exhibit "M"),

(xii)    JPI check #4131 in the sum of $216,658.25 along with the guarantee therefore (Exhibit "N"),

(xiii)    JPI check #'s 4162, 4163 & 4168 in the sums of $105,192.38. $105,192.38 and $210,285.00, along with the guarantee therefore (Exhibit "O")

(xiv)    JPI check #4090 in the sum of $434,515.50 and the guarantee therefore (Exhibit "P").

(xv)    JPI check #4330 in the sum of $279,960.00 and the guarantee therefore (Exhibit "Q").

6.    Demand was severally made upon JPI and Safdieh for payment, but payment was not made.

7.    CPLR 3213 provides that "when an action is based upon an instrument for the payment of money only, or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of complaint".

8.    The plaintiff's have provided true copies of the checks and guarantees as exhibits hereto in support of the instant motion.

9.    There is no defense to this action.

Dated: Kew Gardens, New York
      November 10, 2004

                                   Dean Lakis

EX. 3

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT

PART ___Part 27___

0603811/2004

JEFFTEX INTERNATIONAL LTD.
vs
JPI TRADING CORP

SEQ 1

SUMMARY    JUDGMNT/LIEU COMPLAINT

INDEX NO. _____

MOTION DATE __5/26/05__

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits _____ | |
| Replying Affidavits _____ | |

Cross-Motion:  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion *is denied. (er record)*

*It is so ordered. Enter    CR. R. Feis*

FILED

JUN – 1 2005

NEW YORK
COUNTY CLERK'S OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: ___5/26/05___

IRA GAMMERMAN
J.S.C.

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST

EX. 4

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK:  TRIAL TERM PART 27

- - - - - - - - - - - - - - - - - - - - - - - - - - X

JEFFTEX INTERNATIONAL LTD.,
                          Plaintiff

              - against -

JPI TRADING CORP. AND JOSEPH SAFDIEH,
                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 603811/04

                          September 14, 2006
                          60 Centre Street
                          New York, New York 10007


B E F O R E:    HONORABLE IRA GAMMERMAN, Justice


A P P E A R A N C E S:

GOTTESMAN, WOLGEL, MALAMY, FLYNN & WEINBERG, P.C.
Attorneys for the Plaintiff
11 Hanover Square
New York, New York   10005
BY:  STEVEN WEINBERG, ESQ.
     STEWART W. LEE, ESQ.


KAPLAN, von OHLEN & MASSAMILLO, LLC
Attorneys for the Defendants
90 Park Avenue, 18th Floor
New York, New York   10016
BY:  THOMAS CARULLI, ESQ.
     NICHOLAS E. PANTELOPOULOS, ESQ.


                          Joyce Fisher, C.S.R.
                          Official Court Reporter

Proceedings

1    THE COURT:  This case is 19110.  That number

2  should appear on all papers or communications.

3    Let me indicate the past history of the case

4  and then the most recent history.

5    The case bears the Index Number 603811 of '04

6  and my first contact with the case was on the 26 of May

7  of 2005.

8    When I see a case for the first time, I ask

9  the lawyers whether or not they want to stay in this

10  part or go to another judge.  And, if they stay in this

11  part, they sign a -- if they want to stay in this part,

12  they sign a stipulation vesting me with the authority

13  as a supreme court judge to handle the case.

14    They signed a stipulation and advised me of

15  the following facts:

16    That the case involved a claim for

17  $4.8 million on ten notes presumably executed by the

18  defendant in connection with sales made by the

19  plaintiff of clothing manufactured in Asia and sold to

20  the defendant who in turn sells it to the stores.

21    The attorney for the defendant advised me

22  that there was a counterclaim asserted for defects in

23  the garments, for late shipment and was seeking damages

24  of $12 million on the counterclaim.

25    The plaintiff was to -- I guess there must

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    have been a motion because I have no note about that,

2    but my note says plaintiff to serve a complaint within

3    ten days and answer within ten days thereafter.

4         I next saw counsel according to my notes on

5    the 29 of June of '05 at which time the case was

6    adjourned.  My next note is July 28 '05 and my note

7    says the plaintiff was to serve an amended complaint.

8         The next conference was October 11 '05 at

9    which point I told the lawyers that they had until

10   May 16 of '06 to complete discovery.

11        On that date, they came in, we set a trial

12   date of yesterday and someone put the case on the

13   calendar.  I assume it was the attorney for the

14   plaintiff.  It bears Calendar Number 06L3682.

15        My clerk advises me of the following:

16        On Monday she received a telephone call from

17   an individual who said that he was associated, not a

18   lawyer, but associated with the defendant and he

19   indicated that he was unhappy with the representation

20   that he was being given by the law firm because they

21   were too busy with other matters and were not paying

22   attention to his case and wanted to know if he could

23   get an adjournment of the case so that he could get a

24   new attorney.

25        My clerk advised me that she told him that if

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1   the attorney seeks to withdraw, the attorney makes an

2   appropriate motion.

3          The following day she received a call she

4   says from all of the attorneys, presumably attorneys

5   representing both parties, in which she was told that

6   the case was settled and that all that was needed was a

7   signature of various individuals who were out of the

8   country or not in the city and the attorneys wanted an

9   adjournment.

10          I told her that the case was going to

11   proceed, to tell the callers that the case was going to

12   proceed on the 14 and that if the case was settled, the

13   lawyers could come in and place the settlement terms on

14   the record.

15          Yesterday everybody appeared and I filled out

16   a jury slip, sent the lawyers out to pick a jury.  When

17   I came back from lunch, I asked my clerk as to where

18   the jury was being picked and was told that the

19   attorneys had gone to see Judge Silbermann.

20          I called Judge Silbermann and she said

21   yesterday, and I reconfirmed this with a phone

22   conversation with her today, that someone on behalf of

23   either the plaintiff or defendant told her that this

24   was a case that I had handled as a supreme court judge

25   sometime in 2002 or 2003 and that, without getting

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    anybody's consent or permission, I continued to handle

2    the case thereafter.

3          Whoever told her that was intentionally

4    misleading her.  Obviously, the case wasn't handled by

5    me in 2002 or 2003.  It has a 2004 index number.

6          When I asked her whether or not she looked at

7    the index number, she said the card was not available.

8    She then, based on this false information provided to

9    her by someone, I assume one of the people sitting at

10   the table in front of me, she wrote an order which she

11   has since rescinded randomly reassigning this case.

12         Now, I would be very interested to find out

13   which of you gentleman told her that this was a case

14   that I had handled before 2004 and that I continued to

15   handle it without getting anybody's permission or

16   consent.  Who was it?

17         Was it you?

18         MR. WEINBERG:  Your Honor, we all made a

19   mistake.  The judge asked us how does Judge Gammerman

20   have this case?  My associate, Mr. Lee, misspoke and

21   said I think it started in 2002.

22         THE COURT:  How could Mr. Lee have said that

23   when the index number was '04, counselor?

24         MR. WEINBERG:  It was a mistake, your Honor.

25   It wasn't an intentional misrepresentation.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1          Respectfully, none of us were a party to the

2     stipulation that we saw for the first time yesterday.

3          THE COURT:  Well, who signed the stipulation

4     on behalf of the plaintiff?

5          MR. WEINBERG:  It was signed by prior counsel

6     for which we substituted for them.  And that

7     stipulation was never in their file.  And there was a

8     prior counsel for defense.

9          THE COURT:  You mean neither firm that

10    presently is involved in this case was involved in the

11    case in May of 2005?

12         MR. WEINBERG:  Correct.  So, I apologize.  I

13    am offering an explanation.

14         THE COURT:  Okay.

15         MR. WEINBERG:  None of us knew that this --

16    none of us knew how you were assigned to the case and

17    that the parties themselves stipulated, the prior

18    attorneys for the parties themselves, stipulated to

19    your handling this as a justice of the court.  So, we

20    all honestly believed at the time that you were still

21    acting in a capacity as JHO.

22         And that we wanted -- and the reason for the

23    applications to Judge Silbermann was that both parties

24    believed that we felt we should proceed with motion

25    practice in the case and therefore needed it to be

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    referred to a justice of the supreme court.  And I

2    apologize.

3              THE COURT:  In any event, we're going to get

4    some jurors here.  We're going to pick a jury.

5              Where is Bea?

6              MR. WEINBERG:  If I may, your Honor.

7              THE COURT:  Yes.

8              MR. WEINBERG:  As both parties have advised

9    you previously, what both parties have instructed us to

10   do, and we have signed it and we're prepared to file it

11   today, is a stipulation of discontinuance without

12   prejudice.

13             THE COURT:  No, I'm not going to approve

14   that.  That's an adjournment, counselor.

15             Counselor, I'm not going to do it.

16   Counselor, you're going to pick a jury or I'm going to

17   dismiss the case.  You have a choice.  Those are your

18   only two choices.

19             MR. WEINBERG:  If you want to dismiss it,

20   dismiss it without prejudice.

21             THE COURT:  No, I'm not going to dismiss it

22   without prejudice.  I'm going to dismiss it for failure

23   to prosecute.  That's a dismissal with prejudice.

24             MR. WEINBERG:  Respectfully, it is not --

25   respectfully, the parties are entitled under the CPLR

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    to make motion practice.

2        THE COURT:  Counselor, you can make whatever

3    motion you want to vacate the dismissal.  You can do

4    whatever you want.  If you don't, if you're not

5    prepared to start picking a jury, and I'll have the

6    jurors brought in in a few minutes in this part, under

7    my supervision, it's my intention to dismiss the case

8    and then you can make whatever motions you want.

9        That dismissal will be with prejudice,

10   without interests, costs and disbursements.  And, if

11   the defendant wants it dismissed with prejudice, all

12   they have to do is bring the transcript to me.  As a

13   matter of fact, the defendant moved for a dismissal

14   yesterday.  That was my recollection.

15       Isn't that correct?

16       MR. PANTELOPOULOS:  Yes, that was correct,

17   your Honor, we did.

18       THE COURT:  I'm granting that motion unless

19   you --

20       MR. WEINBERG:  Not with prejudice, your

21   Honor.  Their application was to dismiss, but not with

22   prejudice.

23       THE COURT:  Are you willing to dismiss

24   without prejudice?

25       MR. CARULLI:  Your Honor, if I may, I wasn't

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    here yesterday.  So, I'm the only one.

2              THE COURT:  Yes.

3              MR. CARULLI:  Mr. Weinberg and I agree

4    that -- our clients have instructed us to execute and

5    we have executed --

6              THE COURT:  To discontinue without prejudice.

7              That application is denied.  I'm going to

8    dismiss with prejudice and you make whatever motion you

9    want.

10             I take it you're not prepared to pick a jury.

11             MR. WEINBERG:  Respectfully, our witness is

12   in Taiwan, your Honor.

13             THE COURT:  Counsel, I'll let you pick a jury

14   today and start Monday.  He can be here by Monday.

15             MR. CARULLI:  Your Honor, I start a trial in

16   Chicago.  I won't be back until October 3.

17             THE COURT:  I'm sorry, counsel.  This case

18   was scheduled for trial on May 16.  So that if you made

19   plans to go to Chicago to try a case next week, you

20   should have not made those plans because you knew from

21   May 16 that the case was going to be tried on

22   September 14.

23             MR. CARULLI:  Yes, your Honor, but next week

24   is September 19 and --

25             THE COURT:  Counselor, you thought the trial

Proceedings

1  would be over?

2           MR. CARULLI:  We thought.

3           THE COURT:  All right.  We'll start it right

4  now.  We'll start it today.

5           MR. CARULLI:  Your Honor, I don't want to --

6           THE COURT:  In any event, counsel, if you're

7  not prepared, I'm prepared, considering the witness is

8  in Taiwan, to have a jury picked today and start on

9  Monday.

10           The defendant is going to have to struggle

11  with whatever particular problems that creates for the

12  defendant's counsel.  If you're not prepared to do

13  that, then I'm going to dismiss the case with prejudice

14  and then you have whatever rights you have.

15           MR. WEINBERG:  Respectfully, your Honor --

16           THE COURT:  Yes.

17           MR. WEINBERG:  -- there is, according to the

18  CP --

19           THE COURT:  I can't hear you.

20           MR. WEINBERG:  While the trial date was set,

21  we expected to have the minimum amount of time afforded

22  by the CPLR to make our motions.

23           THE COURT:  Counsel, you had since May 16 to

24  make your motions.

25           MR. WEINBERG:  We were continuing discovery.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    Then we had the date to file the note of issue.

2        THE COURT:  Counselor, you're not prepared to

3    pick a jury today.  You refuse to do so?

4        MR. WEINBERG:  No.  I will have to make a

5    phone call, your Honor, but -- I will have to make a

6    phone call to see if that's possible.

7        THE COURT:  Okay.  Make the phone call.

8        MR. CARULLI:  Your Honor, if it's going -- if

9    you move the trial for next week, if we don't do it

10   today --

11       THE COURT:  Counsel --

12       MR. CARULLI:  -- I'm prepared if I have to.

13       THE COURT:  -- you have an exception.

14       Make your phone call.

15       (Case laid aside; later recalled.)

16       THE COURT:  Let's go back on the record here.

17       Yes, go ahead.  What did you learn as a

18   result of your phone call?

19       MR. WEINBERG:  As a result of my phone call,

20   I learned that neither party is ready or prepared to

21   go.

22       THE COURT:  Case is dismissed.

23       MR. WEINBERG:  Your Honor, may I finish the

24   record, please.

25       THE COURT:  Of course, of course.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1          MR. WEINBERG:  Thank you very much, your

2     Honor.

3               Our client is in Taiwan.  The records are in

4     Taiwan.  It takes a minimum of two weeks on an

5     emergency basis to get a visa to come here in order to

6     be present at trial.  I cannot honestly represent to

7     the Court -- if I may finish.

8          THE COURT:  Yes, go ahead.

9          MR. WEINBERG:  -- that we will, even if we

10    were to pick a jury today, which I am prepared to do,

11    that we can have the client here by Monday or Tuesday

12    of next week, in which case that would result in a

13    dismissal with prejudice which is obviously detrimental

14    to my client's claims.  A dismissal with prejudice is

15    also detrimental to the defendant's counterclaims.

16               Now, your Honor, there is case law.

17          THE COURT:  I take it defendant is not

18    prepared to proceed on the counterclaims today because

19    if I dismiss the plaintiff's case and you're ready to

20    go, I'll try the counterclaims.

21          MR. CARULLI:  Your Honor, if you said am I

22    prepared and my witness could be here, that answer is

23    yes.  But my client has instructed me to do a dismissal

24    without prejudice.  They have their own business

25    relationship.  So, yes, I could get them here.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    THE COURT:  But your client doesn't want to

2    proceed with the counterclaim as I understand it.

3    MR. CARULLI:  Only if they were to proceed.

4    THE COURT:  They're not going to proceed as I

5    understand it with respect to the --

6    MR. WEINBERG:  May I finish.

7    THE COURT:  I'll let you say whatever you

8    want with respect to the delay.

9    Let me finish, sir.

10    MR. WEINBERG:  Your Honor --

11    THE COURT:  Let me finish, sir.  Sit down.

12    Sit down.

13    MR. WEINBERG:  I advised the Court --

14    THE COURT:  On the record, you can sit down.

15    I'm directly you to sit down.  I'm directing you to sit

16    down.

17    MR. WEINBERG:  We're filing the voluntary

18    discontinuance today.  Respectfully, we do not need

19    Court approval.

20    THE COURT:  Counsel, I'm going to dismiss the

21    case with prejudice.  You have an exception.  You can

22    do whatever you think is in the interest of your

23    client, both of you.

24    The case is dismissed with prejudice.

25    Now, say whatever you want.

Proceedings

1          MR. WEINBERG:  Prior to the judge's

2     direction, we were confirming that we had advised the

3     Court the parties have signed a voluntary stipulation

4     of discontinuance which is the parties' right under

5     CPLR 3217.  It's not an application for Court approval.

6          The parties do not need Court approval

7     pursuant to CPLR 3217 Paragraph 2.  And that the

8     dismissal, respectfully to the Court, is a nullity as

9     to both parties under Commercial Rule 2.

10          THE COURT:  Counselor, when the -- if the

11     case is ever reinstated and nobody raises this

12     dismissal, then you're going to get away with this.

13          If somebody -- if the attorney -- if the

14     defendant is aware that the -- he has the right to have

15     the plaintiff's claim dismissed -- and I'm also

16     dismissing the counterclaim with prejudice.

17          So that it's up to you people.  If the

18     lawsuit is started again and nobody raises the prior

19     dismissal, the judge to whom that case will be assigned

20     will be totally unaware of that, counselor.

21          So, you take your chances.  It depends on the

22     various clients.

23          Maybe the client who called on Monday about

24     his unhappiness with his lawyers will decide he wants

25     to enforce the dismissal with prejudice and that may be

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    some interesting litigation in the future.

2           But in any event, as far as I'm concerned,

3    the case is dismissed with prejudice.

4           MR. WEINBERG:  Respectfully, I know we have

5    an exception under CPLR 3212.  As a matter of law,

6    again, the Court cannot preclude or truncate, shorten

7    the time for the parties to move for summary judgment

8    which at a minimum is 30 days by statute.

9           And, your Honor --

10          THE COURT:  That, counselor, that argument is

11   so lacking in merit.  There's nothing in that rule that

12   says that you can't schedule a trial two days after the

13   note of issue is filed.  That argument has been made

14   before and rejected.

15          But in any event, look, if nobody -- if

16   nobody raises this dismissal when the lawsuit is

17   started again, you've gotten away with that.  There's

18   no question about it.

19          I can't compel the defendant when the lawsuit

20   is started again, if it is started again, to raise this

21   prior dismissal.  I can't do that.  That's entirely up

22   to the lawyers and their client.

23          MR. WEINBERG:  I understand.  I am just

24   completing the record.

25          THE COURT:  Your client should be aware -- I

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    have no idea about the merits of this case.  There was

2    a claim for $4 something million, a counterclaim for

3    $12 million and I heard $100,000 discussed yesterday as

4    the settlement amount.  So, I have some serious

5    question as to the merits of both the claim and the

6    counterclaim.  But in any event, as far as I'm

7    concerned, on my records, the case is dismissed and

8    that's a dismissal with prejudice.

9            What happens in the future is up to another

10   judge.

11           MR. WEINBERG:  I'm finishing my record in

12   case we need to order the transcript and take this to

13   the appellate division.

14           THE COURT:  Okay.  Go ahead.  Say whatever

15   you want.

16           MR. WEINBERG:  Respectfully, the $100,000 was

17   consideration for discontinuing and having an extension

18   of time for the parties to resolve it, not as a

19   settlement in full for the value of the claim or the

20   counterclaim.

21           The pleadings were first joined with a second

22   amended complaint and answer shortly --

23           THE COURT:  Sometime in the summer of '05

24   according to my notes.

25           MR. WEINBERG:  It was after that, your Honor.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1          THE COURT:  I'm just looking at my notes.

2          MR. WEINBERG:  It was October '05.  There was

3    a second amended complaint and finally an answer.  It

4    was in May of '06 when discovery demands were first

5    served.

6          Respectfully, four months is not sufficient

7    in a complex case dealing with bills of lading,

8    guarantees, notes, to seek discovery of all of the

9    records with respect to overseas in Taiwan and here in

10   New York.  And the counterclaim deals with different

11   shipments and different records.

12         Last but not least, again, and I know we have

13   the Court's exception and I thank you --

14         THE COURT:  Okay.

15         MR. WEINBERG:  -- but we take exception to

16   the fact that this is a failure to prosecute.  It is

17   not.

18         When counsel has appeared at all court

19   conferences, when counsel has complied with discovery

20   demands, when counsel has filed a note of issue and

21   when witnesses and documents are overseas, there is a

22   reasonable amount of time that's afforded to the

23   parties to move for summary judgment and have the

24   people here ready for trial.

25         And, therefore, respectfully, for the

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    appellate division, that's an abuse of discretion to

2    dismiss with prejudice as a failure to prosecute when

3    that is not.

4            THE COURT:  Well, it's a failure to prosecute

5    when I direct a jury be selected and counsel refuses to

6    do so.

7            MR. WEINBERG:  Respectfully, there's First

8    Department case law on that subject, your Honor.

9            THE COURT:  Okay.

10           MR. CARULLI:  Thank you, your Honor.

11           THE COURT:  Take care.

12           MR. LEE:  Thank you.

13              *      *      *

14             C E R T I F I C A T E

15        I, Joyce Fisher, C.S.R., an official

16    court reporter of the State of New York, do hereby

17    certify that the foregoing is a true and accurate

18    transcript of my stenographic notes.

19

20

21                   Joyce Fisher
                     Official Court Reporter

22

23

24

25

EX. 5

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK
-------------------------------------------------------------------X    Index No. 603811/2004
JEFFTEX INTERNATIONAL LTD.
and JEFF YOUNG,

                  Plaintiffs,                    **REPLY AFFIRMATION**

       - against -

JPI TRADING CORP. and JOSEPH SAFDIEH,

                  Defendants.

-------------------------------------------------------------------X

      GILBERT SERRANO, an attorney duly admitted to practice law in the State of

New York, affirms the following under the penalty of perjury:

      1.    I am an attorney with the law firm Pearlman Apat & Futterman, LLP,

attorneys for Jefftex International, Ltd. ("Jefftex") and Jeff Young ("Young"), the

plaintiff's herein. As such, I am fully familiar with the facts and circumstances

hereinafter set forth.

      2.    I submit this reply affirmation in response to defendants' opposition and

in further support of Jefftex and Young's motion pursuant to CPLR 3213 for summary

judgment based upon instruments for the payment of money only, to wit: bounced

checks and personal guarantees.

      3.    Defendants' opposition is predicated on the arguments that plaintiff's

claims are barred by Business Corporation Law 1312(a) and that plaintiffs' motion

seeking summary judgment pursuant to CPLR 3213 must be denied as a matter of law

because it is procedurally defective, and the reason why payment was stopped on the

checks was because the goods were non-conforming and unmerchantable. The relevant

facts regarding the instruments and the nature of the business relationship between

plaintiffs and defendants are set forth in the affirmation of the President of Jefftex, Jeff Young.

4.    Defendants argue that upon information and belief plaintiff, Jefftex International is not a New York Corporation, authorized to do business in New York. Therefore, plaintiff's motion is barred by the provision of Business Corporation Law 1312(a). A simple check of the NYS Department of State Division of Corporations would reveal that Jefftex International Ltd. is an active New York Domestic Business Corporation.

5.    Defendants then argue that plaintiff's motion must be denied because it is not within the scope of CPLR 3213. The procedure for accelerated judgment under CPLR 3213 is appropriate where plaintiff establishes a prima facie case by virtue of a note and a failure to make payments called for therein (*DDS Partners v. Celenza*, 6 A.D.3d 347, 348, 775 N.Y.S.2d 319 [2004] ).

6.    The agreement between plaintiffs and defendant upon which this motion was brought contains an unequivocal and unconditional promise by defendants to repay plaintiffs for the goods delivered to them. Plaintiffs' claim rests entirely on defendants' failure to honor the checks in accordance with the terms of the agreement, and there is no need to refer to any extrinsic facts to prove the case. Despite defendants' assertions to the contrary, the fact that the underlying agreement was for the purchase of goods does not alter the essential character of the agreement as an instrument for payment of money only *(Solanki v. Pandya*, 269 A.D.2d 189, 702 N.Y.S.2d 297[2000]).    Defendant's argument about the timing of shipment or quality of merchandise is similarly unavailing. Defendants bargained for certain merchandize that they concededly received.    Extrinsic matters such as defendants unsubstantiated claim of non-

conformity have no bearing on the relevant issues (*see Valencia Sportswear v. D.S.G. Enters.*, 237 A.D.2d 171, 655 N.Y.S.2d 13 [1997]).

. 7.    Because of their long business relationship, plaintiffs agreed to release goods to defendants upon tender of post-dated checks from JPI and personal guarantees from its principal Joseph Safdieh.  After receiving $4,861,299.71 in goods from Jefftex based upon the post dated checks and personal guarantees, JPI stopped payment on the checks. The only excuse tendered to the stopped payment was that Mr. Safdieh was having cash flow problems. At no time did the defendants raise any issue regarding the quality of the clothing or any other reason for stopping payment on the checks. Defendants now raise the issue of quality.

8.    As this department has continuously held, a plaintiff is entitled to an accelerated procedure to commence and pursue an action to recover on an instrument for the payment of money only (*see* CPLR 3213). A typical example of an instrument within the meaning of the statute is "a negotiable instrument for the payment of money--an unconditional promise to pay a sum certain, signed by the maker and due on demand or at a definite time" (*Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 444, 646 N.Y.S.2d 308, 669 N.E.2d 242).

9.    A motion for summary judgment in lieu of complaint is appropriate where, as in this matter before the Court, "[i]t is incontestable that plaintiff would prove a prima facie case by proof of the note and a failure to make the payments called for by its terms" (*Seaman-Andwall Corp. v. Wright Mach. Corp.*, 31 A.D.2d 136, 137, 295 N.Y.S.2d 752, *affd.* 29 N.Y.2d 617, 324 N.Y.S.2d 410, 273 N.E.2d 138).  In the case before the Court, plaintiffs have proved the existence of various notes, and have proven that defendants have failed to make payments called for by its terms by stopping payments on the various notes.

10.    Contrary to defendant's contention, there is nothing in the note which requires reference to another document to determine its meaning. Thus, there is no relying on extrinsic evidence, to wit, the timing or quality of the goods, to create an ambiguity in the promissory notes of written checks which are complete and clear and unambiguous upon its face, (*Intercontinental Planning v. Daystrom, Inc.,* 24 N.Y.2d 372, 379, 300 N.Y.S.2d 817, 248 N.E.2d 576; *accord WWW Associates, Inc. v. Giancontieri,* 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 566 N.E.2d 639).

11.    By plaintiff's own admission, duplicate checks for the same merchandise were written, thus underscoring plaintiff's contention that the reason the checks were stopped was because the goods were non-conforming.  In any event, the checks makes no reference to the timing or conformity of the merchandize nor does it state that its terms are to be defined by reference to any other document. Thus, it can be ascertained, without resort to extrinsic evidence, that plaintiff had a right to repayment under the note (*contrast Matas v. Alpargatas SAIC,* 274 A.D.2d 327, 711 N.Y.S.2d 178).

12.    Moreover, even if defendant asserted defenses which "might raise issues outside the note, that does not change its character as one for the payment of money only" (*Seaman-Andwall. supra,* 31 A.D.2d at 137, 295 N.Y.S.2d 752). Defendant's claim of loss of good will from its customers, is conclusory and unsubstantiated by the record, not relevant to the matter before the Court, and is therefore, insufficient to defeat plaintiff's motion for summary judgment. The issues before the Court remains clear: The checks were made payable to plaintiffs by defendants: they were guaranteed by defendant Joseph Safdieh; and the payments of said checks were stopped by defendants.  Defendants in their opposition do not dispute the validity of the checks, rather they dispute the net amount owed.   In addition to summary judgment, as agreed

upon on Joseph Safdieh guarantee, plaintiffs are also entitled to reasonable attorneys' fees and costs expended in connection with the enforcement of its rights to collect on the note. Accordingly, the matter should be remanded for a hearing on that issue. (*see Simoni v. Time-Line, Ltd., 272 A.D.2d 537, 708 N.Y.S.2d 142*).

13.    The language in the guarantee is unconditional.    "It is the intent of the undersigned that this Guaranty shall constitute an absolute, unconditional and continuing guaranty of JPI's obligation for the purposes hereinbefore set forth, to be and continue in full force and effect until JPI's obligations are paid in full". The guarantee does not make any mention of timing and conformity.  Defendants' claim of non-conforming goods is precluded by the unconditional language and nature of the guarantees. (*Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974; *Bank Leumi Trust Co. of New York v. D'Evori International Inc.*, 163 A.D.2d 26, 34, 558 N.Y.S.2d 909, 916.)

14.    Even if the notes were issued to plaintiffs in exchange for his promise of future merchandize delivery, even assuming the existence, and a subsequent breach, of an executory promise does not create a defense against a holder in due course. UCC § 3-304(4)(b); *Aryeh v. Eastern International*, 54 A.D.2d 850, 388 N.Y.S.2d 286. Sections 3-301 and 3-302 of the New York Uniform Commercial Code (hereafter "UCC") provide as follows:§ 3-301. Rights of a Holder: The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name. § 3-302. Holder in Due Course (1) A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. (2) A payee may be a holder in due course.

15.    This court has previously held that a breach of an executory promise subsequent to the receipt of an instrument by the holder does not create a defense which may be asserted against the holder (see *Gordon Supply Co. v. South Sea Apts.*, 23 A.D.2d 666, 257 N.Y.S.2d 237; *Petroleum Acceptance Corp. v. Queen Anne Laundry Serv.*, 265 App.Div. 692, 40 N.Y.S.2d 495; see, also, *Aryeh v. Eastern Int.*, 54 A.D.2d 850, 388 N.Y.S.2d 286).

16.    In the case before the Court, checks were tendered, and the guarantees were executed. Demand was made upon JPI and Safdieh for payment, but payment was not made. CPLR 3213 provides that "when an action is based upon an instrument for the payment of money only, or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of complaint". The plaintiff's have provided true copies of the checks and guarantees as exhibits hereto in support of the instant motion.   Defendants have not provided a defense to this action.

WHEREFORE, it is respectfully requested that this Court grant the motion of plaintiff Jefftex International LTD. and Jeff Young in its entirety, dismissing any counterclaims along with any further relief as this Court seems just and reasonable including the awarding of cost and attorneys' fees.

Dated: Kew Gardens, New York
      May 24, 2005

Gilbert J. Serrano