UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JEFFTEX INTERNATIONAL, LTD.                Civil Action No. 07 CV 10460 (TPG)

              Plaintiff,

      - against -

JPI TRADING CORP. and JOSEPH SAFIDEH,

              Defendants.              *Assigned to:*
                                           Hon. Thomas P. Griesa, U.S.D.J.
-------------------------------------------------------x

### AFFIRMATION BY STEVEN WEINBERG
### IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS

      STEVEN WEINBERG, an attorney admitted to practice before this Court and the

courts of the State of New York, hereby affirms and declares under the penalty of perjury

under the laws of the United States of America and pursuant to the 28 U.S.C. § 1746 that

the following is true and correct:

*Preliminary Statement*

      1.     I am a member of Gottesman, Wolgel, Malamy, Flynn & Weinberg, P.C.,

the attorneys for plaintiff JEFFTEX INTERNATIONAL, LTD. ("Jefftex") in the above

captioned lawsuit.

      2.     This affirmation is submitted on behalf of the plaintiff Jefftex and in

OPPOSITION to the pre-answer motion by defendants JPI TRADING CORP. ("JPI")

and JOSEPH SAFDIEH ("Safdieh") which seeks to dismiss this lawsuit pursuant to Rule

12 of the Federal Rules of Civil Procedure ("FRCP") on the grounds of: (i) *res judicata*,

(ii) collateral estoppel, and (iii) failure to join indispensable parties.[1]

---

[1] Defendants' Pre-Answer Motion to Dismiss does not challenge this Court's diversity jurisdiction and does not seek dismissal on that ground. It does however suggest in a footnote that the parties' diversity of citizenship will be lost if a wholly distinct and dissolved NY corporation is found to be an indispensable

3.      Defendants' pre-answer motion initially sought dismissal on the ground that no personal service was made on Defendant Safdieh. This part of the motion is now moot. Defendants are no longer contesting service of the summons and complaint on Defendant Safdieh, and have withdrawn and waived any defense based on lack of personal jurisdiction.

### The Stipulation of Discontinuance Without Prejudice Executed in the Prior Action Binds The Parties in this Action

4.      The instant action is neither barred by *res judicata* nor collaterally estopped by the prior state court action, ***Jefftex International Ltd. v. JPI Trading Corp. and Joseph Safdieh***, NY Supreme Court, NY County, Index No. 603811/04 (the "Prior State Action").

5.      Defendants' motion completely ignores that the prior action was discontinued <u>without</u> prejudice by a stipulation signed by the attorneys for all the parties in that action. A true and complete copy of the executed Stipulation of Discontinuance, which explicitly states the discontinuance is without prejudice, is annexed hereto and made a part hereof as EXHIBIT A.

6.      Defendants' failure to disclose the Stipulation of Discontinuance is more than just disingenuous. Their omission of the Stipulation from their motion papers is improper and suspect.

7.      This Court should be aware that the defense counsel who now represents the Defendants in the above captioned action <u>is the same defense counsel</u> who not only

---

party to this action. The suggestion is specious. As will be explained in plaintiff's Memorandum of Law in Opposition, as well as the Declaration by Plaintiff's President all of the real parties of interest are already named in this lawsuit.

agreed to <u>but signed</u> the Stipulation which explicitly states that the Prior State Action "is discontinued, without prejudice". *See* EXHIBIT A.

### Defendants' Counsel Steadfastly Stood By the Stipulation of Discontinuance Without Prejudice

8.      Nor did defense counsel's involvement stop with the stipulation's execution. Defense counsel joined plaintiff's counsel in notifying Judicial Hearing Officer Ira Gammerman ("J.H.O. Gammerman") that the parties discontinued the Prior State Action without prejudice. After J.H.O. Gammerman *sua sponte* dismissed the action "with prejudice", defense counsel and plaintiff's counsel walked together to the clerk's office and filed the stipulation that they had already executed on the start of that day. *See* EXHIBIT A.

9.      Defense counsel's actions, which included the filing of the Stipulation of Discontinuance, reflect the parties' agreement to discontinue the action without prejudice, regardless whether the discontinuance effectively took place before, during, or after J.H.O. Gammerman's *sua sponte* dismissal. As far as the parties were concerned, the Stipulation controls and the *sua sponte* dismissal was a legal nullity.

10.     The transcript for the September 14, 2006 appearance before J.H.O. Gammerman (the "Transcript") shows that every action taken by defendants' counsel was guided by and in accord with the Stipulation of Discontinuance without prejudice that they had just executed.

11.     Right after executing the Stipulation of Discontinuance, the parties' counsel appeared before J.H.O. Gammerman. That appearance included the following dialog:

THE COURT:    In any event, we're going to get some jurors here.  We're going to pick a jury.  Where is Bea?

MR. WEINBERG: If I may, your Honor.

THE COURT:    Yes.

MR. WEINBERG: As both parties have advised you previously, what both parties have instructed us to do, and we have signed it and we're prepared to file it today, is a stipulation of discontinuance without prejudice.

THE COURT:    No, I'm not going to approve that.  That's an adjournment, counselor.  Counselor, I'm not going to do it.  Counselor, you're going to pick a jury or I'm going to dismiss the case.  You have a choice.  Those are your only two choices.

MR. WEINBERG: If you want to dismiss it, dismiss it without prejudice.

THE COURT:    No, I'm not going to dismiss it without prejudice.  I'm going to dismiss it for failure to prosecute.  That's a dismissal with prejudice.

Transcript, p. 7, lines 8-23.  A true and correct copy of the Transcript is annexed here and made a part hereof as EXHIBIT H.

12.    The parties however did not need J.H.O. Gammerman's approval to discontinue the action, even if the discontinuance was without prejudice.  No court approval was needed.  The parties were free to discontinue their prior action at any time before it was submitted to the trier of fact, and did exercise that right and remedy on September 14, 2006.

13.    Defense counsel's decision and action before the J.H.O. Gammerman reaffirmed the parties' binding signed contract to discontinue without prejudice.

14.    For example, after refusing to recognize the parties' executed Stipulation of Discontinuance, J.H.O. Gammerman offered to dismiss the prior action on defense counsel's oral application made the day before.  Rather than accept, defense counsel rejected the offer, and informed J.H.O. Gammerman that the parties have a signed agreement to discontinue without prejudice.  Specifically, the following dialog occurred:

> THE COURT:      Counselor [Weinberg], you can make whatever motion you want to vacate the dismissal.  You can do whatever you want.  If you don't, if you're not prepared to start picking a jury, and I'll have the jurors brought in in a few minute in this part, under my supervision, it's my intention to dismiss the case and then you can make whatever motions you want.
>
> The dismissal will be with prejudice, without interest, costs, and disbursements.  And, if the defendants want it dismissed with prejudice, all they have to do is bring the transcript to me.  <u>As a matter of fact, the defendant moved for a dismissal yesterday</u>.  That was my recollection.
>
> Isn't that correct?
>
> MR. PANTELOPOULUS [CO-DEFENSE COUNSEL]:  Yes, that was correct your Honor, we did.
>
> THE COURT:      I'm granting that motion unless you –
>
> MR. WEINBERG [PLAINTIFF'S LEAD COUNSEL]:  Not with prejudice, your Honor.  Their application was to dismiss, but not with prejudice.
>
> THE COURT:      <u>Are you willing to dismiss without prejudice</u>.
>
> MR. CARULLI [DEFENDANTS' LEAD COUNSEL]:  Your Honor, if I may, I wasn't here yesterday.  So I'm the only one.
>
> THE COURT:      Yes.

MR. CARULLI:    Mr. Weinberg and I agree that -- <u>our clients have instructed us to execute and we have executed</u> –

THE COURT:    To discontinue without prejudice.  That application [by co-defense counsel Nicholas Pantelopoulos] is denied.  I'm going to dismiss with prejudice and you make whatever motion you want.

See **EXHIBIT H** - Transcript, p.89, lines 2-25 & p. 10, lines 1-9. (emphasis added).

15.    When J.H.O. Gammerman asked if the defense was ready to proceed on defendants' counterclaims, defense counsel steadfastly refused and explained that he cannot because his client instructed him to execute a stipulation to discontinue without prejudice.  Specifically, defense counsel said:

THE COURT:    I take it defendant is not prepared to proceed on the counterclaims today because if I dismiss the plaintiff's case and you're ready to go, I'll try the counterclaims.

MR. CARULLI:    Your Honor, if you said am I prepared and my witness could be here, that answer is yes.  <u>But my client has instructed me to do a dismissal without prejudice.</u>  They have their own business relationship.  So, yes, I could get them here.

THE COURT:    But your client doesn't want to proceed with the counterclaim as I understand it.

MR. CARULLI:    Only if they were to proceed.

THE COURT:    They're not going to proceed as I understand it with respect to the --

See **EXHIBIT H** - Transcript, p. 12, lines 17-25 & p. 13, lines 1-5. (emphasis added).

16.    In fact defense counsel personally could not proceed and did not want to proceed himself.  According to the Transcript:

MR. WEINBERG: Respectfully, our witness is in Taiwan, your Honor.

THE COURT:    Counsel, I'll let you pick a jury today and start Monday. He can be here by Monday.

MR. CARULLI:    Your Honor, I start a trial in Chicago.  I won't be back until October 3.

THE COURT:    I'm sorry, counsel.  This case was scheduled for trial on May 16.  So that if you made plans to go to Chicago to try a case next week, you should have not made those plans because you knew from May 16 that the case was going to be tried on September 14.

MR. CARULLI:    Yes, your Honor, but next week is September 19, and --

THE COURT:    Counselor, you thought the trial would be over.

MR. CARULLI:    We thought.

THE COURT:    All right.  We'll start it right now.  We'll start it today.

MR. CARULLI:    Your Honor, I don't want to --

*See* ***EXHIBIT H*** - Transcript, p. 9,  lines 11-25 & p. 10, lines 1-5. (emphasis added).

17.    Justice Gammerman even <u>told</u> defense counsel that "if the defendants wants it dismissed with prejudice, all they have to do is bring the transcript to me." Transcript, p. 8, lines 10-12.  <u>But they did not</u>.  Instead, defense counsel walked with plaintiff's counsel, with full cooperative intent, without any protestation or reservation, and filed the Stipulation of Discontinuance without prejudice on September 14, 2006. *See* ***EXHIBIT A***.  *See also* ***EXHIBIT H*** -Transcript, p. 8, lines 23-25 and p. 9, lines 1-9.

18.    Defendants and their counsels have charted their course, and cannot now disavow their written agreement to discontinue without prejudice or disown their prior acts.

7

### *The Stipulation of Discontinuance is a Valid and Binding Contract*
### *That the Court is Without Power to Set Aside or Change*

19.     The executed Stipulation is a binding and enforceable contract.

20.     Defense counsel's open court acknowledgement and reaffirmation of the parties' agreement to discontinue without prejudice is binding and enforceable. *See* ¶¶ 8 - 15 above. Defendants are contractually and equitably estopped from taking a contrary legal position in this action merely because they want to evade or avoid their $4.5 million debt to Plaintiff Jefftex.

21.     Defendants' *res judicata* and collateral estoppel defense is premised solely on the *sua sponte* dismissal by J.H.O. Gammerman, and their mistaken belief that it can void the parties' contract. It cannot and does not.

22.     The parties' contract cannot be undone *sua sponte* by J.H.O. Gammerman or by the court that instilled J.H.O. Gammerman with a cloak of judicial authority. (*See* **EXHIBIT J** which is a true and complete copy of the Order of Reference issued in the prior action and which is annexed here and made part herof.)

23.     The parties were well within their statutory and inherent right to stipulate to discontinue that their lawsuit without prejudice so that either party could pursue their claims again subject only to the defense of statute of limitation. They also have the right to chart the course of their own lawsuit.

24.     In the absence of a motion by a party to the contract – and there was none made – J.H.O. Gammerman and the court was without any authority to void or rewrite the parties' contract.

### *The Stipulation Removed All Pending Case and Controversy*

25.    J.H.O. Gammerman's *sua sponte* rejection of the parties' Stipulation of Discontinuance without prejudice and *sua sponte* dismissal is of no legal effect.  It was a complete nullity.

26.    As defense counsel knows, since they were signatories to the Stipulation of Discontinuance, the parties signed the stipulation discontinuing the Prior State Action before the September 14, 2006 calendar call.  *See* ¶ 13 above.  At that moment, the parties entered into a valid binding contract to discontinue their claims without prejudice which effectively removed any case or controversy for the court to adjudicate or dismissed.  That contract to discontinue without prejudice was reaffirmed before J.H.O. Gammerman on September 14, 2006.  *See* ¶¶ 11 - 17 above.

27.    There is no momentous import that the executed stipulation was not filed immediately on its execution.  There was no such requirement in New York's Civil Practice Law and Rules ("NY CPLR"), the New York's Rules of Court ("NY Court Rules") or the New York's Rules of Commercial Division of the Supreme Court ("Commercial Division Rules").  A true and complete copy of the Commercial Division Rules in effect on September 14, 2006 is annexed here as EXHIBIT I.  (The current version of the Commercial Division Rules are now part of the NY Court Rules and denominated therein as Section 202.70).

28.    The parties were only required to notify the court of the discontinuance, which the parties' counsel collectively did when they appeared before J.H.O. Gammerman on September 14, 2006.

29.     There was also no requirement to secure the court's approval or review to file their Stipulation of Discontinuance without prejudice.  As evident by the acceptance and filing of the Stipulation by the clerk of the state court on September 14, 2006, no court order was required.  *See Exhibit A*.  The parties had a statutory right to discontinue without prejudice without court approval.  *See NY CPLR Rule 3217*.

30.     It is the filing of the Stipulation of Discontinuance that transforms it to a court order and disposes of the entire case.  The momentary delay in filing does not void the executed Stipulation of Discontinuance as a contract.  Nor should the one or two hours between the execution of the stipulation and its filing be an invitation for the J.H.O. Gammerman or the court to *sua sponte* eradicate the parties' contract.  It should not be, and it is certainly not, a race to the clerk's office.

31.     More fundamentally, the court cannot deprive the parties of the effect of their contract, merely because the filing occurred after the notification to J.H.O. Gammerman.  It will be absurd to suggest that there should be different result, that the court could alter the parties' contract while the other leaves the court bound to the parties' contract, depending upon whether the stipulation is filed before or after the notification to the court.

32.     For these reasons, J.H.O. Gammerman's *sua sponte* rejection and dismissal does not invalidate the parties' statutory right to discontinue the action without prejudice.  *See* Transcript, p. 8, lines 13-18 ("No, I'm not going to approve that ... that's an adjournment ... Counselor, you are going to pick a jury or I'm going to dismissed the case ... Those are your only choices.")

*Defendants' Unclean Hands*

33.     What is most disturbing about defendants' motion is that defendants have unclean hands.

34.     As stated in the accompanying declaration of Jeff Young, Jefftex' President, Jefftex was willing, able and ready to start trial on September 13, 2006. Plaintiff filed a Note of Issue on September 6, 2006.  A true and correct copy of plaintiff's Note of Issue is annexed here and made a part hereof as EXHIBIT K.

35.     Joseph Safdieh, JPI's President, however, was the only reason that Jeff Young was still in Taiwan instead of New York on September 13, 2006.

36.     Safdieh agreed to pay down the debt at issue in the Prior State Action with his personal check in the sum of $100,000, which was supposed to evidence defendants' good faith intent to have settlement discussion if Jefftex discontinues the action.  A copy of the Safdieh's $100,000 check is annexed here and made a part hereof as EXHIBIT F.

37.     On September 12, 2006, on the eve of trial, Safdieh called the deal off.  By then it was too late for Jefftex' President to fly from Taiwan to New York.

38.     On September 13, 2006, the original trial date, J.H.O. Gammerman denied our application for a brief adjournment to allow our client to fly to New York, and to allow us to make dispositive motions on certain claims such as defendant Safdieh's liability pursuant to the his personal guaranties.  Over our objections, J.H.O. Gammerman directed that the parties' attorneys commence jury selection on September 13, 2006.

39.     Defendants, by their counsel, then joined plaintiff in making an application to have the case reassigned to another judge so that the parties can have dispositive motion practice and hopefully narrow the issues for trial.  We were not aware

at that time that Jefftex' prior attorneys (who we replaced) had consented and signed a stipulation for the Order of Reference to J.H.O. Gammerman. Defendants' counsel, Nicholas E. Pantelopoulos, Esq., who joined in the application was also unaware that his colleague, Thomas Carrulli, Esq., had signed that same stipulation on May 26, 2005 on behalf of defendants. A true and complete copy of the stipulation consenting to the Order of Reference to J.H.O. Gammerman is annexed here and made a part hereof as EXHIBIT L.

40.     On the morning of September 14, 2006, in the rotunda of the 60 Centre Street courthouse, defendants had changed their minds yet again, and now authorized their attorneys to discontinue the action without prejudice. *See* ¶¶ 5 & 7 -8 above. In that rotunda, the parties' attorney executed the Stipulation to Discontinue without prejudice, and then the parties went together to notify J.H.O. Gammerman of the discontinuance. *See Exhibit A.*

41.     Notwithstanding what followed after notifying J.H.O. Gammerman of the discontinuance, defendants, by the same attorneys, walked to the clerk's office and filed the Stipulation of Discontinuance with plaintiff's counsel. *See Exhibit A.* A computer print out of the Court minutes for the prior action and the documents filed therein, as published by the Supreme Court for the State of New York for the County of New York is annexed here and made a part hereof as EXHIBIT M.

42.     Yet, now, defendants and their counsel take a legal position that is completely contrary to the contracts they signed and the actions they took, without disclosing to this Court their clients' past role in discontinuing the prior action.

*Conclusion*

43.     There is no factual basis to hold that the prior state action now bars this action. Nor, for the reasons set forth in the accompanying Declaration of Jeff Young, is there any factual basis to find that this action lacks any indispensable parties. For the reasons set forth in the accompanying Memorandum of Law in Opposition, there is also no legal basis to dismiss this action on the grounds of *res judicata*, collateral estoppel, or failure to join an indispensable party.

44.     Defendants are bound by the terms of their contract they voluntarily and willingly entered. Their past actions now foreclose their rights to raise *res judicata* or collateral estoppel.

WHEREFORE, for each and every reason set forth herein and the aforesaid accompanying papers, it is respectfully submitted that this Court DENY each and every part of defendants' pre-answer motion in its entirety, with prejudice, and grant plaintiff such other and further relief this Court deems just and proper.

Dated: New York, New York
       April 23, 2008

STEVEN WEINBERG

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

JEFFTEX INTERNATIONAL LTD.,                          Index No. 603811/04

                                   Plaintiff,        **STIPULATION**
                                                     **OF DISCONTINUANCE**

                    - against -

JPI TRADING CORP. and JOSEPH SAFDIEH,                *Assigned to:*
                                                     Hon. Ira Gammerman
                                   Defendants.

------------------------------------------------------------x

**IT IS HEREBY STIPULATED AND AGREED,** by and between the

undersigned, the attorneys of record for all parties to the above entitled action, that

whereas no party hereto is an infant, incompetent person for whom a committee has been

appointed or conservatee and no person not a party has an interest in the subject matter of

the action, the above entitled action be, and the same hereby is discontinued, without

prejudice, and without costs to either party as against the other.

    **IT IS FURTHER STIPULATED AND AGREED** that this Stipulation to

Discontinue Action Without Prejudice may be executed in one or more counterparts

which together shall constitute one complete original document.

    **IT IS FURTHER STIPULATED AND AGREED,** that this Stipulation to

Discontinue Action Without Prejudice may be filed with the Clerk of the Court by any

party without notice to any other party.

Dated: New York, New York
    September 12, 2006

RECEIVED

SEP 14 2006

NEW YORK
COUNTY CLERKS OFFICE

THOMAS G. CARULLI                           STEWART W. LEE
NICHOLAS E. PANTELOPOULOS                   Gottesman, Wolgel, Malamy,
Kaplan, von Ohlen & Massamillo, LLC         Flynn & Weinberg, P.C.
Attorneys for Defendants                    Attorneys for Plaintiff

1

# R E C E I P T

## COUNTY CLERK
## NEW YORK COUNTY

## 009573

→

```
INDEX NUMBER 603811  YEAR 2004
17 STIP                      35.00
TOTAL                        35.00
CASH                         35.00
-----------------------------------
CONS CASHIER    DATE    TIME  TERM
-31941 1000  06 SEP 14 11:44 AM 60-3
```

**NORMAN GOODMAN**
**COUNTY CLERK AND CLERK OF**
**THE SUPREME COURT**

160

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

JEFFTEX INTERNATIONAL LTD.,                         Index No. 603811/04

                              Plaintiff,            **STIPULATION
                                                    OF DISCONTINUANCE**

         - against -

JPI TRADING CORP. and JOSEPH SAFDIEH,               *Assigned to:*
                                                    Hon. Ira Gammerman
                              Defendants.

------------------------------------------------------------------x

    **IT IS HEREBY STIPULATED AND AGREED**, by and between the

undersigned, the attorneys of record for all parties to the above entitled action, that

whereas no party hereto is an infant, incompetent person for whom a committee has been

appointed or conservatee and no person not a party has an interest in the subject matter of

the action, the above entitled action be, and the same hereby is discontinued, without

prejudice, and without costs to either party as against the other.

    **IT IS FURTHER STIPULATED AND AGREED** that this Stipulation to

Discontinue Action Without Prejudice may be executed in one or more counterparts

which together shall constitute one complete original document.

    **IT IS FURTHER STIPULATED AND AGREED**, that this Stipulation to

Discontinue Action Without Prejudice may be filed with the Clerk of the Court by any

party without notice to any other party.

Dated: New York, New York
      September 12, 2006

_____          _____
THOMAS G. CARULLI                STEWART W. LEE
NICHOLAS E. PANTELOPOULOS         Gottesman, Wolgel, Malamy,
Kaplan, von Ohlen & Massamillo, LLC   Flynn & Weinberg, P.C.
Attorneys for Defendants         Attorneys for Plaintiff

JPI Trading Corp. and Joseph Safdieh
90 Park Avenue, 18th Floor
New York, New York 10016
Tel.: (212) 455-9256

Jefftex International Ltd.
11 Hanover Square, 4th Floor
New York, New York 10005
Tel.: (212) 495-0100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFTEX INTERNATIONAL LTD.,

Plaintiff,

- against -

JPI TRADING CORP. and JOSEPH SAFDIEH

Defendants.

COPY

## STIPULATION OF DISCONTINUANCE

GOTTESMAN, WOLGEL, SECUNDA,
MALAMY & FLYNN, P.C.

Attorneys for    Plaintiff

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* ........................................    Signature ........................................................................................................

Print Signer's Name ......................................................................................

*Service of a copy of the within*    *is hereby admitted.*

*Dated:*

........................................................

*Attorney(s) for*

## PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY    *that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*    20

☐ NOTICE OF SETTLEMENT    *that an Order of which the within is a true copy will be presented for settlement to the*
*Hon.*    *one of the judges of the within named Court,*
*at*
*on*    20    *, at*    *M.*

*Dated:*    GOTTESMAN, WOLGEL, SECUNDA,
MALAMY & FLYNN, P.C.

*Attorneys for*

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

*To:*

*Attorney(s) for*

# EXHIBIT B

TEL (212) 239-1536
FAX (212) 971-4681
DUNS 05-822-3616

## JPI TRADING CORP.

1370 BROADWAY
NEW YORK, NY 10018
EMAIL JPI1300@AOL.COM

*CHILDRENSWEAR*

July 31, 2006

Mark Pan, Esq.
Pan & Chu, LLP
500 5TH Ave
New York, NY 10110

Dear Mark:

As I discussed with you a few weeks ago, I have a proposal about the state court action
between Jefftex and JPI, where we both have claims pending. I think it would be in both
our interests to dismiss both of our actions against each other, without prejudice to
reinstatement, with the further stipulation that all parties waive any defense of statute of
limitations or delay. In that way, there is no prejudice to either party.

This would give us time to arrange a meeting in Taiwan between Jeff and me, to settle all
of our differences. Right now, we are under the gun to complete all discovery over the
next 6 weeks and go to trial in September. It is my understanding the judge is not likely
to grant any extensions. We would have to exchange thousands of pages of documents,
hire court reporters, and undergo long depositions of Jeff, me and other personnel from
both sides. Both of our legal fees for all of this will be very high.

Since none of this expensive activity has taken place yet, neither of us would lose
anything significant if we dismiss without prejudice. If the lawsuit had to be restarted, we
would merely re-file what our lawyers already have prepared, and the action would be
underway.

Let's instruct our lawyers to file the dismissal right away, before they start billing us for
discovery.

Very truly yours,

Joseph Safdieh

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEFFTEX INTERNATIONAL, LTD.,

                       Plaintiff,                          CERTIFICATION
                                                          AND REPORT AND

       -against-                               <u>RECOMMENDATION</u>

                                                     03 CV 2855 (NGG) (RML)
AIR-CITY, INC.,

                       Defendant.
-------------------------------------------------------X
AIR-CITY, INC.,

                       Third-Party Plaintiff,

       -against-

JPI TRADING CORP.,

                       Third-Party Defendant.
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

        This case arises out of the alleged mishandling of various shipments of apparel from

Asia to New York. (<u>See</u> Complaint, filed June 10, 2003.) Pending before the court are the motions of

plaintiff Jefftex International, Ltd. ("plaintiff" or "Jefftex") and third-party plaintiff Air-City, Inc. ("Air-

City") for a finding of civil contempt against third-party defendant JPI Trading Corp. ("JPI Trading")

and its president and chief executive officer, Joseph Safdieh. Both Jefftex and Air-City seek an award

of attorney's fees and costs. For the reasons stated below, this matter is hereby certified to the

Honorable Nicholas G. Garaufis, United States District Judge, for Joseph Safdieh to show cause why

he and JPI Trading should not be held in contempt.

In addition, I respectfully recommend that a default judgment be entered against JPI Trading for failure

to appear by counsel.

## BACKGROUND AND FACTS

JPI Trading answered the third-party complaint on November 12, 2003, two days after Air-City received permission to move for a default judgment against it. After two adjournments, the parties appeared before me for settlement conferences on April 20, 2004, April 29, 2004, May 25, 2004, June 10, 2004, June 30, 2004, July 12, 2004, and July 14, 2004. Without explanation, Mr. Safdieh arrived two hours late for the conference on May 25, 2004, inconveniencing the other parties and the court. At the conference on June 10, 2004, the parties reported that they had agreed to a settlement in principle, but at the following two conferences counsel for JPI Trading requested more time to finalize terms of the agreement and secure a bond. On July 14, 2004, counsel for JPI Trading, Steven Mancinelli, Esq., informed the court that Mr. Safdieh had terminated him. I issued an order directing the parties, including Mr. Safdieh, to appear before me in person on July 23, 2004. My order instructed Mr. Safdieh to appear with counsel and advised that if Mr. Safdieh were to secure new counsel for JPI Trading, Mr. Mancinelli was to move for leave to withdraw. (See Order, dated July 14, 2004.)

On July 23, 2004, Mr. Safdieh did not appear in person, but instead appeared by cell phone en route to the Lincoln Tunnel and requested an additional ten days to arrange a bond. I scheduled another conference for August 3, 2004 and ordered Mr. Safdieh to appear in person. My order stated explicitly that the conference would not be adjourned without an express written order, and it warned Mr. Safdieh that his failure to appear in person could result in sanctions. (See Order, dated July 23, 2004.) Finally, the order directed Mr. Mancinelli to continue to appear on behalf of JPI

Trading until an order for leave to withdraw was granted.

On August 3, 2004, Mr. Safdieh again failed to appear. I noted for the record that I found an award of sanctions appropriate but stayed the order pending the outcome of the settlement process. I directed Mr. Safdieh to notify the court by August 4, 2004 of the name, address, and telephone number of the new attorney for JPI Trading and to continue to attempt to obtain a bond. I further directed Mr. Safdieh to provide the other parties with the name of the bonding company and broker, so that they could confirm that good faith efforts were being made to obtain a bond, and to provide the name of his accountant to confirm that JPI Trading's 2003 tax return would be completed by August 31, 2004, as Mr. Safdieh had represented that the remaining obstacle to obtaining a bond was the lack of a corporate tax return. (See Order, dated Aug. 3, 2004.)

By letter dated August 18, 2004, counsel for plaintiff informed the court that Mr. Safdieh had not signed the stipulation of settlement or provided the information he was ordered to produce. (See Letter of Steven Weinberg, Esq., dated Aug. 18, 2004.) At plaintiff's counsel's request, the court scheduled another conference for October 21, 2004 and ordered Mr. Safdieh to appear in person. The order instructed Mr. Safdieh that his failure to appear would result in sanctions. (See Order, dated Sept. 21, 2004.)

Mr. Safdieh appeared in court on October 21, 2004 and agreed to submit the settlement agreement to his new attorney on Monday October 25, 2004 and to submit an executed agreement to plaintiff by October 27, 2004. The court's order stated:

> In the event JPI's new counsel advises Mr. Safdieh not to sign the agreement, Mr. Safdieh agrees – and the court directs – that JPI shall so notify the court by the close of business on October 25. The court

-3-

> advised Mr. Safdieh – and Mr. Safdieh stated that he understood – that
> JPI cannot proceed pro se and that, if this case does not settle, and Mr.
> Mancinelli's motion to withdraw as counsel is granted, JPI will be in
> default unless new counsel files a notice of appearance forthwith.

(Order, dated Oct. 21, 2004.)  Finally, the order granted plaintiff leave to move for sanctions against

JPI Trading in the event of JPI Trading's failure to comply.  (Id.)

Mr. Mancinelli was permitted to withdraw as counsel for JPI Trading on November 17,

2004.  (See Order, dated Nov. 17, 2004.)  At that time, the court ordered JPI Trading to appear by

new counsel no later than November 30, 2004, with the instruction that "[f]ailure to do so without good

cause will likely result in the entry of a default judgment against JPI [Trading]."  (Id.)  Because of a

court clerical error, the deadline for JPI Trading to appear by new counsel was later extended to

December 17, 2004.  (See Order, dated Dec. 10, 2004, endorsed on letter of Steven Mancinelli, Esq.,

dated Dec. 1, 2004.)

To date, JPI Trading has not retained new counsel or otherwise complied with the

orders of this court.  (See Affidavit of David Y. Loh, Esq., sworn to Nov. 4, 2004, ¶¶ 6, 8, 9,15;

Affidavit of Steven Weinberg, Esq., sworn to Nov. 1, 2004, ¶¶ 7, 9, 10,15.)  Nor has Mr. Safdieh

contacted the court regarding his intentions vis-a-vis settlement.

## DISCUSSION

Fed. R. Civ. P. 16(f) states, in pertinent part:

> If a party or party's attorney fails to obey a scheduling or pretrial order,
> or if no appearance is made on behalf of a party at a scheduling or
> pretrial conference, . . . or if a party or party's attorney fails to

> participate in good faith, the judge,[1] upon motion or the judge's own
> initiative, may make such orders with regard thereto as are just. . . . In
> lieu of or in addition to any other sanction, the judge shall require the
> party or the attorney representing the party or both to pay the
> reasonable expenses incurred because of any noncompliance with this
> rule, including attorney's fees. . . .

In addition to Rule 16(f), the court has the inherent power to punish for contempt of court orders.

People of the State of New York by Abrams v. Terry, 45 F.3d 17, 23 (2d Cir. 1995); see also

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (federal courts "'are universally acknowledged to

be vested, by their very creation, with power to impose silence, respect, and decorum, in their

presence, and submission to their lawful mandates'") (quoting Anderson v. Dunn, 6 Wheat. 204, 227, 5

L. Ed. 242 (1821)); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 450 (1911) ("the power

of courts to punish for contempts is a necessary and integral part of the independence of the judiciary").

A court's contempt power stems from the "'control necessarily vested in courts to manage their own

affairs so as to achieve the orderly and expeditious disposition of cases.'"  Chambers, 501 U.S. at 43

(quoting Link v. Wabash Railroad Co., 370 U.S. 626, 630-31 (1962)).

       Mr. Safdieh is not personally a party to this action.  Therefore, Rule 16(f) does not

apply to him.  Moreover, although 28 U.S.C. § 636(e) gives United States Magistrate Judges some

contempt powers, the statute does not authorize me to hold Mr. Safdieh or JPI Trading in contempt in

---

[1]  Magistrate Judges are authorized to impose non-dispositive sanctions under this Rule.  See
Mordechai v. St. Luke's-Roosevelt Hosp. Center,  No. 99 CIV 3000, 2001 WL 699062, at *2
(S.D.N.Y. June 20, 2001) (order of Magistrate Judge requiring pro se plaintiff to pay defendants'
counsel's costs and a monetary penalty to the court for failure to appear at scheduled settlement
conferences); Sosinsky v. Chase Manhattan Bank, No. 99 Civ. 0043(JGK), 1999 WL 675999, at *2
(S.D.N.Y. Aug. 31, 1999) (upholding Magistrate Judge's imposition of sanctions for failure to appear
at settlement conference).

these circumstances.

However, when a person engages in an act that constitutes civil contempt, 28 U.S.C. § 636(e) authorizes a Magistrate Judge to certify the facts to a district judge and cause to be served on the person "an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6). The statute goes on to state that "[t]he district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." Id.

A court's civil contempt power may be invoked when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." New York State National Organization for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989) (citing Equal Employment Opportunity Commission v. Local 638, Local 28 of Sheet Metal Workers Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir. 1985)); see also D'Orange v. Feely, 959 F. Supp. 631, 635 (S.D.N.Y. 1997). This rule also applies to non-parties. See Abbigliamento Abruzzese, S.P.A. v. Cardina Nucci, Inc., No. 87 CIV. 4319, 1989 WL 67245, at *2 (S.D.N.Y. June 12, 1989) ("A non-party who receives actual notice of the court's order and is subject to its terms may be held in contempt for violating the order") (citing Folsom v. Blum, 554 F. Supp. 828, 830 (S.D.N.Y. 1982)). Indeed, with respect to non-party corporate officers, the Supreme Court recognized in Wilson v. United States, 221 U.S. 361, 376 (1911), that "[a] command to the corporation is in effect a command to those who are

-6-

officially responsible for the conduct of its affairs." Thus, a non-party corporate officer can be held in contempt for the corporation's violation of an order, provided that the officer (1) has a relationship of privity with the named party, (2) has knowledge of the court's order, and (3) acts affirmatively to cause or facilitate a violation of the order. In re World Parts, LLC, 291 B.R. 248, 254 (Bankr. W.D.N.Y. 2003).

As recounted above, Mr. Safdieh has personally violated this court's clear and unambiguous orders and, as a corporate officer, has caused JPI Trading to violate court orders. He has wilfully failed to retain new counsel for JPI Trading, despite being ordered to do so and having sufficient opportunity. He has also failed to appear for scheduled court conferences and has refused to comply with this court's order that he produce relevant materials to the other parties. Therefore, pursuant to 28 U.S.C. § 636(e)(6), I hereby certify the above facts to Judge Garaufis for a contempt hearing. Plaintiff's counsel is directed to submit to Judge Garaufis a proposed Order to Show Cause consistent with this decision leaving blank the dates for the return and service thereof as well as any other applicable dates.

Based on Mr. Safdieh's conduct before me, I respectfully recommend that, if a finding of contempt is made, Joseph Safdieh and JPI Trading be ordered to pay Jefftex's and Air City's reasonable attorney's fees and costs for engaging in settlement negotiations, attempting to compel JPI Trading's compliance, and seeking a contempt order. See Church v. Steller, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999) ("upon certification a magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt"). I have reviewed Jefftex's and Air-City's submissions thoroughly, including their contemporaneous attorney time records and hourly rates, and I

find their requests reasonable.

Finally, it is axiomatic that a corporation cannot appear *pro se*, but must be represented by counsel.  See Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel"); see also Pecarsky v. Galaxiworld.com Limited, 249 F.3d 167, 172 (2d Cir. 2001); Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997).  Given JPI Trading's failure to appear by counsel in this action, despite being advised by this court to do so, I respectfully recommend that a default judgment be entered against it.

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Garaufis and to my chambers, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge


Dated:  Brooklyn, New York
        January 26, 2005

-8-

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JEFFTEX INTERNATIONAL, LTD.

     Plaintiff,         <u>ORDER</u>
                  03 CV 2855 (NGG)(RMM)

  -against-

AIR-CITY, INC.,

     Defendant.
--------------------------------------------------------------X
AIR-CITY, INC.,

     Third-Party Plaintiff,

  -against-

JPI TRADING CORP.,

     Third-Party Defendant.
--------------------------------------------------------------X

GARAUFIS, District Judge.

   On January 26, 2005, Magistrate Judge Robert M. Levy issued a Certification and Report and Recommendation ("R&R") in the above-captioned action certifying to this court for Joseph Safdieh ("Safdieh"), the president and chief executive officer of third party defendant JPI Trading Corp. ("JPI Trading") to show cause why he and JPI Trading should not be held in contempt. As set forth in the R&R, Safdieh personally violated Judge Levy's clear and unambiguous orders and, as a corporate officer, caused JPI Trading to violate court orders. In addition, Judge Levy recommended that default judgment be entered against JPI Trading for failure to appear by counsel and that Jefftex and Air-City be awarded reasonable attorney's fees and costs for engaging in settlement negotiations, attempting to compel JPI Trading's compliance, and seeking a contempt order. No objections to the Certification and R&R were

timely filed.

Pursuant to 28 U.S.C. § 636(e)(6), on April 1, 2005, this court heard evidence of the acts and conduct described in the R&R concerning Safdieh and JPI Trading's disregard for court orders. Faced with the imminent prospect of default and a finding of contempt by this court, JPI Trading immediately retained counsel following the April 1 hearing and requested the opportunity to resolve the instant dispute on the merits. However, this belated effort does not exculpate JPI Trading from close to a year of dilatory tactics and seeming insouciance for this court's authority.

Accordingly, the court rules as follows:

1) Pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, this court finds third-party defendant JPI trading in contempt;

2) Pursuant to 28 U.S.C. § 636(e) and this court's inherent powers, this court finds Safdieh in contempt;

3) Pursuant to Rule 14(c) and Rule 55 of the Federal Rules of Civil Procedure, default judgment is entered against JPI Trading;

4) The plaintiff Jefftex is awarded reasonable attorney fees and expenses in the amount of $ 12,466.00.

5) The defendant and third-party plaintiff Air-City is awarded reasonable attorney fees and expenses in the amount of $ 8,052.29.

SO ORDERED.

Dated: April 5, 2005                         _/s/ Nicholas G. Garaufis___
       Brooklyn, N.Y.                        Nicholas G. Garaufis
                                             United States District Judge

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JEFFTEX INTERNATIONAL, LTD.

                 Plaintiff,

    -against-

AIR-CITY, INC.,

                 Defendant.
----------------------------------------------------------------X
AIR-CITY, INC.,

                 Third-Party Plaintiff,

    -against-

JPI TRADING CORP.,

                 Third-Party Defendant.
----------------------------------------------------------------X

**NOT FOR PUBLICATION**

MEMORANDUM AND ORDER

03 CV 2855 (NGG)(RMM)

GARAUFIS, District Judge.

      On April 7, 2005, this court entered a Default Judgment against Third-Party Defendant

JPI Trading Corp. ("JPI Trading") in favor of Plaintiff Jefftex International, Ltd. ("Jefftex") for

its repeated failure to appear in court and to hire counsel in violation of court orders.  Pursuant to

Fed. R. Civ. P. 55 and 60, JPI Trading on April 25, 2005 moved to vacate or modify the Default

Judgment, and under Fed. R. Civ. P. 13 and 15 to amend its Answer to include counterclaims.

Plaintiff Jefftex also moves to modify the Default Judgment.  Jefftex and Defendant and Third-

Party Plaintiff Air-City, Inc. ("Air-City") cross-move for further attorney's fees and civil

sanctions associated with these motions.  For the reasons set forth below, JPI Trading's motions

to vacate or modify the Default Judgment, and to amend its Answer are DENIED, Jefftex's

motion to modify the Default Judgment is DENIED, and Jefftex's and Air-City's motions for

sanctions and for attorney's fees are DENIED.

I.      Background

A.      Jefftex's Contract Claims Against Air-City and JPI Trading

Jefftex is a foreign corporation that manufactures children's apparel based in the Republic of China (Taiwan).  (Compl. ¶ 6; Young Aff. ¶ 4).  It contracted with Air-City, a New York corporation, to ship overseas apparel manufactured by Jefftex from China, Taiwan, Cambodia, and Vietnam to the United States, for delivery to JPI Trading, a New York customer.  (Compl. ¶¶ 6-22; Young Aff. ¶¶ 11, 14).  The bills of lading for the shipments from China, Taiwan, Cambodia, and Vietnam to the United States, list "Air-City Inc." as the "Forwarding Agent" and JPI Trading as the "Consignee" and "Notify Party."  (Compl. ¶¶ 23-26; Young Aff. ¶ 12-14; Safdieh's Apr. 21, 2005 Decl. ¶ 16 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1), Ex. 9).  The Second Circuit has described the function of a bill of lading as follows:

> The seller tenders shipping documents, including a negotiable bill of lading, rather than goods to a buyer.  By paying for the documents, the buyer gets possession of the original bill of lading.  Possession of the bill [of lading] entitles [a party] to possession of the goods; it represents the goods and conveys title to them . . . .  Absent a valid agreement to the contrary, the carrier, the issuer of the bill of lading, is responsible for releasing the cargo only to the party who presents the original bill of lading.

Allied Chemical Int'l Corp. v. Companhia de Nevegacao Lloyd Brasileiro, 775 F.2d 476, 481 (2d Cir. 1985).  Air-City delivered the shipments to JPI Trading without receipt of the original bills of lading or payment by JPI Trading.  (Compl. ¶ 29; Young Aff. ¶ 19).

This matter commenced on June 10, 2003 with the filing of a complaint by Jefftex against Air-City, the Defendant, alleging that Air-City improperly released the apparel to JPI Trading.  In

2

its complaint, Jefftex alleged subject matter jurisdiction based on an admiralty claim under 28 U.S.C. § 1333, the existence of a federal question (28 U.S.C. § 1331) under the Carriage of Goods by Sea Act, 46 U.S.C. §1300 et seq. ("COGSA"), and diversity of citizenship, 28 U.S.C. § 1332. (Compl. ¶¶ 1-3.) Air-City on September 26, 2003 filed a third-party complaint against JPI Trading, alleging that JPI Trading instructed Air-City to release the goods to it, and for indemnification for claims brought by Jefftex in connection with the goods. (Air-City's Third-Party Compl. ¶¶ 6-7; Air-City Mem. Mot. Vacate, 2).

B.      Conduct of JPI Trading Resulting in Default Judgment Against It

The conduct of JPI Trading and its president, Joseph Safdieh ("Safdieh"), during the course of this litigation has been described in Magistrate Judge Robert M. Levy's Report and Recommendation ("R&R") issued on January 26, 2005, and adopted by me on April 7, 2005, and is summarized here. The parties appeared before Judge Levy for settlement conferences on April 20, 2004, April 29, 2004, May 25, 2004, June 10, 2004, June 30, 2004, July 12, 2004, and July 14, 2004. Without explanation, Safdieh arrived two hours late for the conference on May 25, 2004. At the conference on June 10, 2004, the parties reported that they had agreed to a settlement in principle, but at the following two conferences counsel for JPI Trading requested more time to finalize terms of the agreement and secure a bond. On July 14, 2004, Mr. Mancinelli, counsel for JPI Trading, informed the court that Safdieh had terminated him. Judge Levy instructed Safdieh to appear with counsel on July 23, 2004 for a conference, and advised that if Safdieh were to secure new counsel for JPI Trading, that Mr. Mancinelli had to move for leave to withdraw.

JPI Trading failed to appear in the July 23, 2004 conference. Instead, Safdieh called by

cell phone and requested more time.  Judge Levy scheduled another conference for August 3,

2004 and ordered Safdieh to appear in person.  This order stated that the conference would not be

adjourned without an express written order, and that Mr. Mancinelli was to continue to appear on

behalf of JPI Trading until an order for leave to withdraw was granted.  However, on August 3,

2004, Safdieh again failed to appear.

    After counsel for Jefftex informed the court on August 18, 2004 that Safdieh had not

signed the stipulation of settlement or produced information pursuant to the court's most recent

order, the court scheduled another conference on Jefftex's request and ordered Safdieh to appear

in person.  Safdieh did appear on August 18, 2004, and agreed to submit the new settlement

agreement to his new attorney on October 25, 2004, and to submit an executed agreement to

plaintiff by October 27, 2004.  The court's order stated:

> In the event JPI's new counsel advises Mr. Safdieh not to sign the
> agreement, Mr. Safdieh agrees - and the court directs - that JPI
> shall so notify the court by the close of business on October 25.
> The court advised Mr. Safdieh - and Mr. Safdieh stated that he
> understood - that JPI cannot proceed pro se and that, if this case
> does not settle, and Mr. Mancinelli's motion to withdraw as
> counsel is granted, JPI will be in default unless new counsel files a
> notice of appearance forthwith.

(Oct. 21, 2004 Order.)  Mr. Mancinelli was permitted to withdraw as counsel for JPI Trading on

November 17, 2004.  (Nov. 17, 2004 Order.)  At that time, the court ordered JPI Trading to

appear by new counsel no later than November 30, 2004, and warned that "[f]ailure to do so

without good cause will likely result in the entry of a default judgment against JPI [Trading]."

(Id.)  Despite a further extension of the deadline to December 17, 2004, JPI Trading failed to

comply with the orders of the court, or to retain new counsel.  Judge Levy's R&R, dated January

4

26, 2005 recommended that sanctions be imposed and a default judgment granted. No objections were timely filed to this recommendation.

Pursuant to 28 U.S.C. § 636(e)(6), on April 1, 2005, this court heard evidence of the acts and conduct described in the R&R concerning Safdieh's and JPI Trading's disregard for court orders. Faced with the imminent prospect of default and a finding of contempt by this court, JPI Trading immediately retained counsel following the April 1 hearing and requested the opportunity to resolve the instant dispute on the merits. On April 5, 2005, I granted an Order for civil contempt and for entry of default judgment ("Apr. 5 Order") against JPI Trading in favor of Jefftex. On April 15, 2005, I entered default judgment ("Apr. 15 Order") in the amount of $1,126,957.80 plus interest against JPI Trading in favor of Jefftex. On April 25, 2005, JPI Trading moved to vacate the judgment. In its motion, JPI Trading asserts that the judgment is a nullity, because the court lacks subject matter jurisdiction, and that JPI Trading had good cause to default because its default was not due to willful and deliberate conduct, it has meritorious defenses, and there is no prejudice to the other litigants caused by vacating the judgment. JPI Trading also moves for this court to grant leave for it to amend its Answer to include counterclaims related to the contract dispute. JPI Trading and Jefftex move to modify the Default Judgment. Jefftex and Air-City cross-move for sanctions and attorneys fees associated with these motions.

II.    Discussion

A.    Motion to Vacate

1.    Standard for Review of Default Judgment

Rule 55(c) states that "if a judgment by default has been entered, [a court may] set it aside

5

in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c).[1]  A "strong public policy favors resolving

disputes on the merits." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001).

However, the courts also have a competing "interest in expediting litigation" and in preventing

"abuses of process . . . by enforcing those defaults that arise from egregious or deliberate

conduct." Pecarsky, 249 F.3d at 172; see also Kotlicky v. U.S. Fidelity & Guaranty Co., 817

F.2d 6, 9 (2d Cir. 1987); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857

(1973).  "Relief under Rule 60(b) . . . may be granted only in extraordinary circumstances."

United States v. Bank of New York, 14 F.3d 756, 758 (2d Cir. 1994) (quotations and citations

omitted).   Generally, courts require that the evidence in support of the motion to vacate a final

judgment be "highly convincing."  United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977); see

also Kotlicky v. United States Fidelity & Guaranty Co., 817 F.2d 6, 9 (2d Cir. 1987).

2.    "Void" Judgment

Rule 60(b)(4) of the Federal Rules of Civil Procedure provides that relief from default

may be granted for procedural or jurisdictional irregularities in obtaining the default judgment,

because such defects render the judgment "void."  Fed. R. Civ. P. 60(b)(4).

---

[1]JPI Trading suggests that the Second Circuit's ruling in Meehan v. Snow requires this
court to review the default judgment under Rule 55(c) for entry of default rather than for Rule
60(b) review of default judgments.  652 F.2d 274 (2d Cir. 1981).  (JPI Trading's Mem. Supp.
Mot. Vacate at 4.)  I disagree.  In Meehan, the District Court granted a default judgment against
defendant for failure to answer a pleading without first requiring that the plaintiff obtain an entry
of default from the clerk of the court in accordance with Rule 55(a).  Id. at 276.  The Second
Circuit held that this error required the court to review the default under Rule 55(c) standards.
Id.  Here, default judgment was granted against JPI Trading for its failure to obey court orders
under Rule 55(b)(2), which does not require a preliminary entry of default.  Nor does JPI Trading
suggest that the instant default judgment was granted in a procedurally improper manner.
Accordingly, the "more stringent" standard of Fed. R. Civ. P. 60(b) is appropriate.  Dixonweb
Printing Co. v. Photo Intercept Coupon Systems, Inc., No. 94-CV-7436, 1995 U.S. Dist. LEXIS
8871, at *5 (S.D.N.Y. June 26, 1995).

6

a.    Subject Matter Jurisdiction

If a court lacks subject matter jurisdiction, any default judgment rendered against a

defendant is a nullity.  United States v. Forma, 42 F.3d 759, 762 (2d Cir. 1994).  However, this

court has subject matter jurisdiction over this matter because it arises under maritime law, raises

a federal question, and because of the diversity of the parties.

(1)    Admiralty Jurisdiction

The Constitution grants admiralty jurisdiction to federal courts.  See Art. III, § 2, cl. 1

(granting federal judicial power over "all Cases of admiralty and maritime Jurisdiction); 28

U.S.C. § 1333(1) (providing that federal judicial power extends to "all Cases of admiralty and

maritime Jurisdiction").

JPI Trading argues that this court lacks subject matter jurisdiction because the claims

involved in the instant contract dispute are not by their nature admiralty claims.  "To ascertain

whether a contract is a maritime one . . . . 'depends upon . . . the nature and character of the

contract,' and the true criterion is whether it has 'reference to maritime service or maritime

transactions.'"  Norfolk So. Railway Co. v. Kirby.  543 U.S. 14, 18-19, 125 S. Ct. 385, 160 L.

Ed. 2d 283 (2004) (quoting North Pacific S. S. Co. v. Hall Brothers Marine Railway &

Shipbuilding Co., 249 U.S. 119, 125, 39 S. Ct. 221, 63 L. Ed. 510 (1919) (citations omitted)).[2]

In an action against a carrier, the question of admiralty jurisdiction depends on whether the

"primary objective is to accomplish the transportation of goods by sea . . . ."  Id. at 19; see also

---

[2] The dispute in Kirby primarily involved the application of federal law, and secondarily admiralty jurisdiction.  However, "[b]ecause the grant of admiralty jurisdiction and the power to make admiralty law are mutually dependent, the two are often intertwined in our cases."  Kirby, 543 U.S. at 18.

Folksamerica Reinsurance Company v. Clean Water of New York, Inc., 413 F.3d 307, 314 (2d Cir. 2005).

      With these principles in mind, it is clear that an action against a shipper "for delivering goods in violation of the contract of carriage is properly within federal admiralty jurisdiction." Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800, 807 (2d Cir. 1971); see also Hangzhou Leather Products Industrial v. MPW Trading Corp., No. 96-CV-3590, 1997 U.S. Dist. LEXIS 15629, at *1 (E.D.N.Y. Sept. 19, 1997).  In the instant action, Plaintiff Jefftex contracted with Defendant Air-City to ship goods over sea from Asia to the United States, and sued Air-City because it improperly released goods to Third-Party Defendant JPI Shipping in violation of the bills of lading, which required Air-City to accept payment from JPI Shipping prior to releasing the goods.  (Compl. ¶¶ 6-29.)  I find that the contract is in essence maritime, and that the claim, that Defendant Air-City released goods in violation of the bills of lading, is within federal admiralty jurisdiction.

      JPI Trading claims that there is no admiralty jurisdiction because no party is on the original bills of lading.  (JPI Trading's Mem. Supp. Mot. Vacate at 6-7.)  JPI Trading in support of its motion to vacate submitted copies of bills of lading for shipments from China to the United States at issue in this action.  (Safdieh's Apr. 21, 2005 Decl. Ex. 9.)  These bills of lading list "Air-City (China) Co., Inc." in the top of the bills, "Air-City Inc." as the "Forwarding Agent" and JPI Trading as the "Consignee" and "Notify Party."  (Id.)  I find that the bills of lading show that Air-City was a carrier and JPI Trading was the buyer.  Moreover, JPI Trading indoes not deny that it entered into a contract with Jefftex to purchase goods that were to be shipped by sea, and that this contract is the subject of this lawsuit.  (See Safdieh's Apr. 21, 2005 Decl. ¶¶ 4-16

8

(sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).)  Thus, the evidence submitted by JPI

Trading supports the court's finding that the contract at issue is by its nature maritime and

confers admiralty jurisdiction on the court.

JPI Trading next argues that because the actual shipping agent was Air-City (China) Co.,

Ltd., that the Second Circuit's decision in Leather's Best, Inc. precludes maritime jurisdiction.

451 F.2d 800 (2d Cir. 1971).  In Leather's Best, Inc., a seller sued a shipper and a port for breach

of contract because the goods held by the port were stolen before they could be delivered to the

buyer.  Id. at 806-07.  The Second Circuit's found that because the port was not a carrier listed in

the bill of lading, and merely performed "the function of caring for the cargo until delivery," that

the court did not have admiralty jurisdiction over the seller's claims against the port.  Id. at 808.

Unlike the port in Leather's Best, Inc., Air-City was not a mere bailee.  Air-City was a

carrier listed in the bills of lading, much like the shipper over which the court had jurisdiction in

Leather's Best, Inc.  Id. at 807.  Air-City, Inc., which contracted with Jefftex (as evidenced in the

bills of lading) through its China office Air-City (China) Co. to ship goods to JPI Trading, was

clearly "involved in the carriage of goods at issue."  RMS Int'l Shipping GmbH v. Stemcor USA,

Inc., No. 90-CV-4918, 1991 U.S. Dist. LEXIS 9852, at *14 (S.D.N.Y. July 18, 1991).  Therefore,

I find that this court has admiralty jurisdiction over Jefftex's claims against Air-City, Inc.[3]

(2)    Federal Question

Jurisdiction is also based on the existence of a federal question, whether Air-City is liable

for shipments delivered in violation of Carriage of Goods by Sea Act, 46 U.S.C. §1300 et seq.

---

[3]As this court has admiralty jurisdiction, Rule 14(c) allows Jefftex to proceed against
Third-Party Defendant JPI Trading "as if the plaintiff had commenced it against the third-party
defendant as well as the third-party plaintiff."  Fed. R. Civ. P. 14(c).

("COGSA").  Pursuant to COGSA, all "carriers" may be liable for lost or damaged cargo.

Duferco Steel Co. v. M/V Festivity, No. 97-CV-7898, 1998 U.S. Dist. LEXIS 12462, at *2-3

(S.D.N.Y. Aug. 13, 1998).  COGSA defines as a "carrier" "the owner or charterer who enters

into a contract of carriage with a shipper."  COGSA, § 1301(a). Courts generally find that "all

owners or charterers involved in the carriage of goods at issue [are] COGSA carriers who are

potentially liable to cargo interests under the bill of lading."  RMS Int'l Shipping GmbH v.

Stemcor USA, Inc., No. 90-CV-4918, 1991 U.S. Dist. LEXIS 9852, at *4 (S.D.N.Y. July 18,

1991) (quoting Joo Seng Hong Co., Ltd. v. S.S. Unibulkfir, 483 F. Supp. 43, 46-47 (S.D.N.Y.

1979)).  I find that Air-City was a listed carrier in the bills of lading governing this contract

dispute.  Accordingly, Air-City was a "carrier" which may be sued under COGSA for failure to

properly deliver goods shipped by Jefftex to JPI Trading.

(3)     Diversity Jurisdiction

There is also diversity jurisdiction in this matter.  In order to satisfy diversity jurisdiction

requirements, plaintiff Jefftex must be a citizen of a different state than Air-City, Inc. and JPI

Trading, and the amount sought by Jefftex must exceed $75,000.00.  See 28 U.S.C. § 1332(a).

Jefftex is a citizen of Taiwan, and Air-City, Inc. and JPI Trading are New York corporations.[4]

Jefftex sought (and received) a judgment for well over $75,000.00.  (See Compl. ¶¶ 38, 42, 46,

50, 54, 60, 65; Apr. 15, 2005 J.).  Therefore, this court has diversity jurisdiction over this matter.

This court has subject matter jurisdiction over this matter under maritime law, because of

---

[4]JPI Trading's contention that Jefftex is doing business in New York, see infra Section
II(A)(3)(b), would not disturb the diversity of the parties, because Section 1332(a) is based on
citizenship and JPI Trading does not dispute that Jefftex is a foreign citizen.  See Young Aff. ¶ 4;
28 U.S.C. § 1332(a).

the existence of a federal question, and because of the diversity of the parties.  As a result, the judgment is not void.

3.    Excusable Neglect

Under Rule 60(b)(4), a court may vacate a default judgment if the movant demonstrates "mistake, inadvertence, surprise or excusable neglect."  Fed. R. Civ. P. 60(b)(1); American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996).  A court weighing whether the defendant's default constitutes "excusable neglect" is guided by three principal factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice."  State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004) (quoting S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)).  Of the three criteria to be analyzed, willfulness is preeminent, and "courts should not set aside a default when it is found to be willful . . . ."  Brein v. Kullman Indus., Inc. 71 F.3d 1073, 1077, 1078 (2d Cir. 1995) (citations and internal quotation marks omitted); see also Westmark Dev. Corp. v. Century Sur. Co., 199 F.D.R. 491, 495-96 (2d Cir. 1995) (reasoning that "a willful default will normally not be set aside"); United Bank of Kuwait, PLC v. Enventure Energy Enhanced Oil Recovery Associates - Charco Redondo Butane, 755 F. Supp. 1195, 1205 (S.D.N.Y. 1989).

a.    Willfulness of Default

This court can properly deny a motion to vacate a default judgment if the movant's conduct resulting in the default, even not in "bad faith," amounts to "more than mere negligence."  Gucci Am., Inc. v. Gold Center Jewelry, 158 F.3d 631, 634-35 (2d Cir. 1998), cert.

11

denied sub nom. Home Boy 2000 v. Gucci Am., Inc., 525 U.S. 1106, 119 S. Ct. 873, 142 L. Ed.

2d 774 (1999).  A "defendant's choice to default for strategic reasons or in order to gain some

tactical advantage weighs strongly in favor of entering default judgment."  Bank of New York v.

Meridien Biao Bank Tanzania Ltd., No. 95-CV-4856, 1998 U.S. Dist. LEXIS 11288, at *7

(S.D.N.Y. July 22, 1998) (citing American Alliance, 92 F.3d at 57).

     JPI Trading between May and December, 2004 engaged in conduct offensive to this court

and the other litigants.  JPI Trading appeared without explanation two hours late to its May 25,

2004 settlement conference, and failed to attend settlement conferences on July 23, 2004, August

23, 2004, and November 30, 2004, in spite of court orders that directed it to appear.  Further, JPI

Trading did not hire new counsel after it terminated Mr. Mancinelli on July 14, 2004, which in

effect announced that JPI Trading would not in the future (because it could not) appear before

this court.  See Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993) ("[A]

corporation may appear in federal courts only through licensed counsel.") (citations omitted).  JPI

Trading had ample notice that its actions, if continued, would result in a default judgment.  Judge

Levy warned JPI Trading in his October 21, 2004 Order that "if this case does not settle, and Mr.

Mancinelli's motion to withdraw as counsel is granted, JPI [Trading] will be in default unless

new counsel files a notice of appearance forthwith."  (Oct. 21, 2004 Order.)  Judge Levy further

cautioned JPI Trading that failure without good cause to appear with counsel by November 30,

2004 "will likely result in the entry of a default judgment against JPI [Trading]."  (R&R.)

Despite these warnings, JPI Trading failed to contact the court with new counsel until April 1,

2005.

     JPI Trading, through its present counsel, admits that Safdieh's conduct was inappropriate,

but explains that it was a result of Safdieh's "belief [that] he could, somehow, better resolve the matter between the parties without involvement of counsel." (JPI Trading's Mem. Supp. Mot. Vacate, at 2.)  However, this assertion is belied by Safdieh's representation to the court on October 21, 2004 that JPI Trading "agreed to submit [a] settlement agreement to his new attorney on Monday October 25, 2004 and to submit an executed agreement to plaintiff by October 27, 2004," (R&R, at 3) and his subsequent failure to communicate with the court or to obtain new counsel until April 1, 2005.  It defies credibility that a party that honestly believed that it could better resolve a conflict without counsel would engage in months of court mediation with counsel, and then represent to the court that it would obtain new counsel to consummate a settlement agreement.

Rather than excusing its default, these circumstances demonstrate the deliberateness of JPI Trading's conduct.  If, as JPI Trading suggests, it had no intention of obtaining counsel, its misrepresentations to the court that it would obtain counsel amounted to a transparent attempt to prolong settlement discussions.  Under the circumstances, and the many opportunities granted by the court to JPI Trading to settle this action and/or obtain new counsel, I find that JPI Trading's unjustified failure to appear at settlement conferences and to obtain counsel despite numerous clear and unambiguous court orders that resulted in its default was willful and deliberate.

b.     Meritorious Defense

JPI Trading has also failed to demonstrate that it has a meritorious defense.  "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993).

In support of its motion to vacate, JPI Trading advances four defenses, first that New York State's door-closing statute precludes plaintiff Jefftex from maintaining an action in a court in New York, and three defenses relating to the contract claims.

(1)    New York Business Corporation Law Section 1312

JPI Trading argues that New York's door-closing statute, New York Business Corporation Law, Section 1312, precludes plaintiff Jefftex from maintaining an action in a court in New York State.  (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 7-8)  Section 1312 states that "[a] foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state . . . ."  New York Business Corporation Law, § 1312(a).

Section 1312 does not apply to plaintiffs in Federal courts that have original or federal question jurisdiction, because a state cannot prescribe plaintiffs who are "entitled under the Constitution and laws of the United States to resort to the Federal courts for the enforcement of a valid contract."  David Lupton's Sons Co. v. Automobile Club of America, 225 U.S. 489, 500, 32 S. Ct. 711, 714, 56 L.Ed 1177, 1181-82 (1912); see also Johnson v. New York Breweries Co., 178 F. 513, 514 (2d Cir. 1910); Wing v. McCallum, 16 F.2d 645, 647 (D. Mass. 1926); Richmond Cedar Works v. Buckner, 181 F. 424, 426 (S.D.N.Y. 1910); Groton Bridge & Mfg. Co. v. American Bridge Co., 151 F. 871, 874 (N.D.N.Y. 1907).

However, Section 1312 may apply to plaintiffs who seek to maintain a diversity action in Federal courts to enforce contracts that are wholly intrastate in nature.  Williams Erectors of Suffolk County v. Mulach Steel Corp., 684 F. Supp. 357, 358 (E.D.N.Y. 1988) (citing Netherlands Shipmortgage, Corp., Ltd. v. Madias, 717 F.2d 731, 735 (2d Cir. 1985)).  Cf. Grand

14

Bahama Petroleum Co. v. Asiatic Petroleum Corp., 550 F.2d 1320, 1326 (2d Cir. 1977) (New

York's door closing statute would violate the Commerce Clause if it were to prevent enforcement

of contracts involving interstate commerce.).  Because subject matter jurisdiction is based in part

on the diversity of the parties, I will proceed with an analysis of the applicability of Section 1312

to the plaintiff.

 To show a violation of Section 1312, the movant has the burden to show both that the

plaintiff corporation is doing business in New York, and that the business is wholly intrastate.

Fashion Fragrance & Cosmetics v. Croddick, No. 02-CV-6294, 2003 U.S. Dist. LEXIS 2220, at

*20-22 (S.D.N.Y. Feb. 13, 2003); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d . 374, 385-86

(S.D.N.Y. 1998), aff'd, 173 F.2d 843 (2d Cir. 1999).  A corporation is "doing business" in New

York if it engages in "systematic and regular" activities in New York.  Fine Arts Enterprises,

N.V. v. Levy, 149 A.D.2d 795, 795-96, 539 N.Y.S.2d 827, 829 (3d Dep't 1989).  The "doing

business" standard under Section 1312 is stricter than under New York's long-arm statute

"[b]ecause of the possibility of an unconstitutional infringement of interstate commerce . . . ."

Storwal Int'l, Inc. v. Thom Rock Realty Co., L.P., 784 F. Supp. 1141, 1144 (S.D.N.Y. 1992)

(citing Madias, 717 F.2d at 736, Invacare Corp. v. John Nageldinger & Son, Inc., 576 F. Supp.

1542, 1544 (E.D.N.Y. 1984); International Fuel & Iron Corp. v. Donner Steel Co., 242 N.Y. 224,

231, 151 N.E. 214 (1926)).

 Mere solicitations of sales and placement of orders is insufficient to show that it is "doing

business" in the state.  Uribe v. Merchants Bank of New York, 266 A.D.2d 21, 22, 697 N.Y.S.2d

279, 280 (1st Dep't 1999); S&T Bank v. Spectrum Cabinet Sales, Inc., 247 A.D.2d 373, 668

N.Y.S.2d 641 (2d Dep't 1998); see also Fine Arts Enterprises, N.V., 149 A.D.2d at 795-96

15

(Evidence of a New York address, bank account, and execution of a contract in New York is insufficient proof to show that plaintiff is in violation of Section 1312.)

JPI Trading maintains that Jefftex's association with Mark Pan, its New York-based attorney, constitutes "doing business" in New York.  (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 7-8.)  In support of its motion, JPI Trading submitted as an exhibit the first page of a letter by Mr. Pan to JPI Trading dated March 20, 2003 referring to a request by JPI Trading for release of invoices.  (Safdieh's Apr. 21, 2005 Decl. ¶ 8 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1), Ex. 3, at 1.)  However, this document by itself does not show that Mr. Pan conducts "systematic and regular" business on behalf of Jefftex in New York.  <u>Fine Arts Enterprises, N.V.</u>, 149 A.D.2d at 795-96.  Moreover, even if Mr. Pan were Jefftex's business agent for New York, Section 1312 would not preclude Jefftex from maintaining an action in a court in New York, because the activities that JPI Trading alleges that Mr. Pan engaged in, the international shipping of goods, are not "wholly intrastate."  <u>Fashion Fragrance & Cosmetics</u>, 2003 U.S. Dist. LEXIS 2220, at *20-22.

Lastly, JPI Trading has submitted evidence that Jefftex is currently registered as a corporation doing business in New York.  (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 7-8; Carulli Aff. Ex. 13, at 2).  However, a corporation doing business in New York does not run afoul of Section 1312 unless it lacks authorization to do business in New York or has failed to pay New York taxes or fees.  Indeed, proof of registration as a corporation doing business in New York would suggest that Jefftex is compliant with New York laws.  As a result, JPI Trading has failed to show that Jefftex is in violation of New York Business Corporation Law Section 1312.

(2)    Contract Claim Defenses

JPI Trading next contends that Jefftex's shipped apparel contained product defects that constitute a defense to its nonpayment. (JPI Trading's Mem. Supp. Mot. Vacate, at 6, 8-10; Safdieh's Apr. 21, 2005 Decl., ¶¶ 9, 12 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1)). JPI Trading in support of its motion submits documents that purport to be electronic correspondence from JPI Trading to Jefftex between January, 2002 and December, 2003. (Safdieh's Apr. 21, 2005 Decl., Ex. 5, 8.).

JPI Trading relies on the Exhibits of the Declaration of Joseph Safdieh, president of JPI Trading, as evidence of Jefftex's nonconforming goods.  (Safdieh's Apr. 21, 2005 Decl. ¶ 9, 12 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).)  On January 29, 2002, JPI Trading informed Jefftex that an apparel company rejected goods produced by Jefftex, and stated "We will not pay for goods we cannot sell."  (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 3).  On February 4 and March 10, 2003, JPI Trading informed Jefftex that it hung apparel "incorrectly," and advised that it should "correct this."  (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 15-16.)  On May 7, 2003, JPI Trading cited problems with samples provided by Jefftex.  (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 11.)  On June 2 and June 3, 2003, JPI Trading complained about the weight of the fabric of shipped apparel, and asked "What is going on?  Anxiously awaiting you [sic] reply."  (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 9-10.)  On November 26, 2003, JPI Trading complained about shipping samples, and stated that it was "very disappointed."  (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 4.)   On December 22, 2003 JPI Trading complained of problems in one of Jefftex's shipment, and asked Jefftex, "Please tell me what we should do now?" (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 1).

17

From the outset, JPI Trading has not shown that the items complained of in its exhibits relate to the shipments at issue in this matter. Safdieh states in his Declaration that JPI Trading has a longstanding business relationship with Jefftex and that the correspondence attached as Exhibit Eight refers to goods "covered by other invoices and not in the 11 China Invoices." (Safdieh's Apr. 21, 2005 Decl. ¶ 12 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).) Accordingly, JPI Trading is unable to show which (if any) of the documents that it presents to the court are relevant to the question of whether any of Jefftex's shipments that are the subject of this lawsuit contained nonconforming goods.

Even accepting, arguendo, that the exhibits are correspondence that refer to the Jefftex shipments at issue, JPI Trading has not shown that it rejected any of the shipments. If a buyer fails to make an effective rejection of the goods within a reasonable time, the buyer is liable for the contract price of the goods. Miron v. Yonkers Raceway, Inc., 400 F.2d 112, 117-18 (2d. Cir. 1968); see Uniform Commercial Code § 2-206. These exhibits reflect an ongoing commercial relationship in which JPI Trading, the buyer, expressed concern and disappointment with some shipments by Jefftex, the seller. Nowhere in the exhibits is there an unequivocal rejection of the shipments that Jefftex made to JPI Trading that are the basis of this lawsuit. JPI Trading also does not include in its exhibits replies from Jefftex that might indicate whether Jefftex received this correspondence or understood JPI Trading's correspondence as a rejection of its goods.

In fact, the uncontested evidence is that JPI Trading has retained the Jefftex shipments. (Pan Aff. ¶¶ 14-15, Ex. R; Weinberg Aff. ¶¶ 40-41, Ex. R). Accordingly, JPI Trading's failure to notify Jefftex of its alleged breach after it retained Jefftex's goods bars JPI Trading from any

remedy.[5]  See Hyosung America, Inc. v. Sumagh Textile Co., Ltd., 137 F.3d 75, 80 (2d Cir. 1998); Sears, Roebuck & Co. v. Galloway, 195 A.D.2d 825, 825 (3rd Dep't 1993); Uniform Commercial Code 2-607(3)(a).   Therefore, I find that JPI Trading has not shown that it has a meritorious defense of nonconforming goods.

JPI Trading asserts two other defenses.  It claims that Jefftex did not provide "pre-production samples" before shipping the apparel to JPI Shipping (JPI Trading's Mem. Supp. Mot. Vacate, at 9-10; Safdieh's Apr. 21, 2005 Decl. ¶¶ 5, 10, 14-15 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1)) and that JPI Trading asserts that Jefftex missed shipping deadlines. (JPI Trading's Mem. Supp. Mot. Vacate, at 13-14, Safdieh's Apr. 21, 2005 Decl., ¶¶ 10-11, 13 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).)  However, JPI Trading has failed to provide this court with any evidence or to cite to any authority that Jefftex was contractually obligated to submit pre-production samples or to meet any deadlines that JPI Trading alleges that Jefftex missed.

As a result of the foregoing, JPI Trading has failed to present "highly convincing" evidence of a meritorious defense.  United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977).

c.    Prejudice to Other Parties

Finally, a court weighing a motion to vacate a default judgment in accordance with Rule 60(b) must consider the prejudice caused to nondefaulting parties in granting the motion.

---

[5] JPI Trading points to other correspondence in which JPI Trading canceled or attempted to cancel orders for Jefftex goods.  (See JPI Trading's Mem. Supp. Mot. Vacate, at 7-11, Safdieh's Apr. 21, 2005 Decl. Ex. 10).  Again, it is unclear whether the correspondence refers to the shipments that are the subject of this lawsuit.  It is also unclear whether the correspondence was received by Jefftex, if Jefftex responded to this correspondence, or if JPI Trading ultimately accepted these orders.  In light of these ambiguities, this court declines JPI Trading's invitation to speculate as to the nature of this correspondence.

19

Typically, delay alone does not establish prejudice, unless it "result[s] in the loss of evidence, create[s] increased difficulties for discovery, or provide[s] a greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (quoting 10 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure:  Civil, § 2699 at 536-37 (1983)).  A risk of dissipation of assets can show prejudice. Dixonweb Printing Co., 1995 U.S. Dist. LEXIS 8871, at *12-13.

JPI Trading argues that there would be no prejudice caused by vacatur of the judgment, because the lawsuit is at a very early stage, and no discovery has taken place.  (JPI Trading's Mem. Supp. Mot. Vacate, at 12-13.)  Jefftex contends that JPI Trading has dissipated its assets, and that continued litigation will afford JPI Trading the further opportunity to render any judgment against it futile.  (Jefftex's Mem. Opp'n Mot. Vacate, at 22.)  Specifically, Jefftex refers this court to a Declaration from Jefftex counsel who learned during an attempt to restrain JPI Trading's assets following my award of attorney's fees that JPI Trading is heavily indebted to local banks.  (Id., Lee Decl. ¶¶ 7-12.)  I conclude that Jefftex has shown a risk of dissipation of assets and that it will suffer prejudice from the vacatur of the judgment.  Thus, the factor of prejudice favors Jefftex.

In conclusion, I find that JPI Trading's egregious conduct in failing on numerous occasions to attend mandatory appearances and to hire counsel as commanded by court orders was willful and deliberate, that JPI Trading has failed to assert a meritorious defense, and that there would be prejudice to the nondefaulting parties if this default judgment were vacated. Therefore, JPI Trading's motion to vacate the judgment is denied.

B.    Motion to Amend the Answer and Modify the Judgment

JPI Shipping additionally seeks leave from this court to add counterclaims for "defects and/or lateness . . . to the complete loss of all business from certain customers, the loss of prospective economic advantage and the damage to JPI's business reputation." (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 10.) A motion to amend a non-responsive pleading after 20 days after it is served should be granted "by leave of court . . . if justice so requires." Fed. R. Civ. P. 15(a). Amendments should not be allowed if "the amendment is futile." Neshewat v. Salem, 365 F. Supp. 2d 508, 515 (2d Cir. 2005) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). An amendment is considered futile if it fails to state a claim or would be subject to a motion to dismiss. Id.

JPI Trading's motion to amend cannot succeed, because I have denied its motion to vacate the default judgment. As the default stands, JPI Trading "has no further standing to contest the factual allegations of plaintiff's claim for relief." Carribean Produce Exchange v. Caribe Hydro-Trailer, Inc., 65 F.R.D. 46, 48 (D.P.R. 1974) (citing Thomson v. Wooster, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)). See also Taylor v. Ballwin, 859 F.2d 1330, n.7 (8th Cir. 1988).

In addition, as discussed supra, I find that the defenses asserted by JPI Trading, and upon which its proposed counterclaims are based, lack merit. Accordingly, its proposed counterclaims fail for futility. Therefore, JPI Trading's motion to amend to add counterclaims is denied.

C.    Cross Motions to Modify Default Judgment

After I found JPI Trading in default, on April 15, 2005 I entered a judgment for Plaintiff Jefftex and against Third-Party Defendant JPI Trading in the amount of $1,126,957.80 plus

21

interest.  (Apr. 15, 2005 J.)  Jefftex and JPI Trading now move to modify the judgment.  A court

considers a motion to modify the judgment under the same Rule 60(b) "exceptional

circumstances" standard as a motion to vacate the judgment.  See Christian v. 9A Newfound Bay,

277 F. Supp. 2d 610, 618 (D.V.I. 2003) (citing Moolenaar v. Government of the Virgin Islands,

822 F.2d 1342, 1346 (3d Cir. 1987)).

    As stated supra, Jefftex's claims against Air-City and JPI Trading involve unpaid

shipments from China, Vietnam, Cambodia, and Taiwan.  The amount of the default judgment

was based on Jefftex's counsel's affidavit, which stated that "[o]nly the China shipments

remained unpaid," and listed the amounts of all China shipment invoices, which total

$1,126,957.80.  (Weinberg Apr. 8, 2005 Aff. ¶¶ 7-8.)  Third Party Defendant JPI Trading

contends that it partially paid for the shipments, and moves that the judgment should be modified

to $1,005,174.30.   (JPI Trading's Mem. Supp. Mot. Vacate, at 14-15;  Safdieh's Apr. 21, 2005

Decl. ¶ 7 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1), Ex. 2).  Jefftex responds that the

judgment already has been reduced to account for JPI Trading's partial payment, as reflected in

its April 29, 2005 Notice of Partial Satisfaction of Judgment, and further moves for an additional

judgment of $1,146,232.10 against JPI Trading for defaulting on settlement agreement

obligations.  (Jefftex Mem. Supp. Default J., at 3-4.)

    JPI Trading in support of its motion attached two cashier checks in the amount of two of

the 11 China shipments (Safdieh's Apr. 21, 2005 Decl. Ex. 2) and states that it paid an additional

$17,561.00 against two other China shipments.  (Safdieh's Apr. 21, 2005 Decl. ¶ 8.)  Jefftex does

not deny these payments, but rather states that the reduction is reflected in Jefftex's Partial

Satisfaction of Judgment, which reduced the judgment to the amount to which JPI Trading seeks

to modify.  (Notice Partial Satisfaction J.; Weinberg's Supp. Aff. ¶ 29, Ex. P).  As JPI Trading has offered no evidence that the amount of the judgment should be further reduced, I find that JPI Trading's motion to modify the judgment fails because the judgment has already been so modified.

Nor has Jefftex persuaded me that I should modify the default judgment to include the amount of the Cambodia, Taiwan, and Vietnam shipments.  While Jefftex argues that JPI Trading "defaulted in performing its obligations under the global settlement agreement . . . ." (Jefftex Memo. Supp. Default J., at 8) it has not provided this court with any evidence of JPI Trading's obligations under the "global settlement agreement," or how it failed to meet these obligations.   For its part, JPI Trading states that it "settled directly with Jefftex all of the claims respecting non-China shipments (i.e., those from Taiwan, Cambodia and Taiwan)." (Safdieh's Supplemental Decl. ¶ 2.)  In light of the fact that I relied on Jefftex's own statement that "[o]nly the China shipments remained unpaid," (Weinberg Apr. 8, 2005 Aff. ¶ 7) in finding JPI Trading in default the contract price of the China shipments, Jefftex has not provided sufficient evidence for this court to find JPI Trading in additional default of $1,126,957.80.  Insofar as Jefftex's motion to modify the judgment is urged as an additional sanction against JPI Trading for "failure to plead any meritorious claim and failure to present any legitimate bases in their amended motion to vacate the default," this court shall treat its application as one for sanctions.  (Jefftex Memo. Supp. Default J., at 3-4.)

Accordingly, JPI Trading's and Jefftex's motions to modify the judgment are denied.

D.    Motions for Sanctions and Attorney's Fees

Lastly, Jefftex and Air-City move for this court to sanction JPI Trading under Fed. R.

23

Civ. P. 11 for "material misstatements and omissions of fact and law made by and on behalf of" JPI Trading in bringing these motions.  (Jefftex's Memo. Supp. Default J., at 8.)  Rule 11 requires of litigants that "the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension,"  Fed. R. Civ. P. 11(b)(2), and that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."  Fed. R. Civ. P. 11(b)(3).  The imposition of sanctions under Rule 11 should "resolve all doubts in favor of the signer."  Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989).  Pursuant to the Rule, a party or an attorney has an affirmative duty to make "reasonable inquiry into the facts and the law."  Bus. Guides, Inc. v. Chromatic Commun. Enters., 498 U.S. 533, 542-43, 111 S. Ct. 922, 929, 112 L. Ed. 2d 1140 (1991) (citations omitted).  The imposition of sanctions against attorneys is discretionary and may be warranted "where an attorney's conduct degrades the legal profession and disserves justice."  MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996).

In support of this motion, Jefftex argues that sanctions are appropriate because JPI Trading (a) misstated the correct standard of review of a default judgment; (b) did not cite to statutory authority or decisional law in support of its contention that the court does not have admiralty jurisdiction over this matter, and that New York's door closing statute precludes Jefftex from suing in this court; (c) asserted a frivolous defense of nonconforming goods, as it did not allege that it rejected the seller's goods; and (d) had no support for its claim that Mark Pan is a business agent for Jefftex.  (Jefftex's Memo. Supp. Default J., at 4-8).

An "argument constitutes a frivolous legal position . . . if, under an objective standard of

24

reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." Caisse Nationale de Credit Agricole-CNCA v. Valcorp., Inc., 28 F.3d 259, 264 (2d Cir. 1994) (internal quotations omitted).  I find that JPI Trading's legal arguments do not amount to a "frivolous legal position." Id.  While JPI Trading failed to recite all relevant factors for Rule 60(b) review of default judgments, its legal arguments in favor of vacatur fit within the guidelines set forth in Rule 60(b).  JPI Trading's discussion of admiralty jurisdiction and New York's door-closing statute was supported by authority and did not contradict established law.  Moreover, JPI Trading's substantive defense of nonconforming goods did not lack an allegation that it rejected Jefftex's goods; rather, its argument that its expressions of disappointment constituted a rejection was unpersuasive.  Significantly, although JPI Trading sparingly cited to authority in its briefs in support of its motions, no authority was offered in such a way as to suggest that it was attempting to mislead the court.   In conclusion, while I rejected JPI Trading's legal arguments, I find that they were reasonable enough to survive Rule 11 scrutiny.

Nor has JPI Trading made a factual "allegation [that] is utterly lacking in support," O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996), that would compel this court to sanction it.  I find that there is support in the record that Mr. Pan, in his role as counsel, was involved in transactions between Jefftex and JPI Trading apart from this litigation.  Although JPI Trading may have been incorrect in its characterization of Mr. Pan as a "business agent," I do not find that this characterization is utterly lacking in support.

In conclusion, I find that the legal argument and factual allegations in JPI Trading's motions to vacate and/or modify the judgment, and to amend, do not rise to Rule 11 sanctionable

25

conduct. Accordingly, Jefftex's and Air-City's motions for sanctions and attorney's fees are denied.

IV.    Conclusion

JPI Trading's motions to vacate or modify the judgment, and to amend its Answer are DENIED. Jefftex's motion to modify the judgment is DENIED. Jefftex's and JPI Trading's motions for sanctions and attorney's fees are DENIED.

SO ORDERED.

Dated: October 17, 2005                          /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                          Nicholas G. Garaufis
                                       United States District Judge

# EXHIBIT F



JOSEPH SAFDIEH

6607

1-976/260

PAY
TO THE
ORDER OF:  GOTTESMAN, WOLGEL, ATTORNEYS FOR JEFFTEX

DATE  11/10/2006

ONE HUNDRED THOUSAND AND 00/100************************************************************************ DOLLARS

$100,000.00

IDBBANK
Israel Discount Bank of New York
511 Fifth Avenue, New York, NY 10017

FOR

⑈00660 7⑈ ⑊⑉0 2600976 8⑈⑉ 04⑈⑉794 5⑈⑉ 3⑈

# EXHIBIT G

```
N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

                          FILING RECEIPT
==================================================================================
ENTITY NAME: JEFFTEX INTERNATIONAL LTD.


DOCUMENT TYPE: INCORPORATION (DOM. BUSINESS)                 COUNTY: NEWY

SERVICE COMPANY: GERALD WEINBERG, P.C.                 SERVICE CODE: 13 *


==================================================================================
FILED:07/18/2003 DURATION:PERPETUAL  CASH#:030718000376 FILM #:030718000357

ADDRESS FOR PROCESS                                      EXIST DATE
-------------------                                      ----------
THE CORPORATION                                          07/18/2003
500 FIFTH AVENUE #950
NEW YORK, NY 10110


REGISTERED AGENT
----------------
```



```
     STOCK:          200 NPV
```

```
==================================================================================
FILER                    FEES        160.00    PAYMENTS      160.00
-----                    ----                                --------
                         FILING      125.00    CASH            0.00
PAN & CHU, LLP           TAX          10.00    CHECK           0.00
500 FIFTH AVENUE  ROOM 950   CERT       0.00    CHARGE          0.00
                         COPIES        0.00 DRAWDOWN         160.00
NEW YORK, NY 10110       HANDLING     25.00    BILLED          0.00
                                               REFUND          0.00
                                               ------
==================================================================================
                                               DOS-1025 (11/89)
```

## FILING RECEIPT

```
================================================================================
```
ENTITY NAME: JEFFTEX INTERNATIONAL LTD.

DOCUMENT TYPE: DISSOLUTION (DOMESTIC)                    COUNTY: NEWY

SERVICE COMPANY: ** NO SERVICE COMPANY **               SERVICE CODE: 00

```
================================================================================
```
FILED:07/26/2004 DURATION:********  CASH#:040726000384 FILM #:040726000381

ADDRESS FOR PROCESS
-------------------


REGISTERED AGENT
----------------



```
================================================================================
```

| FILER | FEES | 60.00 | PAYMENTS | 60.00 |
|-------|------|-------|----------|-------|
| ----- | ---- | | | -------- |
| | FILING | 60.00 | CASH | 0.00 |
| MARK PAN, ESQ. | TAX | 0.00 | CHECK | 60.00 |
| 500 FIFTH AVENUE #950 | CERT | 0.00 | CHARGE | 0.00 |
| | COPIES | 0.00 | DRAWDOWN | 0.00 |
| NEW YORK, NY 10110 | HANDLING | 0.00 | BILLED | 0.00 |
| | | | REFUND | 0.00 |
| | | | ------ | |

```
================================================================================
```
                                                        DOS-1025 (11/89)

# EXHIBIT H

1

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF NEW YORK:  TRIAL TERM PART 27

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - X

4   JEFFTEX INTERNATIONAL LTD.,
                              Plaintiff

5                  - against -

6

7   JPI TRADING CORP. AND JOSEPH SAFDIEH,
                              Defendants.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - - X

9   Index No. 603811/04

10                      September 14, 2006
                        60 Centre Street
11                      New York, New York 10007

12

13   B E F O R E:   HONORABLE IRA GAMMERMAN, Justice

14

15   A P P E A R A N C E S:

16   GOTTESMAN, WOLGEL, MALAMY, FLYNN & WEINBERG, P.C.
     Attorneys for the Plaintiff
17   11 Hanover Square
     New York, New York   10005
18   BY:  STEVEN WEINBERG, ESQ.
          STEWART W. LEE, ESQ.

19

20   KAPLAN, von OHLEN & MASSAMILLO, LLC
     Attorneys for the Defendants
21   90 Park Avenue, 18th Floor
     New York, New York   10016
22   BY:  THOMAS CARULLI, ESQ.
          NICHOLAS E. PANTELOPOULOS, ESQ.

23

24

25                      Joyce Fisher, C.S.R.
                        Official Court Reporter

2

### Proceedings

1          THE COURT:  This case is 19110.  That number

2     should appear on all papers or communications.

3          Let me indicate the past history of the case

4     and then the most recent history.

5          The case bears the Index Number 603811 of '04

6     and my first contact with the case was on the 26 of May

7     of 2005.

8          When I see a case for the first time, I ask

9     the lawyers whether or not they want to stay in this

10    part or go to another judge.  And, if they stay in this

11    part, they sign a -- if they want to stay in this part,

12    they sign a stipulation vesting me with the authority

13    as a supreme court judge to handle the case.

14          They signed a stipulation and advised me of

15    the following facts:

16          That the case involved a claim for

17    $4.8 million on ten notes presumably executed by the

18    defendant in connection with sales made by the

19    plaintiff of clothing manufactured in Asia and sold to

20    the defendant who in turn sells it to the stores.

21          The attorney for the defendant advised me

22    that there was a counterclaim asserted for defects in

23    the garments, for late shipment and was seeking damages

24    of $12 million on the counterclaim.

25          The plaintiff was to -- I guess there must

3

Proceedings

1   have been a motion because I have no note about that,

2   but my note says plaintiff to serve a complaint within

3   ten days and answer within ten days thereafter.

4           I next saw counsel according to my notes on

5   the 29 of June of '05 at which time the case was

6   adjourned.  My next note is July 28 '05 and my note

7   says the plaintiff was to serve an amended complaint.

8           The next conference was October 11 '05 at

9   which point I told the lawyers that they had until

10  May 16 of '06 to complete discovery.

11          On that date, they came in, we set a trial

12  date of yesterday and someone put the case on the

13  calendar.  I assume it was the attorney for the

14  plaintiff.  It bears Calendar Number 06L3682.

15          My clerk advises me of the following:

16          On Monday she received a telephone call from

17  an individual who said that he was associated, not a

18  lawyer, but associated with the defendant and he

19  indicated that he was unhappy with the representation

20  that he was being given by the law firm because they

21  were too busy with other matters and were not paying

22  attention to his case and wanted to know if he could

23  get an adjournment of the case so that he could get a

24  new attorney.

25          My clerk advised me that she told him that if

Joyce Fisher, C.S.R., Official Court Reporter

4

Proceedings

1   the attorney seeks to withdraw, the attorney makes an

2   appropriate motion.

3           The following day she received a call she

4   says from all of the attorneys, presumably attorneys

5   representing both parties, in which she was told that

6   the case was settled and that all that was needed was a

7   signature of various individuals who were out of the

8   country or not in the city and the attorneys wanted an

9   adjournment.

10           I told her that the case was going to

11   proceed, to tell the callers that the case was going to

12   proceed on the 14 and that if the case was settled, the

13   lawyers could come in and place the settlement terms on

14   the record.

15           Yesterday everybody appeared and I filled out

16   a jury slip, sent the lawyers out to pick a jury.  When

17   I came back from lunch, I asked my clerk as to where

18   the jury was being picked and was told that the

19   attorneys had gone to see Judge Silbermann.

20           I called Judge Silbermann and she said

21   yesterday, and I reconfirmed this with a phone

22   conversation with her today, that someone on behalf of

23   either the plaintiff or defendant told her that this

24   was a case that I had handled as a supreme court judge

25   sometime in 2002 or 2003 and that, without getting

Joyce Fisher, C.S.R., Official Court Reporter

5

Proceedings

1    anybody's consent or permission, I continued to handle

2    the case thereafter.

3            Whoever told her that was intentionally

4    misleading her.  Obviously, the case wasn't handled by

5    me in 2002 or 2003.  It has a 2004 index number.

6            When I asked her whether or not she looked at

7    the index number, she said the card was not available.

8    She then, based on this false information provided to

9    her by someone, I assume one of the people sitting at

10    the table in front of me, she wrote an order which she

11    has since rescinded randomly reassigning this case.

12            Now, I would be very interested to find out

13    which of you gentleman told her that this was a case

14    that I had handled before 2004 and that I continued to

15    handle it without getting anybody's permission or

16    consent.  Who was it?

17            Was it you?

18            MR. WEINBERG:  Your Honor, we all made a

19    mistake.  The judge asked us how does Judge Gammerman

20    have this case?  My associate, Mr. Lee, misspoke and

21    said I think it started in 2002.

22            THE COURT:  How could Mr. Lee have said that

23    when the index number was '04, counselor?

24            MR. WEINBERG:  It was a mistake, your Honor.

25    It wasn't an intentional misrepresentation.

Joyce Fisher, C.S.R., Official Court Reporter

6

Proceedings

1       Respectfully, none of us were a party to the

2   stipulation that we saw for the first time yesterday.

3       THE COURT:  Well, who signed the stipulation

4   on behalf of the plaintiff?

5       MR. WEINBERG:  It was signed by prior counsel

6   for which we substituted for them.  And that

7   stipulation was never in their file.  And there was a

8   prior counsel for defense.

9       THE COURT:  You mean neither firm that

10  presently is involved in this case was involved in the

11  case in May of 2005?

12      MR. WEINBERG:  Correct.  So, I apologize.  I

13  am offering an explanation.

14      THE COURT:  Okay.

15      MR. WEINBERG:  None of us knew that this --

16  none of us knew how you were assigned to the case and

17  that the parties themselves stipulated, the prior

18  attorneys for the parties themselves, stipulated to

19  your handling this as a justice of the court.  So, we

20  all honestly believed at the time that you were still

21  acting in a capacity as JHO.

22      And that we wanted -- and the reason for the

23  applications to Judge Silbermann was that both parties

24  believed that we felt we should proceed with motion

25  practice in the case and therefore needed it to be

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    referred to a justice of the supreme court.  And I

2    apologize.

3              THE COURT:  In any event, we're going to get

4    some jurors here.  We're going to pick a jury.

5              Where is Bea?

6              MR. WEINBERG:  If I may, your Honor.

7              THE COURT:  Yes.

8              MR. WEINBERG:  As both parties have advised

9    you previously, what both parties have instructed us to

10   do, and we have signed it and we're prepared to file it

11   today, is a stipulation of discontinuance without

12   prejudice.

13             THE COURT:  No, I'm not going to approve

14   that.  That's an adjournment, counselor.

15             Counselor, I'm not going to do it.

16   Counselor, you're going to pick a jury or I'm going to

17   dismiss the case.  You have a choice.  Those are your

18   only two choices.

19             MR. WEINBERG:  If you want to dismiss it,

20   dismiss it without prejudice.

21             THE COURT:  No, I'm not going to dismiss it

22   without prejudice.  I'm going to dismiss it for failure

23   to prosecute.  That's a dismissal with prejudice.

24             MR. WEINBERG:  Respectfully, it is not --

25   respectfully, the parties are entitled under the CPLR

8

Proceedings

1    to make motion practice.

2              THE COURT:  Counselor, you can make whatever

3    motion you want to vacate the dismissal.  You can do

4    whatever you want.  If you don't, if you're not

5    prepared to start picking a jury, and I'll have the

6    jurors brought in in a few minutes in this part, under

7    my supervision, it's my intention to dismiss the case

8    and then you can make whatever motions you want.

9              That dismissal will be with prejudice,

10    without interests, costs and disbursements.  And, if

11    the defendant wants it dismissed with prejudice, all

12    they have to do is bring the transcript to me.  As a

13    matter of fact, the defendant moved for a dismissal

14    yesterday.  That was my recollection.

15              Isn't that correct?

16              MR. PANTELOPOULOS:  Yes, that was correct,

17    your Honor, we did.

18              THE COURT:  I'm granting that motion unless

19    you --

20              MR. WEINBERG:  Not with prejudice, your

21    Honor.  Their application was to dismiss, but not with

22    prejudice.

23              THE COURT:  Are you willing to dismiss

24    without prejudice?

25              MR. CARULLI:  Your Honor, if I may, I wasn't

9

Proceedings

1    here yesterday.  So, I'm the only one.

2             THE COURT:  Yes.

3             MR. CARULLI:  Mr. Weinberg and I agree

4    that -- our clients have instructed us to execute and

5    we have executed --

6             THE COURT:  To discontinue without prejudice.

7             That application is denied.  I'm going to

8    dismiss with prejudice and you make whatever motion you

9    want.

10            I take it you're not prepared to pick a jury.

11            MR. WEINBERG:  Respectfully, our witness is

12   in Taiwan, your Honor.

13            THE COURT:  Counsel, I'll let you pick a jury

14   today and start Monday.  He can be here by Monday.

15            MR. CARULLI:  Your Honor, I start a trial in

16   Chicago.  I won't be back until October 3.

17            THE COURT:  I'm sorry, counsel.  This case

18   was scheduled for trial on May 16.  So that if you made

19   plans to go to Chicago to try a case next week, you

20   should have not made those plans because you knew from

21   May 16 that the case was going to be tried on

22   September 14.

23            MR. CARULLI:  Yes, your Honor, but next week

24   is September 19 and --

25            THE COURT:  Counselor, you thought the trial

Joyce Fisher, C.S.R., Official Court Reporter

10

Proceedings

1   would be over?

2           MR. CARULLI:  We thought.

3           THE COURT:  All right.  We'll start it right

4   now.  We'll start it today.

5           MR. CARULLI:  Your Honor, I don't want to --

6           THE COURT:  In any event, counsel, if you're

7   not prepared, I'm prepared, considering the witness is

8   in Taiwan, to have a jury picked today and start on

9   Monday.

10          The defendant is going to have to struggle

11  with whatever particular problems that creates for the

12  defendant's counsel.  If you're not prepared to do

13  that, then I'm going to dismiss the case with prejudice

14  and then you have whatever rights you have.

15          MR. WEINBERG:  Respectfully, your Honor --

16          THE COURT:  Yes.

17          MR. WEINBERG:  -- there is, according to the

18  CP --

19          THE COURT:  I can't hear you.

20          MR. WEINBERG:  While the trial date was set,

21  we expected to have the minimum amount of time afforded

22  by the CPLR to make our motions.

23          THE COURT:  Counsel, you had since May 16 to

24  make your motions.

25          MR. WEINBERG:  We were continuing discovery.

Joyce Fisher, C.S.R., Official Court Reporter

11

Proceedings

1    Then we had the date to file the note of issue.

2              THE COURT:  Counselor, you're not prepared to

3    pick a jury today.  You refuse to do so?

4              MR. WEINBERG:  No.  I will have to make a

5    phone call, your Honor, but -- I will have to make a

6    phone call to see if that's possible.

7              THE COURT:  Okay.  Make the phone call.

8              MR. CARULLI:  Your Honor, if it's going -- if

9    you move the trial for next week, if we don't do it

10   today --

11             THE COURT:  Counsel --

12             MR. CARULLI:  -- I'm prepared if I have to.

13             THE COURT:  -- you have an exception.

14             Make your phone call.

15             (Case laid aside; later recalled.)

16             THE COURT:  Let's go back on the record here.

17             Yes, go ahead.  What did you learn as a

18   result of your phone call?

19             MR. WEINBERG:  As a result of my phone call,

20   I learned that neither party is ready or prepared to

21   go.

22             THE COURT:  Case is dismissed.

23             MR. WEINBERG:  Your Honor, may I finish the

24   record, please.

25             THE COURT:  Of course, of course.

12

Proceedings

1       MR. WEINBERG:  Thank you very much, your

2   Honor.

3           Our client is in Taiwan.  The records are in

4   Taiwan.  It takes a minimum of two weeks on an

5   emergency basis to get a visa to come here in order to

6   be present at trial.  I cannot honestly represent to

7   the Court -- if I may finish.

8           THE COURT:  Yes, go ahead.

9           MR. WEINBERG:  -- that we will, even if we

10  were to pick a jury today, which I am prepared to do,

11  that we can have the client here by Monday or Tuesday

12  of next week, in which case that would result in a

13  dismissal with prejudice which is obviously detrimental

14  to my client's claims.  A dismissal with prejudice is

15  also detrimental to the defendant's counterclaims.

16          Now, your Honor, there is case law.

17          THE COURT:  I take it defendant is not

18  prepared to proceed on the counterclaims today because

19  if I dismiss the plaintiff's case and you're ready to

20  go, I'll try the counterclaims.

21          MR. CARULLI:  Your Honor, if you said am I

22  prepared and my witness could be here, that answer is

23  yes.  But my client has instructed me to do a dismissal

24  without prejudice.  They have their own business

25  relationship.  So, yes, I could get them here.

13

Proceedings

1      THE COURT:  But your client doesn't want to

2  proceed with the counterclaim as I understand it.

3      MR. CARULLI:  Only if they were to proceed.

4      THE COURT:  They're not going to proceed as I

5  understand it with respect to the --

6      MR. WEINBERG:  May I finish.

7      THE COURT:  I'll let you say whatever you

8  want with respect to the delay.

9      Let me finish, sir.

10     MR. WEINBERG:  Your Honor --

11     THE COURT:  Let me finish, sir.  Sit down.

12 Sit down.

13     MR. WEINBERG:  I advised the Court --

14     THE COURT:  On the record, you can sit down.

15 I'm directly you to sit down.  I'm directing you to sit

16 down.

17     MR. WEINBERG:  We're filing the voluntary

18 discontinuance today.  Respectfully, we do not need

19 Court approval.

20     THE COURT:  Counsel, I'm going to dismiss the

21 case with prejudice.  You have an exception.  You can

22 do whatever you think is in the interest of your

23 client, both of you.

24     The case is dismissed with prejudice.

25     Now, say whatever you want.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    MR. WEINBERG:  Prior to the judge's

2    direction, we were confirming that we had advised the

3    Court the parties have signed a voluntary stipulation

4    of discontinuance which is the parties' right under

5    CPLR 3217.  It's not an application for Court approval.

6        The parties do not need Court approval

7    pursuant to CPLR 3217 Paragraph 2.  And that the

8    dismissal, respectfully to the Court, is a nullity as

9    to both parties under Commercial Rule 2.

10       THE COURT:  Counselor, when the -- if the

11   case is ever reinstated and nobody raises this

12   dismissal, then you're going to get away with this.

13       If somebody -- if the attorney -- if the

14   defendant is aware that the -- he has the right to have

15   the plaintiff's claim dismissed -- and I'm also

16   dismissing the counterclaim with prejudice.

17       So that it's up to you people.  If the

18   lawsuit is started again and nobody raises the prior

19   dismissal, the judge to whom that case will be assigned

20   will be totally unaware of that, counselor.

21       So, you take your chances.  It depends on the

22   various clients.

23       Maybe the client who called on Monday about

24   his unhappiness with his lawyers will decide he wants

25   to enforce the dismissal with prejudice and that may be

Joyce Fisher, C.S.R., Official Court Reporter

15

Proceedings

1    some interesting litigation in the future.

2         But in any event, as far as I'm concerned,

3    the case is dismissed with prejudice.

4         MR. WEINBERG:  Respectfully, I know we have

5    an exception under CPLR 3212.  As a matter of law,

6    again, the Court cannot preclude or truncate, shorten

7    the time for the parties to move for summary judgment

8    which at a minimum is 30 days by statute.

9         And, your Honor --

10        THE COURT:  That, counselor, that argument is

11   so lacking in merit.  There's nothing in that rule that

12   says that you can't schedule a trial two days after the

13   note of issue is filed.  That argument has been made

14   before and rejected.

15        But in any event, look, if nobody -- if

16   nobody raises this dismissal when the lawsuit is

17   started again, you've gotten away with that.  There's

18   no question about it.

19        I can't compel the defendant when the lawsuit

20   is started again, if it is started again, to raise this

21   prior dismissal.  I can't do that.  That's entirely up

22   to the lawyers and their client.

23        MR. WEINBERG:  I understand.  I am just

24   completing the record.

25        THE COURT:  Your client should be aware -- I

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    have no idea about the merits of this case.  There wa.

2    a claim for $4 something million, a counterclaim for

3    $12 million and I heard $100,000 discussed yesterday as

4    the settlement amount.  So, I have some serious

5    question as to the merits of both the claim and the

6    counterclaim.  But in any event, as far as I'm

7    concerned, on my records, the case is dismissed and

8    that's a dismissal with prejudice.

9            What happens in the future is up to another

10   judge.

11           MR. WEINBERG:  I'm finishing my record in

12   case we need to order the transcript and take this to

13   the appellate division.

14           THE COURT:  Okay.  Go ahead.  Say whatever

15   you want.

16           MR. WEINBERG:  Respectfully, the $100,000 was

17   consideration for discontinuing and having an extension

18   of time for the parties to resolve it, not as a

19   settlement in full for the value of the claim or the

20   counterclaim.

21           The pleadings were first joined with a second

22   amended complaint and answer shortly --

23           THE COURT:  Sometime in the summer of '05

24   according to my notes.

25           MR. WEINBERG:  It was after that, your Honor.

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    have no idea about the merits of this case.  There was

2    a claim for $4 something million, a counterclaim for

3    $12 million and I heard $100,000 discussed yesterday as

4    the settlement amount.  So, I have some serious

5    question as to the merits of both the claim and the

6    counterclaim.  But in any event, as far as I'm

7    concerned, on my records, the case is dismissed and

8    that's a dismissal with prejudice.

9            What happens in the future is up to another

10   judge.

11           MR. WEINBERG:  I'm finishing my record in

12   case we need to order the transcript and take this to

13   the appellate division.

14           THE COURT:  Okay.  Go ahead.  Say whatever

15   you want.

16           MR. WEINBERG:  Respectfully, the $100,000 was

17   consideration for discontinuing and having an extension

18   of time for the parties to resolve it, not as a

19   settlement in full for the value of the claim or the

20   counterclaim.

21           The pleadings were first joined with a second

22   amended complaint and answer shortly --

23           THE COURT:  Sometime in the summer of '05

24   according to my notes.

25           MR. WEINBERG:  It was after that, your Honor.

17

Proceedings

1    THE COURT:  I'm just looking at my notes.

2    MR. WEINBERG:  It was October '05.  There was

3    a second amended complaint and finally an answer.  It

4    was in May of '06 when discovery demands were first

5    served.

6         Respectfully, four months is not sufficient

7    in a complex case dealing with bills of lading,

8    guarantees, notes, to seek discovery of all of the

9    records with respect to overseas in Taiwan and here in

10   New York.  And the counterclaim deals with different

11   shipments and different records.

12        Last but not least, again, and I know we have

13   the Court's exception and I thank you --

14   THE COURT:  Okay.

15   MR. WEINBERG:  -- but we take exception to

16   the fact that this is a failure to prosecute.  It is

17   not.

18        When counsel has appeared at all court

19   conferences, when counsel has complied with discovery

20   demands, when counsel has filed a note of issue and

21   when witnesses and documents are overseas, there is a

22   reasonable amount of time that's afforded to the

23   parties to move for summary judgment and have the

24   people here ready for trial.

25        And, therefore, respectfully, for the

Joyce Fisher, C.S.R., Official Court Reporter

Proceedings

1    appellate division, that's an abuse of discretion to

2    dismiss with prejudice as a failure to prosecute when

3    that is not.

4                THE COURT:  Well, it's a failure to prosecute

5    when I direct a jury be selected and counsel refuses to

6    do so.

7                MR. WEINBERG:  Respectfully, there's First

8    Department case law on that subject, your Honor.

9                THE COURT:  Okay.

10               MR. CARULLI:  Thank you, your Honor.

11               THE COURT:  Take care.

12               MR. LEE:  Thank you.

13                      *       *       *

14                  C E R T I F I C A T E

15          I, Joyce Fisher, C.S.R., an official

16   court reporter of the State of New York, do hereby

17   certify that the foregoing is a true and accurate

18   transcript of my stenographic notes.

19

20                              _____
                                    Joyce Fisher
21                              Official Court Reporter

22

23

24

25

Joyce Fisher, C.S.R., Official Court Reporter

# EXHIBIT I

ADMINISTRATIVE ORDER OF THE
CHIEF ADMINISTRATIVE JUDGE OF THE COURTS

Pursuant to the authority vested in me, and with the advice and consent of

the Administrative Board of the Courts, I hereby amend, effective January 17, 2006, Part

202 of the Uniform Civil Rules of the Supreme and County Courts, to add the attached

new section 202.70, relating to the Commercial Division of the Supreme Court.

Chief Administrative Judge of the Courts

Dated: December 29, 2005

AO/518/05

**§202.70  Rules of the Commercial Division of the Supreme Court**

### (a)  Monetary thresholds

Except as set forth in subdivision (b), the monetary thresholds of the Commercial Division, exclusive of punitive damages, interests, costs, disbursements and counsel fees claimed, is established as follows:

| | |
|---|---|
| Albany County | $25,000 |
| Erie County | $25,000 |
| Kings County | $50,000 |
| Nassau County | $75,000 |
| New York County | $100,000 |
| Queens County | $50,000 |
| Seventh Judicial District | $25,000 |
| Suffolk County | $25,000 |
| Westchester County | $100,000 |

### (b)  Commercial cases

Actions in which the principal claims involve or consist of the following will be heard in the Commercial Division provided that the monetary threshold is met or equitable or declaratory relief is sought:

(1)  Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g., unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g., sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants;

and employment agreements not including claims that principally involve alleged discriminatory practices);

(2)   Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units);

(3)   Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only;

(4)   Shareholder derivative actions -- without consideration of the monetary threshold;

(5)   Commercial class actions -- without consideration of the monetary threshold;

(6)   Business transactions involving or arising out of dealings with commercial banks and other financial institutions;

(7)   Internal affairs of business organizations;

(8)   Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters;

(9)   Environmental insurance coverage;

(10)  Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage);

(11)  Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures -- without consideration of the monetary threshold; and

(12)  Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues -- without consideration of the monetary threshold.

(c)  **Non-commercial cases**

The following will not be heard in the Commercial Division even if the monetary threshold is met:

(1)  Suits to collect professional fees;

(2)  Cases seeking a declaratory judgment as to insurance coverage for personal injury or property damage;

(3)  Residential real estate disputes, including landlord-tenant matters, and commercial real estate disputes involving the payment of rent only;

(4)  Proceedings to enforce a judgment regardless of the nature of the underlying case;

(5)  First-party insurance claims and actions by insurers to collect premiums or rescind non-commercial policies; and

(6)  Attorney malpractice actions except as otherwise provided in paragraph (b)(8).

(d)  **Assignment to the Commercial Division**

(1)  A party seeking assignment of a case to the Commercial Division shall indicate on the Request for Judicial Intervention (RJI) that the case is "commercial."  A party seeking a designation of a special proceeding as a commercial case shall check the "other commercial" box on the RJI, not the "special proceedings" box.

(2)  The party shall submit with the RJI a brief signed statement justifying the Commercial Division designation, together with a copy of the proceedings.

(e)  **Transfer into the Commercial Division**

If a case is assigned to a non-commercial part because the filing party did not designate the case as "commercial" on the RJI, any other party may apply by letter application (with a copy to all parties) to the

3

Administrative Judge, within ten days after receipt of a copy of the RJI, for a transfer of the case into the Commercial Division. The determination of the Administrative Judge shall be final and subject to no further administrative review or appeal.

**(f) Transfer from the Commercial Division**

(1)   In the discretion of the Commercial Division justice assigned, if a case does not fall within the jurisdiction of the Commercial Division as set forth in this section, it shall be transferred to a non-commercial part of the court.

(2)   Any party aggrieved by a transfer of a case to a non-commercial part may seek review by letter application (with a copy to all parties) to the Administrative Judge within ten days of receipt of the designation of the case to a non-commercial part. The determination of the Administrative Judge shall be final and subject to no further administrative review or appeal.

**(g) Rules of practice for the Commercial Division**

Unless these rules of practice for the Commercial Division provide specifically to the contrary, the rules of Part 202 also shall apply to the Commercial Division, except that Rules 7 through 15 shall supersede section 202.12 (Preliminary Conference) and Rules 16 through 24 shall supersede section 202.8 (Motion Procedure).

**Rule 1.  Appearance by Counsel with Knowledge and Authority.** Counsel who appear in the Commercial Division must be fully familiar with the case in regard to which they appear and fully authorized to enter into agreements, both substantive and procedural, on behalf of their clients. Counsel should also be prepared to discuss any motions that have been submitted and are outstanding. Failure to comply with this rule may be regarded as a default and dealt with appropriately. See Rule 12. It is important that counsel be on time for all scheduled appearances.

**Rule 2.  Settlements and Discontinuances.** If an action is settled, discontinued, or otherwise disposed of, counsel shall immediately inform the court by submission of a copy of the stipulation or a letter directed to the clerk of the part along with notice to chambers via telephone or e-mail. This notification shall be made in addition to the filing of a stipulation with the County Clerk.

4

**Rule 3. Alternative Dispute Resolution (ADR).** At any stage of the matter, the court may direct or counsel may seek the appointment of an uncompensated mediator for the purpose of mediating a resolution of all or some of the issues presented in the litigation.

**Rule 4. Electronic Submission of Papers.**

(a) Papers and correspondence by fax. Papers and correspondence filed by fax should comply with the requirements of section 202.5-a except that papers shall not be submitted to the court by fax without advance approval of the justice assigned. Correspondence sent by fax should not be followed by hard copy unless requested.

(b) Papers submitted in digital format. In cases not pending in the court's Filing by Electronic Means System, the court may permit counsel to communicate with the court and each other by e-mail. In the court's discretion, counsel may be requested to submit memoranda of law by e-mail or on a computer disk along with an original and courtesy copy.

**Rule 5. (This rule shall apply only in the First and Second Judicial Departments) Information on Cases.** Information on future court appearances can be found at the court system's future appearance site (www.nycourts.gov/ecourts). Decisions can be found on the Commercial Division home page of the Unified Court System's internet website: www.courts.state.ny.us/comdiv or in the New York Law Journal. The clerk of the part can also provide information about scheduling in the part (trials, conferences, and arguments on motions). Where circumstances require exceptional notice, it will be furnished directly by chambers.

**Rule 6. Form of Papers.** All papers submitted to the Commercial Division shall comply with CPLR 2101 and section 202.5(a). Papers shall be double-spaced and contain print no smaller than twelve-point, or 8½ x 11 inch paper, bearing margins no smaller than one inch. The print size of footnotes shall be no smaller than ten-point. Papers also shall comply with Part 130 of the Rules of the Chief Administrator.

**Rule 7. Preliminary Conference; Request.** A preliminary conference shall be held within 45 days of assignment of the case to a Commercial Division justice, or as soon thereafter as is practicable. Except for good cause shown, no preliminary conference shall be adjourned more than once or for more than 30 days. If a Request for Judicial Intervention is accompanied by a dispositive motion, the preliminary conference shall take place within 30 days following the decision of such motion (if not rendered moot) or at

such earlier date as scheduled by the justice presiding.    Notice of the preliminary conference date will be sent by the court at least five days prior thereto.

### Rule 8.  Consultation prior to Preliminary and Compliance Conferences.

(a)  Counsel for all parties shall consult prior to a preliminary or compliance conference about (i) resolution of the case, in whole or in part; (ii) discovery and any other issues to be discussed at the conference; and (iii) the use of alternate dispute resolution to resolve all or some issues in the litigation.  Counsel shall make a good faith effort to reach agreement on these matters in advance of the conference.

(b)  Prior to the preliminary conference, counsel shall confer with regard to anticipated electronic discovery issues.  Such issues shall be addressed with the court at the preliminary conference and shall include but not be limited to (i) implementation of a data preservation plan; (ii) identification of relevant data; (iii) the scope, extent and form of production; (iv) anticipated cost of data recovery and proposed initial allocation of such cost; (v) disclosure of the programs and manner in which the data is maintained; (vi) identification of computer system(s) utilized; (vii) identification of the individual(s) responsible for data preservation; (viii) confidentiality and privilege issues; and (ix) designation of experts.

### Rule 9.  (Reserved)

**Rule 10.  Submission of Information.**    At the preliminary conference, counsel shall be prepared to furnish the court with the following: (i) a complete caption, including the index number; (ii) the name, address, telephone number, e-mail address and fax number of all counsel; (iii) the dates the action was commenced and issue joined; (iv) a statement as to what motions, if any, are anticipated; and (v) copies of any decisions previously rendered in the case.

### Rule 11.  Discovery

(a)  The preliminary conference will result in the issuance by the court of a preliminary conference order. Where appropriate, the order will contain specific provisions for means of early disposition of the case, such as (i) directions for submission to the alternative dispute resolution program; (ii) a schedule of limited-issue discovery in aid of early dispositive motions or settlement; and/or (iii) a schedule for dispositive motions before disclosure or after limited-issue disclosure.

(b)  The order will also contain a comprehensive disclosure schedule, including dates for the service of third-party pleadings, discovery, motion practice, a compliance conference, if needed, a date for filing the note of issue, a date for a pre-trial conference and a trial date.

(c)  The preliminary conference order may provide for such limitations of interrogatories and other discovery as may be necessary to the circumstances of the case.

(d)  The court will determine, upon application of counsel, whether discovery will be stayed, pursuant to CPLR 3214(b), pending the determination of any dispositive motion.

**Rule 12.  Non-Appearance at Conference.**  The failure of counsel to appear for a conference may result in a sanction authorized by section 130.2.1 of the Rules of the Chief Administrator or section 202.27, including dismissal, the striking of an answer, an inquest or direction for judgment, or other appropriate sanction.

**Rule 13.  Adherence to Discovery Schedule**

(a) Parties shall strictly comply with discovery obligations by the dates set forth in all case scheduling orders.  Such deadlines, however, may be modified upon the consent of all parties, provided that all discovery shall be completed by the discovery cutoff date set forth in the preliminary conference order.  Applications for extension of a discovery deadline shall be made as soon as practicable and prior to the expiration of such deadline. Non-compliance with such an order may result in the imposition of an appropriate sanction against that party pursuant to CPLR 3126.

(b)  If a party seeks documents as a condition precedent to a deposition and the documents are not produced by the date fixed, the party seeking disclosure may ask the court to preclude the non-producing party from introducing such demanded documents at trial.

**Rule 14.  Disclosure Disputes.**  Counsel must consult with one another in a good faith effort to resolve all disputes about disclosure.  See section 202.7.  Except as provided in Rule 24 hereof, if counsel are unable to resolve any disclosure dispute in this fashion, the aggrieved party shall contact the court to arrange a conference as soon as practicable to avoid exceeding the discovery cutoff date.  Counsel should request a conference by telephone if that would be more convenient and efficient than an appearance in court.

**Rule 15.  Adjournments of Conferences.** Adjournments on consent are permitted with the approval of the court for good cause where notice of the request is given to all parties.    Adjournment of a conference will not change any subsequent date in the preliminary conference order, unless otherwise directed by the court.

**Rule 16.  Motions in General.**

(a)  Form of Motion Papers.  The movant shall specify in the notice of motion, order to show cause, and in a concluding section of a memorandum of law, the exact relief sought.  Counsel must attach copies of all pleadings and other documents as required by the CPLR and as necessary for an informed decision on the motion (especially on motions pursuant to CPLR 3211 and 3212).  Counsel should use tabs when submitting papers containing exhibits.  Copies must be legible.  If a document to be annexed to an affidavit or affirmation is voluminous and only discrete portions are relevant to the motion, counsel shall attach excerpts and submit the full exhibit separately.  Documents in a foreign language shall be properly translated.  CPLR 2101(b).  Whenever reliance is placed upon a decision or other authority not readily available to the court, a copy of the case or of pertinent portions of the authority shall be submitted with the motion papers.

(b)  Proposed Orders.  When appropriate, proposed orders should be submitted with motions, e.g., motions to be relieved, pro hac vice admissions, open commissions, etc.  No proposed order should be submitted with motion papers on a dispositive motion.

(c)  Adjournment of Motions.  Dispositive motions (made pursuant to CPLR 3211, 3212 or 3213) may be adjourned only with the court's consent.  Non-dispositive motions may be adjourned on consent no more than three times for a total of no more than 60 days unless otherwise directed by the court.

**Rule 17.  Length of Papers.**  Unless otherwise permitted by the court:  (i) briefs or memoranda of law shall be limited to 25 pages each; (ii) reply memoranda shall be no more than 15 pages and shall not contain any arguments that do not respond or relate to those made in the memoranda in chief; (iii) affidavits and affirmations shall be limited to 25 pages each.

**Rule 18.  Sur-Reply and Post-Submission Papers.**  Absent express permission in advance, sur-reply papers, including correspondence, addressing the merits of a motion are not permitted, except that counsel may inform the court by letter of the citation of any post-submission court decision that is relevant to the pending issues, but there shall be no additional argument.    Materials submitted in violation hereof will not be read or

8

considered.  Opposing counsel who receives a copy of materials submitted in violation of this Rule shall not respond in kind.

**Rule 19.  Orders to Show Cause.** Motions shall be brought on by order to show cause only when there is genuine urgency (e.g., applications for provisional relief), a stay is required or a statute mandates so proceeding.  See Rule 20.  Absent advance permission, reply papers shall not be submitted on orders to show cause.

### Rule 19-a.  Motions for Summary Judgment; Statements of Material Facts.

(a)  Upon any motion for summary judgment, other than a motion made pursuant to CPLR 3213, the court may direct that there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.

(b).  In such a case, the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party and, if necessary, additional paragraphs containing a separate short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

(c)  Each numbered paragraph in the statement of material facts required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(d)  Each statement of material fact by the movant or opponent pursuant to subdivision (a) or (b), including each statement controverting any statement of material fact, must be followed by citation to evidence submitted in support of or in opposition to the motion.

**Rule 20.  Temporary Restraining Orders.**    Unless the moving party can demonstrate that there will be significant prejudice by reason of giving notice, a temporary restraining order will not be issued. The applicant must give notice to the opposing parties sufficient to permit them an opportunity to appear and contest the application.

**Rule 21.  Courtesy Copies.**    Courtesy copies should not be submitted unless requested or as herein provided.  However, courtesy copies of all motion papers and proposed orders shall be submitted in cases in the court's Filing by Electronic Means System.

**Rule 22. Oral Argument.** Any party may request oral argument on the face of its papers or in an accompanying letter. Except in cases before justices who require oral argument on all motions, the court will determine, on a case-by-case basis, whether oral argument will be heard and, if so, when counsel shall appear. Notice of the date selected by the court shall be given, if practicable, at least 14 days before the scheduled oral argument. At that time, counsel shall be prepared to argue the motion, discuss resolution of the issue(s) presented and/or schedule a trial or hearing.

**Rule 23. 60-Day Rule.** If 60 days have elapsed after a motion has been finally submitted or oral argument held, whichever was later, and no decision has been issued by the court, counsel for the movant shall send the court a letter alerting it to this fact with copies to all parties to the motion.

## Rule 24. Advance Notice of Motions

(a) Nothing in this rule shall be construed to prevent or limit counsel from making any motion deemed appropriate to best represent a party's interests. However, in order to permit the court the opportunity to resolve issues before motion practice ensues, and to control its calendar in the context of the discovery and trial schedule, pre-motion conferences in accordance herewith must be held. The failure of counsel to comply with this rule may result in the motion being held in abeyance until the court has an opportunity to conference the matter.

(b) This rule shall not apply to disclosure disputes covered by Rule 14 nor to dispositive motions pursuant to CPLR 3211, 3212 or 3213 made at the time of the filing of the Request for Judicial Intervention or after discovery is complete. Nor shall the rule apply to motions to be relieved as counsel, for pro hac vice admission, for reargument or in limine.

(c) Prior to the making or filing of a motion, counsel for the moving party shall advise the Court in writing (no more than two pages) on notice to opposing counsel outlining the issue(s) in dispute and requesting a telephone conference. If a cross-motion is contemplated, a similar motion notice letter shall be forwarded to the court and counsel. Such correspondence shall not be considered by the court in reaching its decision on the merits of the motion.

(d) Upon review of the motion notice letter, the court will schedule a telephone or in-court conference with counsel. Counsel fully familiar with the matter and with authority to bind their client must be available to participate in the conference. The

unavailability of counsel for the scheduled conference, except for good cause shown, may result in granting of the application without opposition and/or the imposition of sanctions.

(e) If the matter can be resolved during the conference, an order consistent with such resolution may be issued or counsel will be directed to forward a letter confirming the resolution to be "so ordered." At the discretion of the court, the conference may be held on the record.

(f) If the matter cannot be resolved, the parties shall set a briefing schedule for the motion which shall be approved by the court. Except for good cause shown, the failure to comply with the briefing schedule may result in the submission of the motion unopposed or the dismissal of the motion, as may be appropriate.

(g) On the face of all notices of motion and orders to show cause, there shall be a statement that there has been compliance with this rule.

(h) Where a motion must be made within a certain time pursuant to the CPLR, the submission of a motion notice letter, as provided in subdivision (a), within the prescribed time shall be deemed the timely making of the motion. This subdivision shall not be construed to extend any jurisdictional limitations period.

**Rule 25. Trial Schedule.** Counsel are expected to be ready to proceed either to select a jury or to begin presentation of proof on the scheduled trial date. Once a trial date is set, counsel shall immediately determine the availability of witnesses. If, for any reason, counsel are not prepared to proceed on the scheduled date, the court is to be notified within ten days of the date on which counsel are given the trial date or, in extraordinary circumstances, as soon as reasonably practicable. Failure of counsel to provide such notification will be deemed a waiver of any application to adjourn the trial because of the unavailability of a witness. Witnesses are to be scheduled so that trials proceed without interruption. Trials shall commence each court day promptly at such times as the court directs. Failure of counsel to attend the trial at the time scheduled without good cause shall constitute a waiver of the right of that attorney and his or her client to participate in the trial for the period of counsel's absence. There shall be no adjournment of a trial except for good cause shown. With respect to trials scheduled more than 60 days in advance, section 125.1(g) of the Rules of the Chief Administrator shall apply and the actual engagement of trial counsel in another matter will not be recognized as an acceptable basis for an adjournment of the trial.

**Rule 26. Estimated Length of Trial.** At least ten days prior to trial or such other time as the court may set, the parties, after considering the expected testimony of and, if

necessary, consulting with their witnesses, shall furnish the court with a realistic estimate of the length of the trial.

**Rule 27.  Motions in Limine.** The parties shall make all motions in limine no later than ten days prior to the scheduled pre-trial conference date, and the motions shall be returnable on the date of the pre-trial conference, unless otherwise directed by the court.

**Rule 28.  Pre-Marking of Exhibits.**  Counsel for the parties shall consult prior to the pre-trial conference and shall in good faith attempt to agree upon the exhibits that will be offered into evidence without objection.  At the pre-trial conference date, each side shall then mark its exhibits into evidence as to those to which no objection has been made.  All exhibits not consented to shall be marked for identification only.  If the trial exhibits are voluminous, counsel shall consult the clerk of the part for guidance.  The court will rule upon the objections to the contested exhibits at the earliest possible time.  Exhibits not previously demanded which are to be used solely for credibility or rebuttal need not be pre-marked.

**Rule 29.  Identification of Deposition Testimony.**  Counsel for the parties shall consult prior to trial and shall in good faith attempt to agree upon the portions of deposition testimony to be offered into evidence without objection.  The parties shall delete from the testimony to be read questions and answers that are irrelevant to the point for which the deposition testimony is offered.  Each party shall prepare a list of deposition testimony to be offered by it as to which objection has not been made and, identified separately, a list of deposition testimony as to which objection has been made.  At least ten days prior to trial or such other time as the court may set, each party shall submit its list to the court and other counsel, together with a copy of the portions of the deposition testimony as to which objection has been made.  The court will rule upon the objections at the earliest possible time after consultation with counsel.

**Rule 30.  Settlement and Pretrial Conferences.**

(a) Settlement Conference.  At the time of certification of the matter as ready for trial or at any time after the discovery cut-off date, the court may schedule a settlement conference which shall be attended by counsel and the parties, who are expected to be fully prepared to discuss the settlement of the matter.

(b) Pre-trial Conference.  Prior to the pretrial conference, counsel shall confer in a good faith effort to identify matters not in contention, resolve disputed questions without need for court intervention and further discuss settlement of the case.  At the pretrial conference, counsel shall be prepared to discuss all matters as to which there is disagreement between the parties, including those identified in Rules 27-29, and settlement of the matter.  At or before the pre-trial conference, the court may require the parties to prepare a written stipulation of undisputed facts.

### Rule 31.  Pre-Trial Memoranda, Exhibit Book and Requests for Jury Instructions

(a)  Counsel shall submit pre-trial memoranda at the pre-trial conference, or such other time as the court may set.  Counsel shall comply with CPLR 2103(e).  A single memorandum no longer than 25 pages shall be submitted by each side.  No memoranda in response shall be submitted.

(b)  At the pre-trial conference or at such other time as the court may set, counsel shall submit an indexed binder or notebook of trial exhibits for the court's use.  A copy for each attorney on trial and the originals in a similar binder or notebook for the witnesses shall be prepared and submitted.  Plaintiff's exhibits shall be numerically tabbed and defendant's exhibits shall be tabbed alphabetically.

(c)  Where the trial is by jury, counsel shall, on the pre-trial conference date or such other time as the court may set, provide the court with case-specific requests to charge and proposed jury interrogatories.  Where the requested charge is from the New York Pattern Jury Instructions - Civil, a reference to the PJI number will suffice.  Submissions should be by hard copy and disk or e-mail attachment in WordPerfect 12 format, as directed by the court.

**Rule 32.  Scheduling of witnesses.**  At the pre-trial conference or at such time as the court may direct, each party shall identify in writing for the court the witnesses it intends to call, the order in which they shall testify and the estimated length of their testimony, and shall provide a copy of such witness list to opposing counsel.  Counsel shall separately identify for the court only a list of the witnesses who may be called solely for rebuttal or with regard to credibility.

**Rule 33.  Preclusion.**  Failure to comply with Rules 28, 29, 31 and 32 may result in preclusion pursuant to CPLR 3126.

13

# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Jefftex Inter.

Plaintiff(s),

-against-

JPI TRADING

Defendant(s).

Index No. 603811/200 4

ORDER OF REFERENCE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**HON. JACQUELINE W. SILBERMANN, Administrative Judge**

Pursuant to CPLR 4317(a) and Judiciary Law § 851(2), it is hereby

ORDERED that, the parties having so consented, this action is referred to Judicial Hearing Officer Ira Gammerman, a Member of the Judicial Hearing Officers Panel for the Supreme Court of the State of New York, County of New York, to hear and determine; and it is further

ORDERED that, the parties having so consented, Judicial Hearing Officer Ira Gammerman shall have authority to exercise all the powers of a Justice of this court; including the power to manage all pretrial aspects of the case, decide all motions, hear and determine without a jury, and try with a jury, as provided by the Civil Practice Law and Rules.

Dated: New York, New York
    6/3 , 200 5

Administrative Judge
1st Judicial District

HON. JACQUELINE W. SILBERMANN

**FILED**

JUN - 8 2005

COUNTY CLERK'S OFFICE
NEW YORK

For Use of Clerk:

# NOTE OF ISSUE

Calendar No. (if any):
Index No.:      603811/04
NYS Supreme Court, New York County
Name of Assigned Judge: The Honorable Ira Gammerman

-----------------------------------------------------x

JEFFTEX INTERNATIONAL LTD., AND
JEFF YOUNG

                Plaintiff,

   - against -

JPI TRADING CORP. and JOSEPH SAFDIEH,

             Defendants.

-----------------------------------------------------x

**RECEIVED**

SEP 0 6 2006

**NEW YORK
COUNTY CLERK'S OFFICE**

Special preference
Claimed under

On the ground that

**RECEIVED**

SEP - 6 2006

**TRIAL SUPPORT OFFICE**

NOTICE FOR TRIAL
[   ]   Trial by Jury Demanded
      [   ] of all issues
      [   ] of issues specified below
      [   ] or attached hereto
[ X ]   Trial without Jury
Filed by Attorney for Plaintiff
Date Summons Served: 11/15/04
Date Service Completed: 11/29/04
Date issue joined: 12/09/05

NATURE OF ACTION
OR SPECIAL PROCEEDING
[   ]   Tort
      [   ]   Motor Vehicle Negligence
[   ]   Medical Malpractice
      [   ]   Other Tort
[ X ]   Contract
[   ]   Contested matrimonial
[   ]   Uncontested matrimonial
[   ]   Tax Certioriari
[   ]   Condemnation
[   ]   Other (not itemized above)

[   ]   This action is brought as a class
      action

Amount demanded:     $4,551,675.25
Other Relief:             (plus interest)
Insurance Carrier(s):  N/A

Attorneys for Plaintiff:      Gottesman, Wolgel, Malamy, Flynn & Weinberg, P.C.
                       11 Hanover Square, 4th Floor, New York, New York 10005
                       Tel.: (212) 495-0100

Attorneys for Defendants     Kaplan, Von Ohlen & Massamillo
                       90 Park Avenue South, 18th Floor, New York, New York 10016
                       Tel. (212) 455-9252

NOTE:     The clerk will not accept this note of issue unless accompanied by a certificate of
            readiness.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

JEFFTEX INTERNATIONAL LTD.,                           Index No. 603811/04

                              Plaintiff,

              -against-

JPI TRADING CORP. and JOSEPH SAFDIEH,.

                              Defendants.

------------------------------------------------------------ x


STATE OF NEW YORK          )
COUNTY OF NEW YORK         )  ss.:

               **MARIBEL PINEDA**, being duly sworn, deposes and says that deponent is

not a party to the action, is over the age of 18 years and resides at New York, New York.

               On September 5, 2006, deponent served the within Note of Issue and

Certificate of Readiness upon:

                    Tom Carulli
                    Kaplan, Von Ohlen & Mannamillo, LLC
                    90 Park Avenue
                    New York, NY 10016

the addresses designated by said attorney for that purpose, by depositing a true copy of

same enclosed in a postpaid properly addressed wrapper, in an official depository under

the exclusive care and custody of the United States Postal Service within the State of

New York.

                                        _____
                                             MARIBEL PINEDA


Sworn to before me this
_5th_ day of September, 2006

_____
Notary Public

          STEWART W. LEE
Notary Public, State of New York
       No. 02LE
   Qualified in Queens County
Commission Expires 05/07/20__07

603811/04

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFTEX INTERNATIONAL LTD.,

                                                    Plaintiff,

    JPI TRADING CORP. and JOSEPH SAFDIEH

                                                    Defendants.

COPY

# NOTE OF ISSUE
## AND CERTIFICATE OF READINESS

GOTTESMAN, WOLGEL, MALAMY,
FLYNN & WEINBERG, P.C.

*Attorneys for*

**Plaintiff**

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:*............................................    Signature....................................................................

                                                    Print Signer's Name..........................................

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*

                                   ................................................................
                                        *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐  *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*                    20
ENTRY

☐  *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF   *Hon.                                   one of the judges of the within named Court,*
SETTLEMENT   *at*
        *on*                    20        *, at*                *M.*

*Dated:*                                         GOTTESMAN, WOLGEL, MALAMY,
                                            FLYNN & WEINBERG, P.C.

                        *Attorneys for*

                                        11 HANOVER SQUARE
                                        NEW YORK, N.Y. 10005
                                        TEL. NO. (212) 495-0100
                                        FAX NO. (212) 480-9797

*To:*

*Attorney(s) for*

# R E C E I P T

## COUNTY CLERK
## NEW YORK COUNTY

06L03682

→

```
INDEX NUMBER 603811  YEAR 2004
  2 LAW FEE 30              30.00
TOTAL                      30.00
CHECK                      30.00
---------------------------------
CONS CASHIER   DATE    TIME TERM
-32524 1000  06 SEP 06  2:44 PM 60-3
```

**NORMAN GOODMAN**
COUNTY CLERK AND CLERK OF
THE SUPREME COURT

160

# EXHIBIT L

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: COMMERCIAL DIVISION**

-------------------------------------------------------------x

Jefftex Inter,

                       Plaintiff(s)

- against -

JPI Trading

                     Defendant(s).

-------------------------------------------------------------x

Part 27
(Gammerman, J.)

Index No. 603811-04

## STIPULATION

It is hereby stipulated and agreed, by and between the undersigned, counsel for all parties in the above-captioned case, that the parties consent to the continued assignment of this case to Honorable Ira Gammerman after January 1, 2004, at which time Justice Gammerman will become a Judicial Hearing Officer; and that the parties are in accord and consent that as Judicial Hearing Officer in this case, Justice Gammerman shall have authority to exercise all the powers of a Justice of this court, including the power to manage all pretrial aspects of the case, decide all motions, hear and determine non-jury cases, and try jury cases, as provided by the Civil Practice Law and Rules; and that the parties agree and understand that the right to appeal for all parties shall be exactly the same as in any case assigned to a Justice of the Supreme Court.

Dated: New York, New York
      5/26        , 2005

(Print name): Gilbert Seurano

(Signature): _____
                Attorney for Plaintiff(s)

(Print name): Thomas Cprulli

(Signature): _____
               Attorney for Defendant

(Print name): _____

(Signature): _____
                Attorney for Defendant

# EXHIBIT M

| | |
|---|---|
| **INDEX NO.:** | **603811-2004** |
| **PLAINTIFF:** | **JEFFTEX INTERNATIONAL LTD.** |
| **DEFENDANT:** | **JPI TRADING** |
| **CASE STATUS:** | **DISPOSED** |
| **ACTION:** | **CONTRACT** |
| **LAST UPDATE:** | **04-23-2008 9:00PM** |
| **JUSTICE:** | **GAMMERMAN, IRA (JHO)** |

**Home / SCROLL / COUNTY CLERK MINUTES**

| DATE | DOCUMENT TYPE |
|---|---|
| **11-15-2004** | **SUMMONS AND COMPLAINT** |
| **11-19-2004** | **AFFIDAVIT OF SERVICE (2)** |
| **05-06-2005** | **SUBSTITUTION OF ATTORNEY** |
| **05-24-2005** | **COUNTERCLAIM** |
| **06-01-2005** | **ORDER IAS PART 27, SEQ. #01. MOTION IS DENIED.** |
| **06-08-2005** | **ORDER OF REFERENCE** |
| **07-28-2005** | **VERIFIED ANSWER** |
| **10-14-2005** | **SECOND AMENDED VERIFIED COMPLAINT AMENDED VERIFIED COMPLAINT** |
| **11-16-2005** | **VERIFIED ANSWER** |
| **12-01-2005** | **CONSENT TO CHANGE ATTORNEY NOTICE OF SUBSTITUTION OF ATTORNEY** |
| **09-14-2006** | **STIPULATION OF DISCONTINUANCE** |
| **09-18-2006** | **STIPULATION OF DISCONTINUANCE** |

BACK    NEW SEARCH

**COUNTY CLERK MINUTES:** The minutes of the County Clerk in chronological order reflecting all documents filed with the County Clerk. Motion papers are filed with the order therein and are not separately identified.



60 Centre Street, New York NY 10007

Copyright © 2006 Unified Court System