UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFTEX INTERNATIONAL LTD.,<br><br>            Plaintiff,<br><br>vs.<br><br>JPI TRADING CORP. and JOSEPH SAFDIEH,<br><br>            Defendants. | CIVIL ACTION NO.: 07CV10460 (TPG) |

# REPLY MEMORANDUM IN SUPPORT OF MOTION BY JPI TRADING CORP. AND JOSEPH SAFDIEH TO DISMISS THIS ACTION WITH PREJUDICE PURSUANT TO FRCP 12

KAPLAN, von OHLEN & MASSAMILLO, LLC
Eugene Massamillo (EM - 6942)
Thomas G. Carulli (TC-3085)
555 5th Avenue, 15th Floor
New York, New York 10017
Tel:   (212) 922-0450
Fax:   (212) 922-0530

Attorneys for Defendants
JPI TRADING CORP. and JOSEPH SAFDIEH

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................ ii

**REPLY MEMORANDUM IN SUPPORT OF MOTION BY JPI TRADING CORP. AND JOSEPH SAFDIEH TO DISMISS THIS ACTION WITH PREJUDICE PURSUANT TO FRCP 12** ............................. 1

1. The New York Supreme Court had the authority to render final judgment by a dismissal with prejudice, which precludes the present action .......... 1

2. Plaintiff's recitation of facts respecting the New York action is incomplete and incorrect and does not support Plaintiff's arguments .............. 4

3. Both Jeff Young and the New York Jefftex are indispensable parties ..... 9

## TABLE OF AUTHORITIES

**Cases**                                                                                                      Page

*Community Network Service, Inc. v. Verizon New York, Inc.*
849 N.Y.S.2d 777 (1st Dept. 2008) ................................... 1

*Noble v. O'Leary*
628 N.Y.S.2d 930 (Sup. Ct. N.Y. Cty. 1995) ........................... 2

*Incorporated Village of Thomaston v. Biener*
443 N.Y.S.2d 887 (2d Dept. 1981) .................................... 2

*Schwartz v. Mandelbaum & Gluck*
698 N.Y.S.2d 252, 253-54 (2d Dept. 1999) ............................. 3

*Bergen v. Home for Incurables*
508 N.Y.S.2d 434 (1st Dept. 1986) ................................... 3

*Kopilas v. Peterson*
614 N.Y.S.2d 562 (2d Dept. 1994) .................................... 3

*Escobar v. Deepdale Gen. Hospital*
567 N.Y.S.2d 842 (2d Dept. 1991) .................................... 3

*Espinoza v. Concordia Int'l Forwarding Corp.*
820 N.Y.S.2d 259 (1st Dept. 2006) ................................... 3

*Espinoza v. Concordia Int'*
Index No. 0018863/05 (Sup. Ct. Bronx Cty. 2005) ..................... 4

*Bowman v Lacovara*
829 N.Y.S.2d 510 (1st Dept. 2007) ................................... 4

*Saunders v. Riverbay Corp.*
791 N.Y.S.2d 828 (1st Dept. 2005) ................................... 4

*Campos v New York Health and Hospitals Corp.*
763 N.Y.S.2d 292 (1st Dept. 2003) ................................... 4

### REPLY MEMORANDUM IN SUPPORT OF MOTION BY JPI TRADING CORP. AND JOSEPH SAFDIEH TO DISMISS THIS ACTION WITH PREJUDICE PURSUANT TO FRCP 12

Defendants respectfully submit that the Appellate Division's February 7, 2008 decision in *Community Network Service, Inc. v. Verizon New York, Inc.*, 849 N.Y.S.2d 777 (1st Dept. 2008) is dispositive of this motion in Defendants' favor.

In *Community Service*, the Appellate Division unanimously held that where Judge Gammerman issues a "dismissal with prejudice" in the precise circumstances of this action, i.e., where on the scheduled date of trial a plaintiff refuses to select a jury, that dismissal with prejudice is proper under New York law. The Appellate Division further held, in affirming Judge Gammerman's decision, that "Plaintiff's remedy lies in a motion to vacate in which Plaintiff *must*" (emphasis added) meet the criteria for such motions established under New York law.

*Community Network* is fatal to Plaintiff's arguments that Judge Gammerman and the courts of New York lacked the authority to dismiss the action with prejudice, and makes it clear that Plaintiff is precluded from reviving its claims other than by the requisite showing on a motion to vacate in courts of the State of New York. Defendants nonetheless will briefly address the host of arguments and allegations made by Plaintiff in its opposition to this motion.

**1.   The New York Supreme Court had the authority to render final judgment by a dismissal with prejudice, which precludes the present action.**

Plaintiff incorrectly cites NY Court Rule 202.43 (d) for the proposition that Judge Gammerman had no authority to render judgment (Plt. Mem., p. 8-9). Rule 202.43 is, by its very terms, limited to circumstances in which: a) an application has been made to refer an action, *and* b) a Note of Issue has been filed in that action.

1

Rule 202.43 is inapplicable to this New York action, wherein at the very outset of the action, years before any likely Note of Issue, the parties signed a written consent to Judge Gammerman presiding over the entirety of the action (Ex. L). The Order of Reference confirmed this consent (Ex. J), and established Judge Gammerman's complete authority over the whole action, from discovery though trial:

> ORDERED THAT the parties having consented, Judicial Hearing Officer Ira Gammerman shall have the authority to exercise all the powers of a Justice of this court; including the power to manage all pretrial aspects of the case, decide all motions, hear and determine without a jury, and try with a jury, as provided by the Civil Practice Law and Rules.

Plaintiff's next argument, that Judge Gammerman had no authority to render judgment because CPLR 3217(a)(2) provides some supposed unfettered right for the parties to discontinue an action (Plt. Mem., p. 6-7) [1], in spite of the Court's inherent authority to control its calendar, is unsupported and incorrect as a matter of law.

In the first instance, Judge Gammerman dismissed the action with prejudice when there was nothing on file that even arguably effected discontinuance. As the Court held in *Noble v. O'Leary*, 628 N.Y.S.2d 930, 932 (Sup. Ct. N.Y. Cty. 1995) (in denying a motion to enforce a stipulation of discontinuance which had not been filed) under CPLR 3217, a stipulation of discontinuance is completely ineffective unless it already has been filed.

Moreover, under New York law, stipulations do not deprive the courts of their right to control their own calendar in any event. *See Incorporated Village of Thomaston v. Biener*, 443 N.Y.S.2d 887 (2d Dept. 1981) (reversing the grant of motion to restore an

---

[1] Defendants' initial memorandum in support of this motion will be referred to as "Def. Mem." Plaintiff's Memorandum in opposition to this motion will be referred to as "Plt. Mem."

2

action to the calendar under CPLR §3404, which motion had been based upon a stipulation among the parties); *Schwartz v. Mandelbaum & Gluck*, 698 N.Y.S.2d 252, 253-54 (2d Dept. 1999); *Bergen v. Home for Incurables*, 508 N.Y.S.2d 434, 435 (1st Dept. 1986); *Kopilas v. Peterson*, 614 N.Y.S.2d 562, 563 (2d Dept. 1994); *Escobar v. Deepdale Gen. Hospital*, 567 N.Y.S.2d 842, 842-43 (2d Dept. 1991).

Finally, since the New York Supreme Court expressly ruled that the stipulation in question was not effective, and that it had the power to dismiss the action with prejudice, Plaintiff essentially is seeking for this Court to act as the appellate court and overturn that decision, rather than properly seeking appellate review thereof in state court.

Plaintiff's next argument, that New York Supreme Court has "no inherent judicial powers to dismiss an action for want of prosecution" (Plt. Mem., p. 13-15), is unsupported and contrary to the law, as the *Community Network* decision confirms. And contrary to Plaintiff's allegation, Defendants clearly set forth that the authority to dismiss the action with prejudice, in circumstances in which the Note of Issue has been filed, is found in both Rule 202.27 and CPLR §3404 (Def. Mem., p. 6).

Plaintiff also ignores all of the authorities which set forth that the dismissal with prejudice is a determination which precludes the present second action on the identical causes of action (Def. Mem., p. 6-7). Instead, Plaintiff relies solely on a misinterpretation of a solitary case, *Espinoza v. Concordia Int'l Forwarding Corp.*, 820 N.Y.S.2d 259 (1st Dept. 2006) (Plt. Mem., p. 16), to argue that Plaintiff should be able to file a new action. But the *Espinoza* decision does not support Plaintiff's position either, because the First Department was not addressing a situation in which the court in the first action had issued a "dismissal with prejudice," but rather the very different situation in which there was a

simple "dismissal." The trial court handling the second action (*Espinoza v. Concordia Int'l*, Index No. 0018863/05 (Sup. Ct. Bronx Cty. 2005), in its December 27, 2005 opinion, expressly set forth the record of the first *Espinoza* action, noting that it showed that it was the court clerk who had marked the case "dismissed" and that there was *no* written Order from the judge explaining at all why the clerk had marked the case dismissed (Ex. 6, p. 2).

In the present case, there is no question that Judge Gammerman intended to, and did, both rule against the stipulation and issue the dismissal "with prejudice." And *Community Network* makes it clear that if Plaintiff wanted to seek to overcome that decision, Plaintiff was required to file, in New York Supreme Court, a motion to vacate.

Finally, Plaintiff's argument that allegedly there was no "judgment" entered and that, therefore, there cannot be claim preclusion (Plt. Mem., p. 16-18) is contrary to the law. As set forth in Defendant's initial memorandum (Def. Mem., p. 6), the dismissal did not require the entry of a separate, signed order to be effective, as the courts consistently have held (*Bowman v Lacovara*, 829 N.Y.S.2d 510 (1st Dept. 2007); *See also Saunders v. Riverbay Corp.*, 791 N.Y.S.2d 828 (1st Dept. 2005); *Campos v New York Health and Hospitals Corp.*, 763 N.Y.S.2d 292, 293-94 (1st Dept. 2003)).

**2. Plaintiff's recitation of facts respecting the New York action is incomplete and incorrect and does not support Plaintiff's arguments.**

Judge Gammerman initially addressed the merits of Plaintiff's claims in 2005 in denying, after full briefing and oral argument, Plaintiff's motion for summary judgment (Ex. 3, Order denying motion "per record")[2]. Despite repeated warnings thereafter as

---

[2] While the merits of the parties' respective causes of action are not at issue on this motion, Defendants must briefly respond to Plaintiff's mischaracterization of facts

4

deadline extensions were sought, and ultimately a clear order from Judge Gammerman, months in advance, that trial would commence September 13, 2006, Plaintiff did not proceed with trial as ordered. Plaintiff's representations about why they supposedly were unprepared for trial that day, about a post-dated check, and about the proposed stipulation are simply incorrect.

Plaintiff affirms that as of September 6, 2006, when Plaintiff filed its Note of Issue, Plaintiff was "willing and able and ready to start trial on September 13, 2006" (Weinberg Aff., ¶34). But, Plaintiff claims, Defendants thereafter did something in the next few days that caused Plaintiff not to be ready, specifically, making some proposal that caused Young to be unable to attend trial.

However, at the September 14 hearing, Plaintiff revealed that the real reason that it refused to proceed – Plaintiff knowingly had not undertaken the necessary measures prior to September 6 that were required if Young was going to attend trial on September 13:

> Our client is in Taiwan. The records are in Taiwan. *It takes a minimum of two weeks on an emergency basis to get a visa* to come here in order to be present at trial. I cannot honestly represent to the court – if I may finish.
>
> *****
>
> -- that we will, even if we were to pick a jury today, which I am prepared to do, *that we can have the client here by Monday or Tuesday of next week,...* (Ex. 4, Hearing, p. 12, emphasis added)

---

respecting the underlying claims. In denying Plaintiff's motion, Judge Gammerman had before him not only the documentation attached to the Complaint in this action (and additional memoranda and declarations in support of that motion), he also had hundreds of pages of documents, declarations and memoranda from Defendants, including representative invoices, correspondence and the like that evidenced the shipments of defective goods, unauthorized early shipments and non-conforming late shipments, improper billing and the like. Defendants will not burden this Court with this voluminous documentation, but simply point out that such is of record in the New York action.

Young would have had to have filed for the requisite visa *well before* the September 6 Note of Issue to have met this "minimum of two weeks" waiting period, and thus *well before* any alleged subsequent proposal by Defendants. In short, Plaintiff never intended to commence trial on September 13, and assumed that there was nothing Judge Gammerman would do about it.

Plaintiff's representations about a check from Defendants delivered on September 11, and that Defendant Safdieh allegedly "unilaterally" postdated that check (Young Decl., ¶ 12, 13), are similarly incorrect. Defendants were prepared to proceed with the September 13 trial when they were served with the September 6 Note of Issue. Plaintiff's counsel then resurrected the idea that the parties should consider dismissing the action and entering into private discussions about their respective claims, but with the specific proviso that Plaintiff would do so only if Defendants included a modest payment of $100,000 as a part of any such agreement (based on Plaintiff's alleged perception of the relative value of the parties' claims). Since this was literally the eve of trial but Defendants were interested in exploring this idea, Defendants promptly delivered a *post-dated* check to Plaintiff's counsel, before Plaintiff had presented proposed written conditions of a possible agreement, under the express understanding that this check was to be held while the parties tried to come to a definitive written agreement.

On September 12, Plaintiff's counsel forwarded two proposed stipulations that Plaintiff sought as a package agreement (a simple stipulation to dismiss and a detailed stipulation containing detailed terms and conditions) (Ex. 7). Defendants found the terms unacceptable, and rejected the proposed agreement (in keeping with their obligation to

hold the check unless agreement was reached, Plaintiff's counsel never cashed the check (Ex. F).

The detailed stipulation written by Plaintiff's counsel expressly recites that the check was to be "posted [sic] dated to November 10, 2006" (Ex. 7, p. 2 of the second stipulation). Clearly, the post-dating was no surprise, as reflected in Plaintiff's own draft.

Not having reached agreement, the parties appeared the next day for trial. Judge Gammerman directed that the parties begin jury selection, but Plaintiff balked, claiming that he was not ready for trial. Defendants immediately moved for a dismissal, as Judge Gammerman noted (Ex. 4, Hearing, p. 8). At that point, Judge Gammerman nonetheless directed the parties to proceed with jury selection (Ex. 4, p. 4). Plaintiff, however, mistakenly believing and representing that Judge Gammerman did not have the authority, as a JHO, to order trial to proceed (when, in fact, Judge Gammerman had been granted the authority pursuant to the consent of the parties years earlier), then sought to have another judge assigned to the action. Plaintiff's counsel was informed by Judge Gammerman later that afternoon that the proceedings would continue before him, and Plaintiff's counsel subsequently so informed Defendants' counsel by facsimile (Ex.8).

On September 14, while in court waiting to proceed with trial, Plaintiff's counsel suddenly informed Defendant's counsel that Plaintiff was dropping its demands for any terms and conditions, and now wanted a simple stipulation to dismiss, which he had brought with him (Carulli Supp. Decl., ¶5). Since that conceptually conformed to what Defendants' counsel felt Defendants would deem acceptable, Defendants' counsel signed

the proposed stipulation³. Judge Gammerman then expressly ruled on this stipulation, rejected it, and dismissed the action with prejudice.

Plaintiff's attempt to characterize events as if Defendants later "filed" the stipulation with the clerk's office (Weinberg Aff., p.9) is simply an incorrect reinterpretation. After the hearing, Plaintiff's counsel told Defendants' counsel, as they were walking out of court together conversing, that he was going to file the stipulation with the clerk's office anyway. Defendants' counsel replied that Plaintiff's doing so was meaningless because Judge Gammerman had already ruled and thus the stipulation was ineffective, no matter what Plaintiff did with it, and that the proper procedure seemed to be to appeal Judge Gammerman's decision, if Plaintiff chose and which he assumed Plaintiff might do (Carulli Supp. Decl. ¶8). It is true that all four attorneys walked out together talking, as they had after every hearing in the past, and that counsel waited together momentarily while one of Plaintiff's counsels filed the stipulation in the clerk's office, but Defendants were not filing anything (Carulli Supp. Decl., ¶8).

Shortly after the dismissal, Defendants rejected yet another proposed stipulation from Plaintiff, which sought to have the parties disavow defenses such as *res judicata*, collateral estoppel, claim preclusion and the like (Ex.9).

---

³ Plaintiff's allegation that Defendants did not disclose the stipulation to this Court is outrageous (Weinberg Aff. ¶6). Not only did Defendants specifically point out that Judge Gammerman denied "Plaintiff's request to file a stipulation of discontinuance without prejudice" (Def. Mem., p. 3), Defendants specifically cited to page 7 of the transcript which further confirmed the stipulation (indeed, Defendants attached the entire transcript as Ex. 4). Defendants should point out, however, that as a result of this motion, counsel has realized that there is a significant omission in the stipulation that Plaintiff's counsel brought to court that day for signature – it had a signature by Plaintiff's counsel, but only on behalf of Jefftex – it did not include any consenting signature for or by the other party, Plaintiff/Counterclaim Defendant Young, with whom issue had been joined from Defendants' earliest pleading (Ex. A).

The issue is not merely academic, for there is serious prejudice to Defendants in Plaintiff proceeding with a second action, beyond the obvious prejudice occasioned by the passage of more than a year since the New York action was dismissed. For example, if the New York action were revived on the bases urged by Plaintiff, Defendants' counterclaims and defenses remain intact and relate back. Conversely, if this action is allowed to go forward, Plaintiff is free to argue statute of limitations, estoppel and other possible defenses that would not have been available in the New York action. Moreover, Young was a named Plaintiff/Counterclaim Defendant in the New York Action, issue was joined as to him personally from Defendants' initial counterclaims and answer, and the New York courts thus had jurisdiction over him and the claims against him. In the present case, Young, a citizen of Taiwan residing in Taiwan, is not a Plaintiff, and Defendants would be at the disadvantage of having to expend the time, and incur the costs of seeking, perhaps unsuccessfully, to secure jurisdiction over him.

And Defendants choice of pursuing their claims against Plaintiff in the courts of New York, as counterclaims to Plaintiff's claims, should not be disturbed by Plaintiff's attempt to thwart the jurisdiction of the New York courts over this matter.

**3.   Both Jeff Young and the New York Jefftex are indispensable parties.**

Plaintiff does not deny that Young personally asserted the claims, as his own, in the first New York action (by way of several successive pleadings, including a Verified Complaint), and now admits that certain checks at issue were made out to him personally, and not to Jefftex. Young, in his unsworn declaration, does not even attempt to provide any documentation to support his allegations of how he moves money around, how such allegedly was for the benefit of Jefftex, nor does he personally relinquish any claim for

9

relief on the matters on which he personally brought suit. He is an indispensable party, as is the New York Jefftex. As to Jefftex, it was Plaintiff who made the affirmation in the New York action that the causes of action belonged to the New York Jefftex (not the Taiwan Jefftex), which affirmation was submitted to overcome Defendants' argument that if the foreign Jefftex was the Plaintiff, it was not licensed to do business in New York and therefore could not bring the action. Plaintiff's convenient response now is that its affirmation allegedly was a "mistake." But whatever ultimately turns out to be the facts, given the conflicting statements by the New York Jefftex and Young, the New York Jefftex remains an indispensable party and Defendants should not be exposed to any later claim by the New York Jefftex or some successor that it was, in fact, the true party in interest. In light of the foregoing, both Jeff Young and the New York Jefftex remain indispensable parties.

In conclusion, Defendants respectfully submit that this action should be dismissed with prejudice. Defendants further submit that Young and the New York Jefftex are indispensable parties. Defendants confirm that they have agreed with Plaintiff that the arguments regarding service of process on Defendant Safdieh are withdrawn.

Dated: New York, New York
       May 7, 2008

By: ___/s/ Thomas G. Carulli
Thomas G. Carulli (TC-3085)
    Kaplan, von Ohlen & Massamillo
555 5th Avenue, 15th Floor
New York, New York 10017
(212) 922-0450
Fax: (212) 922-0530

10